## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF PENNSYLVANIA
## HARRISBURG DIVISION

| | | |
|---|---|---|
| **IN RE:** | ) | Case No. 1:12-bk-00328-MDF |
| | ) | Chapter 7 |
| | ) | |
| **ANDREW J. OSTROWSKI,** | ) | |
| | ) | |
| | ) | |
| **Debtor.** | ) | |
| | ) | |
| **IN RE:** | ) | Case No. 1:12-bk-00331-MDF |
| | ) | Chapter 13 |
| | ) | |
| **STEPHEN G. CONKLIN,** | ) | Bankruptcy Courtroom No. 1 |
| | ) | Ronald Reagan Federal Building |
| | ) | 228 Walnut Street |
| | ) | Harrisburg, Pennsylvania 17101 |
| **Debtor.** | ) | |
| | ) | January 31, 2012 |
| | ) | 9:49 A.M. |

```
TRANSCRIPT OF HEARING ON CASE NO. 1:12-bk-00328-MDF, EMERGENCY
    MOTION ON RELIEF FROM AUTOMATIC STAY (DOC. 10).
  HEARING ON CASE NO. 1:12-bk-00331-MDF, EMERGENCY MOTION ON
           RELIEF FROM AUTOMATIC STAY (DOC. 13).
          BEFORE HONORABLE MARY D. FRANCE
       UNITED STATES CHIEF BANKRUPTCY JUDGE
```

APPEARANCES:

For the Debtor,          ANDREW J. OSTROWSKI, Pro Se
Andrew J. Ostrowski:

For the Debtor,          STEPHEN G. CONKLIN, Pro Se
Stephen G. Conklin:

AUDIO OPERATOR:          KAREN DAVIS

**TRANSCRIPTION SERVICE:**     **TRANSCRIPTS PLUS, INC.**
                            **435 Riverview Circle**
                            **New Hope, Pennsylvania 18938**
                            **Telephone: 215-862-1115**
                            **Facsimile: 215-862-6639**
                            **e-mail CourtTranscripts@aol.com**

```
Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.
```

TELEPHONIC APPEARANCE:

EMC Mortgage, LLC:           Grenen & Birsic, P.C.
                            By:  BETH LYNNE SLABY, ESQ.
                            420 Fort Duquesne Boulevard
                            Pittsburgh, Pennsylvania 15222

INDEX

PAGE

Motion for recusal                                      9

Motion to strike the motion for expedited hearing      29

Motion for relief from automatic stay                 111

Rule 4001 waiver                                       121

Extension of time for Mr. Ostrowski                    122

```
 1            THE COURT:  The last two matters on the calendar are
 2   Stephen Conklin and Andrew Ostrowski.  These matters are
 3   related, so I'll call them both at the same time.  You may come
 4   up front.  You can come up to the bar, that will be fine.
 5            MR. CONKLIN:  Good morning.
 6            THE COURT:  And you're Mr.?
 7            MR. CONKLIN:  Conklin.
 8            THE COURT:  And Mr. Ostrowski.
 9            MR. OSTROWSKI:  Mr. Ostrowski, yes.
10            THE COURT:  Okay.  And on the phone?
11            MS. SLABY:  Good morning, Your Honor.  Beth Slaby on
12   behalf of EMC Mortgage, LLC.
13            MR. OSTROWSKI:  Your Honor, may I ask a point of
14   order?
15            THE COURT:  Sure.
16            MR. OSTROWSKI:  Who pays for this call?  I noticed
17   Ms. Goodling up here making this arrangement.  Is this paid for
18   by the Court or --
19            THE COURT:  No.  Courtcall is -- under our local
20   rules, Courtcall is a outside provider, and whoever is calling
21   in pays a fee to use Courtcall.
22            MR. OSTROWSKI:  So, the -- the -- the movant is
23   paying for the call.
24            THE COURT:  The movant pays for it.
25            MR. OSTROWSKI:  Thank you.
```

1          THE COURT:  And anyone who -- anyone's allowed to use

2    it.

3          MR. OSTROWSKI:  Okay.

4          THE COURT:  Unless there's some reason why I think

5    that they need to be here in court.

6          MR. OSTROWSKI:  Okay, thank you.

7          THE COURT:  And we frequently use them.

8          MR. OSTROWSKI:  Thanks.

9          THE COURT:  Okay.  Ms. Slaby, we have a preliminary

10   matter before we get to the underlying motion.

11         MS. SLABY:  Yes, Your Honor.

12         THE COURT:  Have you received copies of the documents

13   that were filed in this case today?

14         MS. SLABY:  No, Your Honor.  There was -- according

15   to the ECF filing, there was nothing that we received notice

16   of.

17         THE COURT:  Okay.  Well, this was filed -- this was

18   filed, I think, like at 4:50 is what it's marked as filed.  Did

19   you serve these on the movant?

20         MR. OSTROWSKI:  I relied on the ECF, and my intention

21   was to get a copy out in the mail normal service.

22         THE COURT:  Oh, okay.

23         MS. SLABY:  Your Honor, we checked the ECF this

24   morning, and there is nothing that's been filed.

25         THE COURT:  It should be there now.  It was not

1 docketed when I was in at around 8:30 either.  It was docketed

2 later.

3          MS. SLABY:  Unfortunately, Your Honor, we don't have

4 a copy of what was filed.

5          THE COURT:  Okay.  Well, do you have access to your

6 computer and CM/ECF?

7          MS. SLABY:  Your Honor, we're in a conference room

8 right now.  We could step out to --

9          MR. OSTROWSKI:  Who is we?  Who is we?  She has

10 people there with her that aren't identified?

11          THE COURT:  Ms. Slaby, is there somebody in the room

12 with you?

13          MS. SLABY:  Yes.  Attorney Mary Grenen is here from

14 Grenen & Birsic.

15          THE COURT:  Okay.  I'm going to take a ten-minute

16 recess just to give you an opportunity to go get those

17 documents, to print them off, and to look at them, and come

18 back.  And the reason that I'm saying that, we need to deal

19 with several preliminary matters in addition to the answer

20 filed by both -- answers filed by both Mr. Conklin and Mr.

21 Ostrowski to the motions in their respective cases.

22          There's also been an answer to the motion for

23 expedited hearing, and a motion to recuse me, and to recuse Mr.

24 DeHart in Mr. Conklin's case, and then there also is a motion

25 to strike the motion for expedited hearing that was filed.

1    MR. OSTROWSKI:  And I'd like to put an oral motion on

2 the record for sanctions for that fraudulent and deceptive act

3 of having two people in that room with the intent of one person

4 feeding the other what to say.  I'm making that motion now

5 formally.

6    THE COURT:  Okay.

7    MR. OSTROWSKI:  I'll follow it up in writing.

8    THE COURT:  Okay.  That's noted for the record.

9    MS. SLABY:  Your Honor, I'm -- Mary Grenen is not

10 participating via phone.  I'm participating by phone.  I

11 entered my appearance.

12    THE COURT:  That's fine.

13    MR. OSTROWSKI:  My motion's on the record.

14    THE COURT:  His motion's on the record for -- you

15 know, for whatever purpose.  I'm not dealing with that right

16 now, so there's no point in us getting sidetracked.

17    We'll take -- we'll take a break from -- it's five to

18 10 by my clock now -- and give you an opportunity to go get the

19 documents and bring them back.  In fact, I'll give you 15

20 minutes.  Ten after -- ten after 10.

21    MS. SLABY:  Okay.  Thank you.

22    THE COURT:  Okay.  You want to print those out.

23 Okay.  We'll take a break then.

24    MS. SLABY:  Thank you.

25    (Recess 9:54 A.M./Reconvene 10:08 A.M.)

1          THE COURT:  Okay.  We're back in session.  You may be

2 seated.

3          Ms. Slaby, are you on the line?

4          MS. SLABY:  Yes, Your Honor.  I'm present.  Could I

5 just ask a quick question?  I'd like to clarify which motion we

6 are handling first.  Is it the Conklin motion or the Ostrowski

7 motion?

8          THE COURT:  Well, I hadn't even gotten that far yet.

9          MS. SLABY:  Okay.  Your Honor, I just request if

10 we're talking about Mr. Conklin's motion that Mr. Ostrowski not

11 be permitted to represent Mr. Conklin.  Mr. Conklin is pro se.

12          Furthermore, Mr. Ostrowski is suspended to practice

13 law.

14          THE COURT:  Is that correct, Mr. Ostrowski?

15          MR. OSTROWSKI:  Is what correct?

16          THE COURT:  Are you suspended from the practice of

17 law?

18          MR. OSTROWSKI:  Oh, yes.

19          THE COURT:  Okay.  So, you're --

20          MR. OSTROWSKI:  It's in their motion.  They put it in

21 the record, and I don't know why --

22          THE COURT:  Well, I though it would ask you --

23          MR. OSTROWSKI:  Yeah.

24          THE COURT:  -- to verify that or not.

25          MR. OSTROWSKI:  Yeah.

1          THE COURT:  I'm sure you don't accept everything in
2     their motion as being true.

3          MR. OSTROWSKI:  Yeah.  I hope you -- I hope you abide
4     by that same rule, Judge.

5          THE COURT:  Okay.

6          MR. OSTROWSKI:  They don't have a verification.  They
7     have nothing to support their motion.

8          THE COURT:  Right.  The next matter then is going to
9     be to deal with the issue of recusal, which has been filed in
10    Mr. Conklin's case.  And I want to deal with that right off so
11    that we can move forward.  Because I'm going to deny the motion
12    for recusal, and let me just make a couple of comments.

13         For the record, there have been some allegations in
14    the motion requesting recusal that I have a bias or a prejudice
15    against Mr. Conklin.  And a judge is under the duty, whenever
16    their impartiality is reasonably questioned, to disqualify
17    themselves, and 28 U.S.C. 455(a) requires that.

18         And the test is whether a reasonable person with
19    knowledge of the facts would conclude that my impartiality
20    might be reasonably questioned.  I've looked at the allegations
21    in the motion.  And, in fact, I also reviewed the transcript of
22    the -- at least the last hearing we had with Mr. Conklin.
23    You've, in your motion, referred to some earlier hearings; I
24    had forgotten you had been here so many times.

25         So, anyway, I did review -- I did review at least the

1   last hearing.  I -- I am certain I said things that you didn't

2   like to hear. I'm -- I am certain I said things that implied --

3          MR. CONKLIN:  Which are you referring to, Your Honor?

4   I don't -- I'm not sure what you're referring to.

5          THE COURT:  Any -- well, your --

6          MR. OSTROWSKI:  The 2008 one --

7          THE COURT:  Sir --

8          MR. OSTROWSKI:  -- when she beat you up when you

9   weren't in the courtroom.

10         THE COURT:  Mr. Ostrowski, you're not representing

11  him, so I'd ask you to please refrain.

12         MR. CONKLIN:  My apologies.  I just want to be

13  clear --

14         THE COURT:  Oh, no, you --

15         MR. CONKLIN:  -- specifically what you're referring

16  to.

17         THE COURT:  No need to apologize.

18              (Pause/Off-the-record colloquy)

19         THE COURT:  You state that, "Debtor believes and

20  avers that this Court first revealed its bias against debtor by

21  clearly recognizing during a hearing on October 21, 2004,

22  appertaining to a previous foreclosure action, that debtor was

23  notably subjected to bizarre and collusive behavior through no

24  fault of his own, and for which relief could have been

25  provided."

1          And then you said that I acknowledge that you were

2    running out of time but nonetheless the adversarial hearing

3    that was previously scheduled would now go forward.

4          So, what I'm saying is that you -- based on your

5    pleading here -- and I don't remember that 2004 hearing -- but

6    based on that pleading, you're suggesting that a hearing went

7    forward when you didn't think it should have gone forward, and

8    I permitted it to go forward.  That's what I'm reading what

9    you're saying here.

10         MR. CONKLIN:  I'm confused there.  I -- I -- my

11   understanding was a hearing was going to go forward.  My

12   adversarial hearing was going to go forward.  And during the

13   October 21st, 2004 hearing, you clearly stated this is bizarre

14   and collusive behavior.  You recognized what was going on.

15         THE COURT:  Well, I don't -- I don't remember saying

16   it was bizarre --

17         MR. CONKLIN:  It's --

18         THE COURT:  -- or collusive behavior.  I don't

19   remember saying either one of those.

20         MR. CONKLIN:  It's in the transcripts.

21         THE COURT:  Well, I'm not -- I didn't say it wasn't.

22         MR. CONKLIN:  I'm just saying.

23         THE COURT:  And I know that this -- this is a very

24   complex proceeding with a variety of lenders.  I mean I

25   understand -- I remember that much about this.

1    But I guess what I'm saying is if, in fact, I -- say

2  I did say that, and I won't disagree with you if I said that,

3  but then I ruled a certain way, I don't think that that

4  suggests that I was biased.  And if you believe that my

5  decision was incorrect, then your course of action is to appeal

6  it.

7    I may affirm expressions of emotion, view of the

8  facts that litigants provide.  But simply because I don't grant

9  the relief they've requested doesn't mean that I am biased or

10  have -- or I am prejudice against you.

11    You -- I did, I know, in subsequent cases indicate

12  that I thought your filing was in bad faith --

13    MR. CONKLIN:  I --

14    THE COURT:  -- because that --

15    MR. CONKLIN:  I never saw that.

16    THE COURT:  That is a -- oh, well, I'm sure it's

17  there.  That -- and that is something I have to consider today,

18  or can consider today, whether it's bad faith.  And that's a

19  term of art, it's not a slander against you.  It's a

20  characterization of whether you are using bankruptcy for

21  appropriate purposes.  And I know we had a discussion -- a

22  rather extensive discussion on why you're in bankruptcy, and

23  what you hope to accomplish there.  Because I remember we

24  discussed at the last hearing when you were before me whether

25  you were employed, and whether or not you could fund a Chapter

1  13 plan.  Because we were here on a motion to dismiss a case,

2  which this is on a motion to lift the stay.

3            MR. CONKLIN:  I need to know when you're referring to

4  because, you know, we're jumping around here a little bit.  You

5  say the last time, what is the last time?

6            THE COURT:  2008, I don't actually have the --

7            MR. CONKLIN:  December 2nd, 2008?

8            THE COURT:  I don't know.

9            MR. CONKLIN:  When I asked for five more minutes for

10  somebody to come in, that had paid --

11           THE COURT:  Oh, yes.  Yes.

12           MR. CONKLIN:  -- paid the note, and you refused to

13  allow that to happen?

14           THE COURT:  I had already entered my order, yes, I

15  did.  And I indicated that you should take that up in State

16  Court.  Yes, I do recall that, um-hum.

17           MR. CONKLIN:  But if I was still part of the

18  bankruptcy estate before you dismissed it, okay, then that

19  would be part of the bankruptcy estate, and that would go to

20  the heart of whether the creditor or the alleged creditor has

21  any --

22           THE COURT:  Well --

23           MR. CONKLIN:  -- bearing on the estate.

24           THE COURT:  And my -- what I said at the time was

25  that is a matter that you can raise in the foreclosure

1  proceeding.  You're raising State -- primarily State law claims

2  against the creditor, and -- at least that's generally what

3  you've been raising in front of me.  And at that time, I was

4  there -- you were there on a motion to dismiss, and you

5  primarily wanted to retry a number of matters that had been

6  tried in State Court.  And that was the issue -- that was one

7  of the issues then, and it seems to me one of the issues now.

8          MR. CONKLIN:  Well --

9          THE COURT:  But it -- but -- let me just get to the

10  point here because we're getting into talking about the

11  substance of what your concern is in this case.  I'm not going

12  to recuse myself.  And at this point, I'm -- Mr. DeHart was not

13  served on -- was not served with a copy of this in time to

14  appear, and probably would not take any action one way or

15  another about whether he should be recused from this, or we

16  bring in another trustee.  So, I'm not necessarily -- I'm not

17  necessarily ruling on that.  But I am not going to recuse

18  myself.

19          MR. CONKLIN:  Well, can we just back up a second so I

20  can get this on the record?

21          THE COURT:  Sure.

22          MR. CONKLIN:  When we go back to October the --

23          MR. OSTROWSKI:  For the record, I want to join in the

24  motion and be heard on it then.

25          THE COURT:  Join in the motion --

1          MR. OSTROWSKI:  The motion to recuse.

2          THE COURT:  Okay.  Sure.

3          MR. CONKLIN:  Going back to October 18th, 2004 -- I'm

4 sorry, that's -- October 21st, 2004.  I tried to get an

5 emergency hearing before this Court because I was in bankruptcy

6 and that's when the -- my former attorney lifted my stay

7 without me -- my TRO without even me knowing it, and you talked

8 about collusive behavior, and this is bizarre, and so on and so

9 forth.  And you're --

10          THE COURT:  Well, I said what you were saying was

11 bizarre.  I mean --

12          MR. CONKLIN:  Uh, no --

13          THE COURT:  -- an unusual --

14          MR. CONKLIN:  If we pull the transcripts, no, I mean

15 you go into pretty much detail about, you know --

16          THE COURT:  Um-hum.

17          MR. CONKLIN:  -- how I just got slammed, and it

18 shouldn't --

19          THE COURT:  Okay.

20          MR. CONKLIN:  -- have happened.

21          THE COURT:  Okay.

22          MR. CONKLIN:  Okay.

23          THE COURT:  And?

24          MR. CONKLIN:  That's in the transcripts.

25          THE COURT:  Okay.

1          MR. CONKLIN:  But be that as it may, at that time,

2  you said I have to be prepared to move forward, you're going to

3  get a hearing in 30 days, you better be prepared to bring your

4  evidence.

5          You also said that -- and at the time, Attorney

6  Campbell was supposed to be there for me, but he could not make

7  it.  So, that was my new attorney.  But if I or he needs more

8  time, even beyond that 30 days, to get this discovery in

9  because we're under a time line now, we're under time

10 constraints.

11         THE COURT:  Um-hum.

12         MR. CONKLIN:  That you may grant that, too.  When I

13 came in on November 18th, though, of 2004, all that changed.

14 As if -- like it was never said -- and you basically said, "I

15 saw you made a mistake, you're dismissed."

16         Now in between that, what happened my friend and

17 attorney in civil rights matters, Don Bailey, over the phone

18 had me -- he dictated a letter to me to go to Charles DeHart.

19 And I just took down as he said, and I sent it by fax to him.

20 And I think that is fundamental thing that probably changed the

21 whole perception of what's going on.  Because any time Don

22 Bailey comes in and shows that I'm associated with him, I get

23 slammed.  There's no question about that in my mind.  Now --

24         THE COURT:  Well, you didn't copy me with that

25 letter.

1          MR. CONKLIN:  No, that was just -- he just had me

2  sent it to --

3          THE COURT:  Okay.

4          MR. CONKLIN:  -- Trustee DeHart and I believe he

5  probably shared that with you at some point.

6          THE COURT:  No, he didn't.  I haven't --

7          MR. CONKLIN:  Well --

8          THE COURT:  I haven't seen that -- I didn't see that

9  letter until you sent it to me this morning.

10          MR. CONKLIN:  All I know is night and day from

11  October 21st to November 18th of 2004, one.

12          Two, just like when we go into this -- this motion

13  now -- well, no, actually, I should be taking testimony from

14  Mr. Ostrowski because during my dad's bankruptcy hearing -- and

15  I'm not even here, and this is somewhere in March of 2009, you

16  spent half the time slamming me, and I'm not even there, it's

17  my dad's bankruptcy.  So, you know -- and I think that's on the

18  record, and I mean I'm sure there's -- the transcripts will

19  show that.

20          And there's affidavit --

21          THE COURT:  Well --

22          MR. CONKLIN:  There's sworn declarations in front of

23  you about that.  And plus there's not one from Mr. Ostrowski,

24  but he was there, and he could certainly testify to what was --

25          THE COURT:  Well, that's -- I mean I understand what

1 you're saying, but I have to decide whether I think I'm biased

2 against you.

3          MR. CONKLIN:  I understand.  But can I --

4          THE COURT:  I'm not.

5          MR. CONKLIN:  Can --

6          THE COURT:  I can understand that -- I understand you

7 feel that way.  I understand Mr. Ostrowski feels that way.

8          But I feel confident that if a reasonable person

9 looked at what I did in this case, they may say, "She made a

10 mistake, she didn't do the right thing, she should have handled

11 it differently."

12          But I don't think that you -- a reasonable person

13 would say that I'm bias.  I have no connection with you.  I

14 know really nothing about you other than what -- what happens

15 here.

16          So, I was rather surprised to get the motion for

17 recusal, other than the hope that you would get additional time

18 to bring in another judge.  I mean to me, that --

19          MR. CONKLIN:  Well --

20          THE COURT:  -- that was what I thought perhaps was

21 your interest.  Because I cannot imagine -- I don't know how I

22 could be found to be bias.

23          So, let me just say that -- that's my ruling, and

24 we're done on that issue.

25          MR. CONKLIN:  I still want to get two more things on

1  that -- on that issue.

2          THE COURT:  Well, no, I'm not going to listen to

3  anymore on that.  And --

4          MR. CONKLIN:  Your Honor --

5          THE COURT:  -- you know -- no, wait.  Hang just a

6  second.  Hang on a second.  So, I'm not recusing myself, that's

7  the first issue.

8          MR. OSTROWSKI:  May I be very briefly heard on the

9  recusal issue?  Very briefly.  I'm not going to repeat what

10  conk said.

11          THE COURT:  Yes.

12          MR. OSTROWSKI:  First of all, I didn't know this

13  issue about Mr. Conklin being denied a five --

14          MS. SLABY:  Your Honor, I'm sorry, if I could

15  interrupt.  Mr. Conklin filed the motion for recusal.  And as I

16  -- as I mentioned, we object to Mr. Ostrowski entering --

17          THE COURT:  He just joined.  He just filed -- he just

18  joined in his own case.  I'm going to let him say --

19          MS. SLABY:  Okay.

20          THE COURT:  -- how I could be biased against him when

21  he hasn't -- when I haven't had a case yet with him.

22          MR. OSTROWSKI:  Well, I mean the prejudice to me is

23  you're biased against Steve Conklin.  I don't think that that's

24  real complicated to understand.  I think you can pretty much

25  grasp that.

```
 1          THE COURT:  My prejudice to you is because I'm biased
 2  to Steve Conklin?  Okay.
 3          MR. OSTROWSKI:  Yeah, that's pretty straightforward
 4  in --
 5          THE COURT:  Okay.
 6          MR. OSTROWSKI:  -- any logical analysis anyway.  Just
 7  very briefly:  I didn't know this issue that Mr. Conklin was
 8  denied in five minutes, I'd like to establish as a matter of
 9  record that we took a 15-minute recess about five, ten minutes
10  ago to accommodate the other side on an issue.
11          THE COURT:  That's fine.
12          MR. OSTROWSKI:  You accommodated them for 15 minutes.
13  You extended it from ten to 15 --
14          MS. SLABY:  Most people would have much more time to
15  review a response.  We had to cram our review of --
16          THE COURT:  Okay.
17          MR. OSTROWSKI:  I'm in the middle of talking.
18          THE COURT:  Ms. Slaby --
19          MS. SLABY:  Yes.
20          THE COURT:  I understand that you feel like that was
21  perfectly justified.  I wouldn't have done it if I didn't feel
22  like it was justified.  Let's --
23          MR. OSTROWSKI:  It is justified.
24          THE COURT:  Let's -- let's --
25          MR. OSTROWSKI:  But it would have been justified for
```

1  Mr. Conklin to give him --

2          THE COURT:  Sir, you're interrupting me now.

3          MR. OSTROWSKI:  Yes, I'm -- you're right.  And I

4  apologize, Your Honor.

5          THE COURT:  Okay.  I'd like to just keep this on

6  track and let's keep this focused on what we need to decide,

7  and not get into side issues.  I'm sure there's a lot of

8  acrimony between the parties in this case, but I don't choose

9  to participate in it.  Let's focus on the issues we have in

10  front of us.  You wanted --

11          MR. OSTROWSKI:  The last --

12          THE COURT:  You wanted, Mr. Ostrowski, to say

13  something.

14          MR. OSTROWSKI:  Yeah.

15          THE COURT:  Go ahead.

16          MR. OSTROWSKI:  The last point -- the first point was

17  you just gave them 15 minutes; you denied him five a couple of

18  years ago.

19          And just to speak to the episode where I was

20  representing Mr. Conklin's father, what you did in court that

21  day was really inappropriate, Judge.  You attacked this

22  gentleman, and you were doing it to impress me.  You were doing

23  it to say to Mr. Ostrowski you stay away from Mr. Conklin.  I

24  could tell at the time.  I walked out of here, I thought, "What

25  in the world was she up to in there."  And there was a very

1   clear impression.  Mr. Phillip Conklin was appalled and

2   offended that you attacked his son when we were here on his

3   issue.

4           I was trying to have a legal discussion with you

5   about a case -- a case law.  I think it was a Third Circuit

6   case; I didn't go back and check my notes.  But what went on

7   the courtroom here that day was totally inappropriate.

8           THE COURT:  Okay.  I understand your --

9           MR. CONKLIN:  I still need to get two more points --

10          THE COURT:  -- your position.

11          MR. CONKLIN:  -- on the record, if I may.

12          THE COURT:  Well, we're not talking about -- what,

13  about recusal?

14          MR. CONKLIN:  It goes to the heart of this recusal.

15          THE COURT:  Okay.  Go ahead.  Go ahead.

16          MR. CONKLIN:  We wouldn't even be here today had you

17  reviewed their emergency motion.  Because by their own pleading

18  and their own exhibits, which is the basis of that motion to

19  strike, they don't have any standing.  And if you -- but you

20  precipitously granted this to them.

21          Now I'll go one --

22          THE COURT:  Well, you're now on a different issue.

23          MR. CONKLIN:  Well, but -- but it goes to the heart

24  of it.  Because you reviewed it -- and my understanding is

25  you're --

1                THE COURT:  I did review it.

2                MR. CONKLIN:  -- very learned in the law.

3                THE COURT:  I did review it.  And they allege --

4                MR. CONKLIN:  There's no standing.

5                THE COURT:  They allege that they have obtained the

6   property -- a Sheriff's sale deed.  And are you telling me now

7   that you are saying they haven't obtained --

8                MR. CONKLIN:  If you look at Paragraphs 9 and 10

9   respectively of their emergency motion --

10               THE COURT:  Mr. Conklin, would you respond just to my

11  question?

12               MR. CONKLIN:  I'm sorry.

13               THE COURT:  I am saying:  Are you denying that they

14  have obtained a deed from the Sheriff for your property?

15               MR. CONKLIN:  I deny that they obtained a lawful

16  deed, yes.

17               THE COURT:  Well, you're saying "lawful."

18               MR. CONKLIN:  Yes, absolutely.

19               THE COURT:  I'm saying are you denying that the

20  Sheriff gave them a deed?  You may not think it's lawful, but

21  are you denying that that happened?

22               MR. CONKLIN:  Yeah.  Yeah.  I don't even think the

23  Sheriff has the power to do that.

24               THE COURT:  Okay.  That is another issue, too.  And

25  -- and --

1          MR. CONKLIN:  But --

2          THE COURT:  If you don't choose -- if you don't

3 choose to answer that in a straightforward way, that's fine.  I

4 understand you don't think it's lawful.  I understand that --

5 that point.  But they have alleged that they have received the

6 deed to your property in a Sheriff's sale.

7          Now, you know, we're not to the point of necessarily

8 discussing that and the merits of that argument as being a

9 basis for relief from the stay.  But under Pennsylvania law, if

10 they have a deed to the property, it's their property.  Okay.

11          Mr. Ostrowski, I'm going to have to tell you again

12 that you are not to -- I have to tell Ms. Slaby because she's

13 not here.  Mr. Ostrowski is whispering something to Mr.

14 Conklin, so --

15          MR. OSTROWSKI:  Can we know every time Ms. Grenen

16 whispers something to Ms. Slaby?  No, we can't know that

17 because they don't even tell us they're on the phone.

18          THE COURT:  Well, this is --

19          MR. OSTROWSKI:  And we have a interest.

20          THE COURT:  This is different.  Sir --

21          MR. OSTROWSKI:  We have a joint interest --

22          THE COURT:  Sir --

23          MR. OSTROWSKI:  -- that you --

24          THE COURT:  Sir, stop talking.

25          MR. OSTROWSKI:  No need to get angry.

1            THE COURT:  Stop talking.  Stop talking and we'll

2 take turns, and it will work out better.

3            MR. OSTROWSKI:  I understand how it works.

4            THE COURT:  They are two attorneys in the same firm.

5 This is a pro se litigant, and you are an attorney not licensed

6 to practice in Pennsylvania.  You may not represent him under

7 any circumstances.

8            MR. OSTROWSKI:  I'm not.  We have a joint interest in

9 this thing that they -- they called us indispensable parties to

10 each other.

11           THE COURT:  Well, yes, you are.

12           MR. OSTROWSKI:  Are you saying that I cannot talk to

13 an indispensable --

14           THE COURT:  No, you can't advise him.

15           MR. OSTROWSKI:  If we were sitting at a table

16 together, there would be nothing inappropriate about me leaning

17 over and talking to a co-party about our case.

18           THE COURT:  You're not --

19           MR. OSTROWSKI:  And this effort to interpose this

20 thing about --

21           THE COURT:  You're not in the same case.  You're in

22 two different cases.  You filed two different bankruptcy cases.

23           MR. CONKLIN:  Well, I --

24           THE COURT:  They have filed two separate motions, and

25 we're going to deal with each of them separately.

1          MR. OSTROWSKI:  Very good.

2          THE COURT:  Okay.

3          MR. CONKLIN:  Your Honor --

4          THE COURT:  You have -- you're indicating that you

5  have common claims to the same property.  Different claims, but

6  you have claims to the same property.

7          MR. OSTROWSKI:  It's not my motion that brought us

8  here, and I didn't put us in the room at the same time, so --

9          THE COURT:  No.  No, I understand that.

10          MR. OSTROWSKI:  -- just trying to negotiate that.

11          THE COURT:  That is -- it is their motion.  It is

12  their motion.

13          MR. CONKLIN:  Your Honor, back to the deed.  Though

14  requested multiple times and challenged, I have never received

15  a copy -- a complete copy of what they claim is the deed that

16  was transferred from the Sheriff.

17          THE COURT:  Ms. Slaby, do you have that available

18  today?

19          MR. CONKLIN:  I mean --

20          MS. SLABY:  Your Honor, it's recorded.  So, it's a

21  matter of public record.

22          THE COURT:  Okay.

23          MR. CONKLIN:  Well --

24          THE COURT:  That's your answer, Mr. Conklin.

25          MR. CONKLIN:  Well --

TRANSCRIPTS PLUS, INC.
PHONE 215-862-1115 • FAX 215-862-6639 • E-MAIL CourtTranscripts@aol.com

1          THE COURT:  Okay.

2          MR. CONKLIN:  Their pleading itself claims that I

3 executed, made, and delivered to EMC.

4          THE COURT:  Well, we're talking about a different --

5          MR. CONKLIN:  I understand, but --

6          THE COURT:  We're talking about a different matter

7 now.

8          MR. CONKLIN:  But had you reviewed that, we wouldn't

9 be having that hearing.

10          THE COURT:  Well --

11          MR. CONKLIN:  And then the last thing -- the last

12 thing that I want to get on the record is I just received this

13 last night, that you denied my installment payments, and you

14 gave me a date of seven days from the date of this order.  But

15 the order's dated January 24th, and I just get this last night.

16 You know, obviously it doesn't take six days to get from

17 Harrisburg to my place.

18          THE COURT:  I don't mail them out.

19          MR. CONKLIN:  Well, you know --

20          MR. OSTROWSKI:  Yeah, but --

21          MR. CONKLIN:  -- it seems a little suspicious that it

22 comes up this way, and I think that's just further, you know --

23 I mean it's like time to be -- put me out today.  Like I can't

24 make, you know, make that demand, you'll dismiss me, boom,

25 we're done.

1    And so, yeah, I think -- I think there's more than

2 enough on the record --

3    THE COURT:  Well, I'll tell you, I'm perfectly happy

4 to give you another week to get your filing fee in.  How about

5 that?

6    MR. CONKLIN:  All right.  Thank you.

7    MR. OSTROWSKI:   Nothing further from me, Your Honor.

8    THE COURT:  Okay.

9    MR. OSTROWSKI:  Oh, wait, one do -- I do want to put

10 on the record that we do have evidence that somebody in this

11 Federal Courthouse plays with mail.  We have -- and I -- you

12 know, I'm not prepared to put on the evidence, but --

13    THE COURT:  Well, these are not -- these are not done

14 through the Federal Courthouse.  These are done through the

15 bankruptcy noticing center.  It's -- they send them out, I

16 think.

17    MR. OSTROWSKI:  So, it extends --

18    THE COURT:  Although I'm not sure.

19    MR. OSTROWSKI:  So, it extends beyond --

20    THE COURT:  This is not -- this is not electronic,

21 this would have been mailed.

22    MR. OSTROWSKI:  Yeah.

23    THE COURT:  So, I guess they are mailed.

24    MR. OSTROWSKI:  Yeah.  Yeah.  And we have evidence.

25 If you ever want to --

1          THE COURT:  Okay.

2          MR. OSTROWSKI:  I'd be happy to come in and make an

3  offer of proof.

4          THE COURT:  No, I really don't --

5          MR. OSTROWSKI:  No.

6          THE COURT:  I really don't want to know --

7          MR. OSTROWSKI:  Okay.

8          THE COURT:  -- because --

9          MR. OSTROWSKI:  Somebody played with that yesterday.

10          THE COURT:  I'm happy to give him additional time if

11  he needs to file -- to pay a filing fee.

12          Okay.  And we sort of segued somewhat in the motion

13  to strike the motion for expedited hearing.  I'm not inclined

14  to grant that either.  We are going to have an expedited

15  hearing, and that's going to work to both the detriment and to

16  the benefit of both parties in the sense that they -- everyone

17  needs to be prepared to go forward to deal with this today.

18  So, that -- that's --

19          MR. CONKLIN:  Excuse me.  I'm sorry --

20          THE COURT:  And that applies to EMC as well as it

21  does to Mr. Conklin, Mr. Ostrowski.

22          MR. OSTROWSKI:  Your Honor, in all fairness, there's

23  no reason -- I mean you just, you know, willy-nilly and gave

24  him another week to respond and pay the filing fee.  I wanted

25  to serve some subpoenas.  I couldn't even serve a subpoena

1 because I didn't have a ten-day compliance period because I

2 didn't even have notice of this thing until last -- I think it

3 was Friday when I officially got notice.  I mean you're saying

4 you're going to go forward knowingly to the detriment of

5 parties?

6          THE COURT:  Well, let's --

7          MR. OSTROWSKI:  Don't go -- please don't go forward

8 to detriment, Your Honor.  I'm begging you.

9          THE COURT:  We can talk about --

10          MR. OSTROWSKI:  Do not go forward to my detriment and

11 know that you are doing that.

12          THE COURT:  Well, okay, fine.  We can -- we can --

13          MR. OSTROWSKI:  And it is to my detriment because I

14 would like to have some procedural due process rights, and I'd

15 like this thing --

16          MR. CONKLIN:  And --

17          MR. OSTROWSKI:  -- put off a couple weeks.

18          MR. CONKLIN:  And so -- so would I.

19          THE COURT:  Okay.

20          MR. CONKLIN:  I'd like to have --

21          THE COURT:  Well --

22          MR. CONKLIN:  I'd like to have due process one time.

23 That would be really nice where I have a full, fair --

24          THE COURT:  Well --

25          MR. CONKLIN:  -- and impartial hearing.

1          THE COURT:  It looks like there's been a lot of due

2    process.

3          MR. OSTROWSKI:  How is this to my detriment?  You

4    know, you're just -- you're telling me that you're going to go

5    forward.  You're a Judge on a Federal bench, and you're telling

6    me that you're going to go forward with the hearing knowingly

7    to my detriment.  Can you provide some justification for that?

8          THE COURT:  Well, I just don't see it the way you do,

9    I guess.  It's not to your detriment.

10          MR. OSTROWSKI:  Well, you said detriment.  Detriment

11    was your word.

12          THE COURT:  I said --

13          MS. SLABY:  Your Honor, if I may --

14          THE COURT:  -- to both -- both sides -- no, just a

15    minute, Ms. Slaby.

16          MR. OSTROWSKI:  I'm not concerned about their side.

17          THE COURT:  Both --

18          MR. OSTROWSKI:  You -- I'm one of those both.

19          THE COURT:  Both --

20          MR. OSTROWSKI:  How is this to my detriment?  And why

21    are you going forward to my detriment?  I don't want that to

22    happen.  Please.

23          THE COURT:  Both sides are equally burdened by moving

24    forward now.

25          MR. OSTROWSKI:  Exactly.

1         THE COURT:  That's all I'm saying.

2         MR. OSTROWSKI:  Then why are we doing it?

3         THE COURT:  Both of you.

4         MR. OSTROWSKI:  Why we doing it?  Let's have a

5    continuance.  I do not want courts going forward knowingly to

6    the detriment of my rights.

7         THE COURT:  Well, one --

8         MR. OSTROWSKI:  Is that too much to ask?

9         THE COURT:  One of the reasons is because I think you

10   have a misconception of what you can do in Chapter 7.  I think

11   -- I --

12        MR. OSTROWSKI:  How do you know I have a

13   misconception about anything?

14        THE COURT:  Well, first of all --

15        MR. OSTROWSKI:  Did we get testimony from me?

16        THE COURT:  First of all because you're in Chapter 7.

17   The only reason that that lease would be any value to the

18   estate would be if the trustee were going to administer it.

19        MR. OSTROWSKI:  And I do reaffirm that lease.

20        THE COURT:  Well, you can't reaffirm the lease.

21   You're in Chapter 7, and the trustee is the one who makes that

22   decision as to whether -- that there's any value to the lease.

23   Additionally --

24        MR. OSTROWSKI:  Well, how do we know all this --

25        THE COURT:  Additionally --

1          MR. OSTROWSKI:  -- without evidence, without

2   testimony.

3          THE COURT:  Additionally --

4          MR. OSTROWSKI:  You're going forward to my detriment.

5   It came out of your own mouth, and I'd like to -- a continuance

6   so I can seek relief from the Third Circuit Court of Appeals or

7   an appropriate United States District Judge.

8          THE COURT:  You can --

9          MR. OSTROWSKI:  It is wrong --

10         THE COURT:  No --

11         MR. OSTROWSKI:  -- of a judge to sit on a bench in a

12  court of law in the United States of America and bring someone

13  in here and say this is an emergency hearing, and you have to

14  appear, and for you to say "I'm going to go forward to your

15  detriment."  That's just wrong, Judge, and you cannot justify

16  that.  You cannot justify that.  You have to grant a

17  continuance.

18         THE COURT:  No, I don't.

19         MR. OSTROWSKI:  I know you don't because you're not

20  doing the right thing.

21         THE COURT:  Well, that's your view.

22         MR. OSTROWSKI:  What you're doing is dishonest.

23         THE COURT:  Well --

24         MR. OSTROWSKI:  It's very dishonest.

25         THE COURT:  That -- you're -- everyone is entitled to

1 their opinion, and if that's the way you feel, that's fine.

2         MR. OSTROWSKI:  Well, you're going forward to my

3 detriment.  As long as we all are operating under that

4 presumption, you know, I guess not much we can do in America

5 here.

6         THE COURT:  Well, let me ask you this, Mr. Conklin,

7 and let -- I mean Mr. Ostrowski.  Let's talk about your case

8 first.  This is a Chapter 7 matter, and I'm going to give Ms.

9 Slaby a chance to talk.  She hasn't had much of an opportunity

10 to say anything.

11         MS. SLABY:  Thank you, Your Honor.

12         THE COURT:  This is a Chapter 7 case in which the

13 movant has moved for relief from the stay -- and, Ms. Slaby,

14 I'll let you go ahead and state your position as to why you

15 think you're entitled to get relief from the stay against Mr.

16 Ostrowski even though he's just filed a petition and he hasn't

17 filed schedules and statements, and we don't even have anything

18 of record yet that says that he has a leasehold interest.  That

19 that's not even of record.  We don't even know that yet.

20         MR. OSTROWSKI:  I have a leasehold interest.  It is

21 now of record.

22         THE COURT:  What did you -- how did you make it of

23 record?

24         MR. OSTROWSKI:  It's in my motion.  I have a

25 leasehold interest.  Am I being called to the stand by the

1  Court to give testimony?

2          THE COURT:  No, I'm asking you:  Have you -- all I'm

3  asking you is in a Chapter 7 case, typically people file

4  schedules and statement of financial affairs.  And you have

5  not --

6          MR. OSTROWSKI:  I have never done -- I've never done

7  a bankruptcy before, Judge.

8          THE COURT:  And you've never -- you haven't filed

9  those forms, correct?

10          MR. OSTROWSKI:  Correct.  I understand that there's

11  some forms that I still need to file.

12          THE COURT:  Yes.  Yes, that should have been filed

13  within 15 days of the filing of the petition.

14          MR. OSTROWSKI:  Yeah, it was just filed last Monday.

15          THE COURT:  Okay.  So, that --

16          MR. OSTROWSKI:  So, we're on the eighth day.

17          THE COURT:  I mean that's --

18          MR. OSTROWSKI:  Yeah.

19          THE COURT:  That's the -- I'm sorry?

20          MR. OSTROWSKI:  We're on the eighth day since the

21  filing of the petition.

22          THE COURT:  Yes, so that -- I mean they're not due

23  yet, but I'm saying we don't have anything in the record --

24          MR. OSTROWSKI:  So, I should have filed something

25  that's not even due?  You said I should have filed and now

1  you're saying --

2          THE COURT:  No, no, no.

3          MR. OSTROWSKI:  -- it's not even due yet.

4          THE COURT:  No, no, I didn't say that.  What I'm

5  saying is that we have a -- what I'm saying -- sometimes even

6  when I turn it to your advantage, you don't recognize it.  What

7  I'm saying --

8          MR. OSTROWSKI:  I'm not looking for an advantage.

9  I'm looking for fairness, Your Honor.

10          THE COURT:  What I'm saying to Ms. --

11          MR. OSTROWSKI:  Are you turning things to their

12  advantage that I'm not picking up on either?

13          THE COURT:  What I'm saying to Ms. Slaby is she has

14  requested relief from the stay.  I don't yet know what this

15  asset is.  I don't know anything about the asset other than you

16  now, in your motion, have alleged -- but I don't have a copy of

17  the lease, do I?  Is there -- is there a written lease?

18          MS. SLABY:  Your Honor, there's never been proof of a

19  leasehold interest.

20          THE COURT:  Okay.

21          MR. OSTROWSKI:  I'm saying it's in the motion.  I

22  said that there is, that's proof.

23          THE COURT:  What do you have?  Do you have a written

24  lease?

25          MS. SLABY:  There's nothing attached, Your Honor.

1          THE COURT:  Well, I -- I'm sorry.  Oh, that's what
2  you're saying, okay, Mr. Ostrowski.  You're saying there is.
3  Okay.

4          Go ahead, Ms. Slaby on your motion.

5          MS. SLABY:  Your Honor, I just -- if we could not get
6  sidetracked here and stay focused on what --

7          THE COURT:  Well, I -- Ms. Slaby, I'm trying my best
8  to do that.

9          MS. SLABY:  I know, and that was not directed really
10  towards you at all.

11         First of all, Mr. Ostrowski filed a bankruptcy
12  petition in Chapter 7 in Bankruptcy Court.  The address that he
13  lists on the docket is completely different from Mr. Conklin's
14  address.  I'm -- I have no evidence of any kind of leasehold
15  interest.

16         He claims to be a co-debtor of the premises located
17  at 100 Spangler Road.  However, like I said, there's been no
18  evidence.  And substantial harm will occur -- will continue to
19  accrue to EMC if he's allowed to pursue.

20         I don't think that Bankruptcy Court is the right
21  venue right now.  I mean if he's filing a Chapter 7 to have a
22  fresh start in Bankruptcy Court, I can understand.  But there's
23  been no -- there's no valid legal basis for this Chapter 7
24  filing.  We believe it's an abuse of the judicial process, and
25  it was, again, solely filed to prevent EMC from proceeding with

1  the eviction of the mortgaged premises.  The eviction was

2  scheduled for 2 o'clock P.M. on the 23rd of January.  This was

3  filed mere hours before the eviction.

4          It's in clear violation of Judge Maria Musti Cook's

5  opinion that was written in the Court of Common Pleas where Mr.

6  Conklin was enjoined from filing anything that had a legal

7  basis.  And I -- and -- that any valid legal basis.  And this

8  does not have a legal basis --

9          THE COURT:  I'm sorry.  You've lost me on that.  He

10 was enjoined from filing something that had a legal basis?

11         MS. SLABY:  I'm sorry.  He was enjoined from filing

12 anything that did not have a legal basis.

13         THE COURT:  Did not have a legal basis.  Okay.

14         MS. SLABY:  And it was one of the exhibits to my

15 motion.

16         THE COURT:  The -- Judge Musti's --

17         MS. SLABY:  Musti Cook, Your Honor.

18         MR. CONKLIN:  Yeah --

19         MR. OSTROWSKI:  I have never been a litigant on Judge

20 Musti Cook's docket, so I -- I have no idea how this has

21 anything to do with me.

22         THE COURT:  Okay.  Well --

23         MR. CONKLIN:  It should be noted that Judge Musti

24 Cook is a defendant in a federal suit that's going on appeal.

25 That she reached in -- how she even got this case is bizarre.

1    But she made that ruling and she's basically saying I can't

2    file anything in any court without a valid legal basis which

3    is, you know -- again, this is why we get back to the --

4              MS. SLABY:  If I could interrupt.  If we could just

5    stay focused on Mr. Ostrowski's Chapter 7 filing.

6              THE COURT:  Okay.

7              MR. CONKLIN:  Well, I thought it was important to say

8    that.

9              THE COURT:  Okay.  Yes, Mr. Conklin, just -- just

10   chill for a minute and we'll sort of focus on Mr. Ostrowski.

11             Which exhibit is the order that you're talking about?

12             MS. SLABY:  It was Exhibit C, I believe, Your Honor,

13   to Mr. -- to my motion for relief in the Mr. Conklin

14   bankruptcy.

15             THE COURT:  Okay.  But this -- but this does not have

16   -- this doesn't address any interest that Mr. Ostrowski would

17   have in the property, is that correct?

18             MS. SLABY:  I'm sorry, Your Honor?

19             THE COURT:  This order does not address anything that

20   Mr. Ostrowski --

21             MS. SLABY:  I'm sorry, yes.  I thought Mr. Ostrowski

22   was a defendant because there were multiple defendants named.

23   But --

24             THE COURT:  Okay.

25             MS. SLABY:  -- I apologize.

1     THE COURT:  Well --

2     MS. SLABY:  He was actually representing Mr. Conklin.

3     THE COURT:  Well, that's a different thing.  Okay.

4  But -- so, that's not really germane to the issue --

5     MS. SLABY:  Okay.

6     THE COURT:  -- that we have here.  Are you wanting to

7  take testimony from Mr. Ostrowski?  Put him under oath as to

8  what this leasehold interest is.

9     MS. SLABY:  Yes, Your Honor.

10    THE COURT:  All right.  Because I mean I certainly

11 want to know what that is, and I'm certainly going to put him

12 under oath to find --

13    MR. OSTROWSKI:  Your Honor, I --

14    MR. CONKLIN:  I --

15    MR. OSTROWSKI:  I'd like to check --

16    MR. CONKLIN:  I would --

17    MR. OSTROWSKI:  -- the rules on this participation by

18 telephone thing.  I mean an evidentiary hearing remotely with

19 another attorney who's not disclosed in the room.  These people

20 should have been here today because this is a hearing, and

21 these issues they knew were going to have to be presented, and

22 they knew that I was going to sit here and demand that they be

23 presented this way.  This is completely, completely irregular.

24 I cannot subject myself -- I mean I guess I can if I'm ordered

25 to, and I'll take the stand if you have to.  I mean this might

1  be one of those things that you're contemplating that you're

2  going to go forward to my detriment on.  But completely

3  inappropriate for them to not be in here asking me questions

4  live.  That -- that -- that's really unacceptable.

5          MR. CONKLIN:  Personally I find it very prejudicial

6  to me because I can't question them under oath --

7          MR. OSTROWSKI:  Yeah, this is wrong.

8          MR. CONKLIN:  -- on the stand.

9          MR. OSTROWSKI:  This is just wrong.

10         MR. CONKLIN:  I mean I just think that's wrong.

11         THE COURT:  Okay.  Ms. Slaby, how do you intend to

12  put in your case today?

13         MS. SLABY:  Pardon?  I'm sorry, Your Honor?

14         THE COURT:  I'm sorry.  Are you having trouble

15  hearing me?

16         MS. SLABY:  A little bit.  I'm sorry.

17         THE COURT:  Okay.  How are you intending to put in

18  your case today?

19         MS. SLABY:  Your Honor, we believe that there's no

20  valid legal basis for the Chapter 13 or the Chapter 7 filing.

21  And we believe it's an abuse of the automatic stay, the

22  Bankruptcy Code, and it's -- it has no valid legal basis

23  whatsoever.  We do not believe that the -- Mr. Conklin has the

24  funds to fund a Chapter 13 plan.

25         THE COURT:  Well, we're -- let's -- let's deal with

1  Mr. Ostrowski. Let's deal -- we're starting to mingle these

2  cases again.

3          Mr. Ostrowski claims he has a lease. What is your

4  position on the impact of a lease on a property in which you

5  say that you've obtained a Sheriff's deed on?

6          MS. SLABY: There is no impact, Your Honor. We own

7  the property, and Mr. Ostrowski has no legal or equitable right

8  to the property whatsoever.

9          THE COURT: Okay. And why is that? Because he --

10 why is it? He says he has a lease.

11         MS. SLABY: I'm -- Your Honor, it would have been

12 after we obtained title to the property. I have never -- see,

13 it's hard to answer because I've never seen a copy of it. I

14 don't know if it's in writing. I don't know when it was

15 entered into.

16         THE COURT: Okay. Well, I guess that's -- that's --

17 that's --

18         MR. OSTROWSKI: They never did any discovery in aid

19 of execution, et cetera, et cetera.

20         THE COURT: Sir. Sir, hang on, Mr. Ostrowski.

21         MR. OSTROWSKI: They made some mistakes here.

22         THE COURT: Hang on.

23         MR. OSTROWSKI: Okay.

24         THE COURT: What I'm wanting to know is if you don't

25 know the answer to these questions, how are we going to proceed

1  going forward?  If you -- in other words, if you don't know if
2  it's a written lease, you don't know -- you haven't articulated
3  any reason why he may or may not have rights in the property.
4  I mean you simply said that the Chapter 7 shouldn't be a basis
5  for preventing you ejecting Mr. Conklin.  I don't know -- Mr.
6  Ostrowski, are you living in there?  Are you using the
7  property?  What are you doing there?
8          MR. OSTROWSKI:  Am I -- am I to take the stand and go
9  under oath?  Would you like me to go -- is this evidence that
10 they're -- that the Court is trying to elicit from me to help
11 them?  Is this another one of those detriment issues or can we
12 have two weeks and do this the right way?
13         THE COURT:  Well, no.  I mean you've -- you've told
14 me that you have a lease.  I would think if you know you have a
15 lease, you could represent right off the top of your head what
16 it --
17         MR. OSTROWSKI:  I absolutely have a lease.
18         THE COURT:  -- what it is.
19         MS. SLABY:  Your Honor, if I may.  The address on his
20 pleadings in the -- that were filed in the Bankruptcy Court are
21 not the same as Mr. Conklin's, they're --
22         THE COURT:  Well, he hasn't said he lives there.  He
23 hasn't said he lives there yet.
24         Mr. Ostrowski, do you live there?
25         MR. OSTROWSKI:  Am I to take the stand and go under

1 oath?

2          THE COURT:  Well, sure.  Let's put you under oath.  I

3 mean -- and you can stand --

4          MR. OSTROWSKI:  And you are picking up, and you are

5 carrying the burden for the defendants?

6          THE COURT:  I --

7          MR. OSTROWSKI:  That you're just acknowledging --

8          THE COURT:  I'm not really expecting to.

9          MR. OSTROWSKI:  Wait.  The question that got us here

10 is how are they going to make their case today.  That's the

11 question that got us here.  And now you're saying that you're

12 going to call me as a witness and testify to make their case

13 for --

14          MR. CONKLIN:  I --

15          MR. OSTROWSKI:  -- them is what is what I gather.

16          MR. CONKLIN:  I would think -- I would think they

17 would have the burden.

18          MR. OSTROWSKI:  They have the burden.  They have the

19 absolute burden.  This is -- this is so irregular, it's not

20 even comprehensible.

21          THE COURT:  Well, I'm just asking -- I'm asking you,

22 Mr. Ostrowski, your only -- your only defense in this is that

23 you have a lease.

24          MR. OSTROWSKI:  And I do.

25          THE COURT:  And you're basically telling me, "I don't

1 really want to tell you now. I want to wait and tell you what

2 my lease is later."

3         MR. OSTROWSKI: Is there something wrong with me

4 asking for my due process rights?

5         THE COURT: There's something wrong for you making a

6 representation, and not wanting to tell me --

7         MR. OSTROWSKI: I want to tell you everything.

8         THE COURT: -- the basis under which --

9         MR. OSTROWSKI: I want to tell you everything.

10         THE COURT: -- you have --

11         MR. OSTROWSKI: But I'm not going to right now until

12 I'm called as a witness, and I raise my hand, and I take an

13 oath, and I have an attorney sitting at a table and presenting

14 me with documents. And I'll prove my case. I have a lease. I

15 have a lease. I mean I wouldn't lie. If you want to call me a

16 liar, then let them prove I'm a liar.

17         MS. SLABY: If there's a lease that exists, why was

18 it not attached as an exhibit? If there's something that has

19 to be proved, why has he never pled a lease a lease in other

20 pleadings? I don't understand. If he wants to prove something

21 in this court today, why did he not attach it as an exhibit?

22 If it exists --

23         MR. OSTROWSKI: I don't have a burden.

24         MS. SLABY: -- why is it not --

25         MR. OSTROWSKI: I have no burden --

1          MS. SLABY:  -- entered in --

2          MR. OSTROWSKI:  -- today.  None whatsoever.  Zero.  I

3 have to establish rights under the bankruptcy law.  I'll

4 establish all my rights at every appropriate time.  I did not

5 ask to be here today, Your Honor.  I did not get a subpoena.  I

6 got no order to produce -- to bring documents with me.  I got

7 nothing.  I got a notice a couple days after I filed my first

8 bankruptcy ever to be here.  And I knew that this is what they

9 were going to do.  And, you know, this is -- I mean we're

10 already knowingly going forward to my detriment.  How much more

11 do you want to do this to my detriment?

12          MS. SLABY:  Your Honor, he has not answered the

13 question as to whether there is a lease.

14          MR. OSTROWSKI:  I'm not under oath.

15          THE COURT:  Well --

16          MR. OSTROWSKI:  I haven't been called as a witness.

17          THE COURT:  Well, he -- he says -- he says there's a

18 lease in his pleadings.  I guess he understands that that's

19 equivalent to an oath.

20          MR. OSTROWSKI:  I have a lease.

21          MS. SLABY:  Where is it?

22          THE COURT:  Well, no, wait.  We're --

23          MR. OSTROWSKI:  Not here.

24          THE COURT:  No, wait.  No, wait.  Let's just hang on.

25 Mr. Ostrowski, I just want -- I want you to answer a couple of

1  questions just --

2        MR. OSTROWSKI:  Am I taking the stand?

3        THE COURT:   No.  I'm going to ask you a couple of

4  questions.

5        MR. OSTROWSKI:  Okay.  Am I -- and I'm compelled by

6  the Court, the Court is ordering me to answer the questions --

7        THE COURT:  I'm saying --

8        MR. OSTROWSKI:  -- and I will be held in contempt if

9  I don't answer, is that how it's going to work?

10       THE COURT:  Well --

11       MR. OSTROWSKI:  I just need to know.

12       THE COURT:  You can --

13       MR. OSTROWSKI:  Because I'll make the decision

14 whether I'm going to answer.

15       THE COURT:  No, I'm not -- I'm not going to hold you

16 in contempt if you don't answer.

17       MR. OSTROWSKI:  Okay.  Okay.

18       THE COURT:  But, you know, if -- if this creates such

19 discomfort for you that you can't tell me whether you have an

20 oral or a written lease, and whether you're living on the

21 property or not.

22       MR. OSTROWSKI:  What creates my discomfort is sitting

23 in a Bankruptcy Court in the United States of America having a

24 bankruptcy judge telling me you're going to go forward to my

25 detriment, and then trying to make it sound like I'm doing

1  something wrong by not falling on your -- the sword for you.

2          THE COURT:  Well, I'll --

3          MR. OSTROWSKI:  I'm not doing your work for you,

4  Judge.

5          THE COURT:  Well --

6          MR. OSTROWSKI:  If you want to do it your way, you're

7  going to have to do it your way completely.  I'm not

8  participating in it.

9          THE COURT:  No, I understand.

10         MR. OSTROWSKI:  I have rights.

11         THE COURT:  I understand your position.  So -- okay.

12  Your answer is you're not going to tell me what the nature of

13  your -- what your interest in so I can take the --

14         MR. OSTROWSKI:  You didn't ask me a question.

15         THE COURT:  I can take -- I can take the

16  representations of the other side and not have to worry about

17  the fact that you're not willing to put on your case, is that

18  what you're saying?

19         MR. OSTROWSKI:  You already told me that you're going

20  forward to my detriment.  If you are going to -- I'm assuming

21  that you are going to accept the representations of the other

22  side.  They are not verified.  There's not an ounce of

23  evidentiary support to anything that they offered.

24         I am saying by no means whatsoever -- I object so

25  vociferously I can't even express it to you just accepting what

1  they're saying because they're saying it.  So, no, I am not

2  saying that you can accept that.

3          MS. SLABY:  Your Honor, we don't have to provide

4  verification on a motion for relief.

5          MR. OSTROWSKI:  But you got to provide evidence to

6  support a motion.

7          THE COURT:  Hang on just one moment.

8          MS. SLABY:  We did.

9          MR. CONKLIN:  Your evidence --

10         THE COURT:  Well, I don't that -- I don't know you

11  provided any evidence.  You provided allegations in a -- in a

12  pleading.

13         MR. OSTROWSKI:  I don't understand what's so hard

14  about --

15         MR. CONKLIN:  Allegations --

16         MR. OSTROWSKI:  -- doing this the right way.  Two

17  weeks, just --

18         MR. CONKLIN:  Allegations that are unsupported by

19  their own exhibits.

20         MR. OSTROWSKI:  I'll bring a lease in.

21         MR. CONKLIN:  Straight out on --

22         THE COURT:  Well, when you say they're not supported

23  by their own exhibits --

24         MR. CONKLIN:  If you -- if you go to their emergency

25  motion, Paragraph 9 and 10 respectively where they say that I

1 executed, delivered, and made whatever to EMC a note -- and

2 then in Paragraph 10 --

3 　　　　　MS. SLABY: Your Honor, I -- I feel like we're

4 getting sidetracked again.

5 　　　　　MR. CONKLIN: No, we're not getting sidetracked here.

6 　　　　　THE COURT: Hang on just a minute. I want -- I want

7 every --

8 　　　　　MR. CONKLIN: This goes to the heart of that motion

9 to strike.

10 　　　　　THE COURT: I want everyone to stop speaking just for

11 a moment. Just for a moment. We're taking just a -- I'm

12 trying to find something here.

13 　　　　　　　　　　　　(Pause)

14 　　　　　THE COURT: Okay. We can hear you, so don't whisper.

15 　　　　　　　　　　　　(Pause)

16 　　　　　THE COURT: Okay. Under 362 of the Bankruptcy Code,

17 362(d), "On request of a party in interest and after notice and

18 a hearing, the court shall grant relief from the stay provided

19 under Subsection (a) of this section, for cause, including the

20 lack of adequate protection of an interest in property of such

21 party."

22 　　　　　And then the -- under Subsection (g), under a hearing

23 under Subsection (d) concerning relief from the stay of any act

24 under Subsection (a) of this section, the party requesting such

25 relief has the burden of proof on the issue of the debtor's

1 equity in the property; and the party opposing such relief has

2 the burden of proof on all other issues."

3           So, you have the burden of proof, Mr. Ostrowski.

4           MR. OSTROWSKI:  No.

5           THE COURT:  That's 362 of the Bankruptcy Code.

6           MR. OSTROWSKI:  Yeah.  It means -- it says it -- it

7 says that they bear the burden --

8           THE COURT:  No.

9           MR. OSTROWSKI:  -- on their motion.

10          THE COURT:  No, it says the party --

11          MR. OSTROWSKI:  And I bear the burden --

12          THE COURT:  -- opposing such relief.  You opposed

13 relief from the stay, bears the burden of proof on all issues,

14 other than the debtor's equity in the property.

15          MR. OSTROWSKI:  What does -- what did the first

16 section say?  I mean you started by saying what the movant

17 burden is.

18          THE COURT:  It -- no.  I started off by saying the

19 Court shall grant --

20          MR. OSTROWSKI:  I mean had we had another two weeks

21 to study this stuff, Your Honor, but -- I mean I got dragged in

22 here.  I didn't get a subpoena.  I got no notice to produce

23 documents.  I have a lease, you know, I don't know what else I

24 can --

25          MR. CONKLIN:  Importantly there is a provision there

1  first what is the movement's (sic) burden.

2         MR. OSTROWSKI:  Yeah, she read -- she read over it.

3         MR. CONKLIN:  And that -- I think we need to go over
4  that again.

5         THE COURT:  No, what I said -- what I said at the
6  beginning, "shall grant relief from the stay under Subsection
7  (a) for cause, including the lack of adequate protection of an
8  interest in property of such party in interest."

9         And then it goes on to say, "with respect to stay of
10 an act against property under Subsection (a) if the debtor does
11 not have an equity in such property; and such property is not
12 necessary to an effective reorganization."

13        So --

14        MR. OSTROWSKI:  What does it mean under (g)(1) "The
15 party requesting such relief," the movant, EMC and counsel,
16 "has the burden of proof on the issue of the debtor's equity in
17 property."

18        THE COURT:  Whether the debtor has any -- if the
19 debtor has any interest in the property over and above the
20 value of liens.  But that's not relevant here because we have a
21 State Court judgment that has terminated the debtor's interest
22 in the property.

23        Mr. Conklin has no interest in the property under the
24 State Court judgment.  Under Rooker-Feldman, issue preclusion,
25 claim preclusion, I cannot collaterally attack --

1          MR. CONKLIN:  There is exceptions to that.

2          THE COURT: I cannot collaterally attack that

3     judgment.  There are no exceptions --

4          MR. CONKLIN:  Yes, there are --

5          THE COURT:  -- to that.

6          MR. OSTROWSKI:  Very clear exceptions.

7          THE COURT:  No.

8          MR. CONKLIN:  There's four provisions.

9          THE COURT:  No.

10          MR. OSTROWSKI:  What's wrong --

11          MR. CONKLIN:  You know, claim preclusion is much like

12     with the Rooker-Feldman, there's four provisions to it.  The

13     last one is fair and impartial hearing.

14          MR. OSTROWSKI:  Full and fair opportunity to be

15     heard.

16          MR. CONKLIN:  They have a full, fair and opportunity

17     to have a --

18          THE COURT:  No.

19          MR. CONKLIN:  -- impartial hearing, and I never got

20     one of those.

21          THE COURT:  You --

22          MR. CONKLIN:  So, that is -- that is an exclusion to

23     that.

24          THE COURT:  No -- well, that may be that's what it

25     says, but that is not -- that does not allow me -- as a Federal

1  Court, I cannot collaterally attack a decision by a State Court

2  that's a final judgment.

3          MR. CONKLIN:  But you can --

4          THE COURT:  It's a final judgment.

5          MR. CONKLIN:  But you can -- because they're claiming

6  they're a creditor, correct -- make proof of their claim to get

7  the relief --

8          THE COURT:  No.  No.

9          MR. CONKLIN:  Why is that?

10          THE COURT:  I do not.  Because that has already been

11  decided.

12          The State Court has already decided that they have a

13  claim, that they have an interest.  They terminated your

14  interest, and they've entered a final order.

15          MR. CONKLIN:  Even though that's based on fraud.

16          THE COURT:  Your remedy --

17          MR. CONKLIN:  E --

18          THE COURT:  Your remedy is in the State Courts of

19  Pennsylvania.  It's not in the Federal Courts by a collateral

20  attack on that judgment.

21          MR. CONKLIN:  Federal Courts have an unflagging

22  ability to make sure the Federal Constitution is exacted on

23  State Courts.  When you don't get a -- due process, when you

24  don't get a full, fair, and impartial hearing in front of a

25  fair and impartial tribunal, which I have never gotten, and

1 when you can show that everything that they're doing is based

2 on fraud and supported by expert affidavit, and when you can

3 show even what they're pleading today on their emergency motion

4 where they claim that I executed to EMC both a note and a

5 mortgage note, that's what they claim in Paragraph 9 and 10,

6 and then they support it by Exhibits A and B, which talk about

7 Saxon Mortgage, it says nothing about EMC Mortgage.

8           THE COURT:  I'm not -- I'm not debating what you're

9 saying.

10          MR. CONKLIN:  This --

11          MR. OSTROWSKI:  You just -- you just -- you just

12 disputed what he was -- I can't believe that --

13          THE COURT:  No.

14          MR. OSTROWSKI:  -- Federal judges don't grasp these

15 concepts.

16          THE COURT:  I cannot --

17          MR. OSTROWSKI:  I cannot believe it.

18          THE COURT:  I --

19          MR. OSTROWSKI:  And I don't believe.

20          THE COURT:  I -- what --

21          MR. OSTROWSKI:  I think you do grasp these concepts.

22          THE COURT:  What they have found -- what they --

23 whatever -- for -- however that proceeded in State Court, I

24 cannot go and look at that and say that that court made an

25 incorrect decision.  You have to appeal it.  And I know I've

1  been through this discussion before many times.  You have to

2  appeal it through the State Court system.

3          MR. CONKLIN:  Well, let --

4          THE COURT:  If ultimately the Supreme Court of

5  Pennsylvania agrees with you, then they can overturn it.  But a

6  Bankruptcy Court certainly --

7          MR. CONKLIN:  Germantown v. Rawlinson, Pennsylvania

8  Supreme Court, clearly states out that fraud taints everything

9  illegality.  Everything.  Every judgment.  Every contract.

10  Everything.

11          THE COURT:  That -- and that very -- I'm not saying

12  that isn't true.  What you're saying is true.

13          The problem is I, as a Bankruptcy Court, cannot

14  review that and make that assessment.  Even if I agreed with

15  you, even if I agreed all the evidence indicates that EMC is

16  engaged in fraud, and I certainly have seen enough abuse by

17  mortgage companies of homeowners.  I've definitely seen that.

18  So, I'm not saying that that isn't something that does come

19  before me and which, at times, I have had to deal with.  But

20  once it leaves the Federal system, and then goes into the State

21  Court system, and they enter -- and the hammer drops at the

22  Sheriff's sale, I cannot reinstate any rights -- and no

23  bankruptcy judge can reinstate rights that you may have had in

24  that property.  It's absolutely clear.

25          MR. OSTROWSKI:  Well, Your Honor, and I am -- I mean

1  I know that there's this presumption that when -- when people

2  file something after, you know, going through what Steve

3  Conklin has gone through for the past 12 years, and me being

4  his advocate in the past, it throws this presumption that we're

5  playing some kind of game here.  And by no means is that the

6  case.  Everything that's been done here today and in these

7  proceedings is 100 percent lawful and 100 percent legitimate

8  for legitimate purposes.

9          Mr. Conklin just raised an issue, you just raised an

10 issue, you had a legal discussion.  I do not see -- I mean we

11 didn't -- you know, an expedited hearing didn't mean we had to

12 be drug in here on three and four days' notice.  It could have

13 been ten days' notice, it could have been 14 days' notice.   I

14 -- I see that what we are going through -- I mean this record

15 is an absolute mess right now.  There's going to be nothing

16 but, you know, due process violations that comes across on it.

17 I see no reason why we should not be given two weeks and come

18 back here two weeks from today.  I can research these issues.

19          MR. CONKLIN:  Evidentiary hearing.

20          MR. OSTROWSKI:  We can submit memoranda.  We can talk

21 about these things.  They can come in.  They can put on their

22 evidence.  We can put on our evidence.  And we can do this --

23          MR. CONKLIN:  Be --

24          MR. OSTROWSKI:  -- under the Constitution.

25          THE COURT:  Well --

1            MR. CONKLIN:  Because --

2            THE COURT:  Well, let me -- let me just say -- let me

3    just say the problem is the difficulty with what you're

4    suggesting is everything you're talking about is going behind

5    the facts.  I mean I understand Mr. Conklin does not want to

6    admit that there is a recorded Sheriff's deed.  But I can take

7    judicial notice of that.

8            MR. OSTROWSKI:  Well, it's got to be in evidence.

9            THE COURT:  No, no, I'm saying --

10           MR. OSTROWSKI:  It's got to be in evidence.

11           MR. CONKLIN:  Well, then I'd like -- I'd like to --

12           MR. OSTROWSKI:  It has to be a certified record that

13   has to be put before you in evidence, Your Honor.

14           MR. CONKLIN:  And --

15           MR. OSTROWSKI:  It's right in the hearsay rules.  I

16   don't know what exception it is but it's right in the hearsay

17   rules.

18           THE COURT:  Well, and I -- and I would -- I agree

19   with you on that.  I think that --

20           MR. OSTROWSKI:  Well, where is it?  You know?  I mean

21   they don't even --

22           MR. CONKLIN:  It's not something --

23           MR. OSTROWSKI:  -- have to show us --

24           MR. CONKLIN:  It's not something they can incorporate

25   by reference.

1          MR. OSTROWSKI:  This is crazy.

2          THE COURT:  Well, I -- I agree with you that I think

3 that they should be able to demonstrate -- they should have

4 been able to demonstrate at this hearing that they, in fact,

5 had legal title to the property --

6          MR. OSTROWSKI:  Exactly.  That's all.

7          THE COURT:  -- and they have not done that.  So --

8          MS. SLABY:  Your Honor, we could fax over a recorded

9 deed right now.  I mean if that's what Your Honor is

10 requesting.

11          MR. OSTROWSKI:  These things need to be certified

12 from the -- I mean do they not even know the hearsay rules?

13          THE COURT:  Well -- well --

14          MS. SLABY:  It's recorded in York County, Your Honor.

15          MR. OSTROWSKI:  Go get it.

16          THE COURT:  Well --

17          MR. CONKLIN:  One --

18          MR. OSTROWSKI:  Bring it in.

19          MR. CONKLIN:  Two --

20          THE COURT:  No, I understand that, Ms. Slaby.

21          MR. CONKLIN:  Ten-o-three.

22          THE COURT:  But I would think, considering --

23 considering the seriousness of what has been alleged and the

24 fact that you're seeking to dispossess Mr. Conklin, and want to

25 move forward, that you would be willing to provide the

1   appropriate statutory underpinning to demonstrate that.  I

2   mean --

3           MS. SLABY:  We did, Your Honor.  We -- we pled that

4   in the motion.

5           THE COURT:  Well, you pled it in the motion, but we

6   don't have evidence in front of us, right?

7           MR. CONKLIN:  And --

8           THE COURT:  And I understand that these things --

9           MR. OSTROWSKI:  Let her go.  Let her go.

10          THE COURT:  -- are frequently done on representations

11   because a party will come in and admit that this deed was

12   filed.  But the defendants here are not conceding that.  So, I

13   think you should have been prepared to go forward.

14          Now you've already heard me in my colloquy talk about

15   the fact that if there is a Sheriff's deed, then this clearly

16   is a case in which the -- the debtor --

17          MS. SLABY:  Your Honor, if we may, we could take a

18   ten-minute recess and we would be happy to fax it to your

19   chambers.

20          THE COURT:  Well, I think you're going to need to

21   demonstrate that it's a certified copy.

22          MS. SLABY:  We can do that, Your Honor.

23          THE COURT:  Okay.

24          MR. OSTROWSKI:  Can't do it without them showing up

25   in courtrooms.

1           THE COURT:  Well, how can you --

2           MR. OSTROWSKI:  This is what courtrooms are for --

3           THE COURT:  How can you --

4           MR. OSTROWSKI:  -- to put evidence in.

5           MS. SLABY:  We could send somebody to your chambers

6  right now.

7           THE COURT:  All right.

8           MR. CONKLIN:  Well, isn't that amazing.  They can

9  send somebody to the chambers right now --

10          MR. OSTROWSKI:  But they can't be here.

11          MR. CONKLIN:  -- they couldn't be here.

12          MR. OSTROWSKI:  But they can't be here.

13          MR. CONKLIN:  Amazing.

14          MS. SLABY:  It's a certified copy, Your Honor.

15          MR. OSTROWSKI:  They should be sanctioned.

16          THE COURT:  All right.  All right.  All right.

17          MR. OSTROWSKI:  This should be dismissed.

18          THE COURT:  All right.  All right.  All right.

19          MR. OSTROWSKI:  I'm moving for a dismissal of this

20 motion.  It's been filed in bad faith, they came in, they

21 weren't ready to proceed, I demand that these motions be

22 dismissed out of sua sponte.

23          THE COURT:  Well, your -- your motion is denied.

24          MR. OSTROWSKI:  I knew it would be, of course.

25          THE COURT:  Yes.  Yes.

1          MR. CONKLIN:  I have to reiterate that because,

2   again, what they're pleading in their emergency motion, and

3   what they're submitting as exhibits, which are not self-

4   authenticating, they are not certified, but nonetheless, they

5   do not support their motion.  Straight out, they don't support

6   it.

7          THE COURT:  Well, no, they're --

8          MR. OSTROWSKI:  Their motion isn't even self-

9   sustaining because they don't even -- all they do is put EMC on

10  the caption --

11         MS. SLABY:  Your Honor --

12         MR. OSTROWSKI:  -- and attach some documents.

13         THE COURT:  Just let him finish his --

14         MS. SLABY:  It's a red herring, Your Honor.  We don't

15  believe this is relevant at all.  We're in Bankruptcy Court

16  now.  This has already been litigated in State Court.  I just

17  feel like we are -- we are getting off track here.

18         THE COURT:  Well, no, I'm not getting off track.

19         MS. SLABY:  No, not you, Your Honor.

20         THE COURT:  They're getting off track.  I'm not

21  getting off track, but let's get back --

22         MR. OSTROWSKI:  I'm not getting off track.

23         THE COURT:  Let's get back to the point that we do

24  need a recorded -- we need evidence of a recorded deed.  You've

25  indicated that in your pleading.

1          MS. SLABY:  We would be happy to send over a

2   certified copy right now.

3          THE COURT:  All right.  We're going to take a 15-

4   minute break.

5          MS. SLABY:  Okay.  Thank you, Your Honor.

6          MR. OSTROWSKI:  And then what?  Judge, please, do the

7   right thing back there.

8          THE COURT:  I'll tell you --

9          MR. OSTROWSKI:  Give us two weeks.  Give us two

10  weeks.

11         THE COURT:  I'll tell you in 15 minutes.  How about

12  that?

13         THE COURT:  We're taking 15 minutes.

14         MR. CONKLIN:  Amazing to do something in 15 minutes.

15             (Recess 11:05 A.M./Reconvene 11:33 A.M.)

16         THE COURT:  Please be seated.  Okay.  The Court has

17  received fax to chambers from Grenen & Birsic.

18         MS. SLABY:  A certified copy will also be sent to

19  your office momentarily.

20         THE COURT:  Okay.  Received a fax copy of a six-page

21  document, including the fax cover sheet that has a index on the

22  front, and then the statement by the -- by York County Recorder

23  of Deeds with fees, and then the deed by the Sheriff to EMC

24  Mortgage Corporation for property in Warrington Township, York

25  County that was issued on the 23rd of February of 2009.  The

1 | property had been deeded previously to Stephen and Barbara

2 | Conklin.

3 |      Okay.  And you've requested that I take judicial

4 | notice of this document.

5 |      MR. OSTROWSKI:  That's not a judicial notice issue,

6 | Your Honor.  It's a hearsay issue.  They need to put it in

7 | evidence.

8 |      MS. SLABY:  Your Honor, this actually has already

9 | been litigated in State Court, and the State Court has

10 | determined that we have a valid judgment in ejectment, and we

11 | have valid legal title to the mortgage.

12 |      THE COURT:  Well --

13 |      MR. OSTROWSKI:  They didn't even put that into the

14 | record.

15 |      MR. CONKLIN:  The --

16 |      MR. OSTROWSKI:  They didn't put anything in the

17 | record.

18 |      THE COURT:  Ms. Slaby, what I'm asking you is --

19 | you've sent me this document, what is the purpose of submitting

20 | me this document?

21 |      MS. SLABY:  Yes, I'm just asking that you take

22 | judicial notice of the fact that there is a recorded Sheriff's

23 | deed giving us -- giving EMC legal equitable title to the

24 | property.

25 |      MR. OSTROWSKI:  That's not a judicial notice issue.

1 That's a wholly separate rule. This is under Rule 803, there's

2 probably two, maybe three subsections that apply. They haven't

3 specified which section applies. They haven't laid any

4 foundation. They haven't put a witness on to put this into

5 evidence. You don't fax evidence into courts and have it be

6 evidence of record -- competent evidence of record.

7        THE COURT: Under Rule 2001(b) of the Federal Rules

8 of Evidence, a court --

9        MR. OSTROWSKI: Two thousand -- there is no two --

10        THE COURT: 201 -- I'm sorry. Excuse me -- (b). I

11 may take judicial notice, if a party requests it, and the court

12 is supplied with necessary information --

13        MR. OSTROWSKI: Like it's raining out today, or

14 something like that. That's what judicial notice is.

15        THE COURT: And there are Bankruptcy Court cases in

16 which Bankruptcy Courts have taken judicial notice of

17 Department of Transportation records, of recordings in

18 California on the San Matteo County Recorder's Office. There

19 are cases out of the Ninth Circuit indicating a court may take

20 judicial notice of matters of public records outside the

21 pleadings in MGIC Indemnity versus Weisman, 803 F. 2d 500, 1986

22 case.

23       And also the Northern District of California, the

24 Court may take judicial notice of documents in a County public

25 record, including deeds of trust, West Federal Savings versus

TRANSCRIPTS PLUS, INC.
PHONE 215-862-1115 • FAX 215-862-6639 • E-MAIL CourtTranscripts@aol.com

1 <u>Heflin</u>, 797 F. Supp. 790.

2         And, of course, these cases are not binding on this

3 Court.

4         MR. CONKLIN:  Your Honor --

5         THE COURT:  Okay.

6         MR. CONKLIN:  I mean obviously this is prejudicial to

7 me because we don't have time to, you know, prepare a response.

8 I mean, you know, this should have been attached, or whatever,

9 and we could have argued this before this.  But I --

10         THE COURT:  Well, they allege there was a deed filed,

11 and when --

12         MR. CONKLIN:  But if I --

13         THE COURT:  -- you received a copy of that Sheriff's

14 deed --

15         MR. CONKLIN:  But I never received -- that's the

16 whole point why I dispute the deed.

17         THE COURT:  Well --

18         MR. CONKLIN:  And I would go one step further,

19 please.  If you turn to the actual recorder's page, for

20 example --

21         THE COURT:  That's the second --

22         MR. CONKLIN:  -- you'll --

23         THE COURT:  That's the third page of the fax, yes.

24         MR. CONKLIN:  Yes.  You'll see asterisks, you know,

25 against grantor, grantee, customer, instrument type, and so on.

1  Do you notice that?

2           THE COURT:  I do.

3           MR. CONKLIN:  Read down at the bottom what the

4  asterisk says.  "Information denoted by an asterisk may change

5  during the verification process and may not be reflected on

6  this page."

7           So, we -- are we even sure that even though you get

8  certified copy out of that recorder of deeds, is it verified?

9  I mean is that -- all that information verified?

10           MR. OSTROWSKI:  There's a whole host of cross-

11  examination --

12           MR. CONKLIN:  I mean that's just -- that's just one

13  issue right off the top of my head.  But if we're going to go

14  by judicial notice and what may be recorded and so on, I have a

15  mortgage satisfaction piece that's also recorded, stamped by

16  the recorder of deeds, okay?  Paying this whole thing off in

17  full on December 1st, 2008.

18           THE COURT:  By EMC?

19           MR. CONKLIN:  No, this is by a third party

20  accommodator under --

21           THE COURT:  Well, that would not be EMC then.  I'll

22  take judicial notice that there was a recording by who?

23           MR. CONKLIN:  It's a mortgage satisfaction piece

24  recorded by Michael Norley, paying off the entire mortgage in

25  full.

1    MS. SLABY:  Your Honor, and that was stricken by
2  Maria -- Judge Maria Musti Cook as fraudulent.

3    THE COURT:  Well, I --

4    MR. CONKLIN:  No, it wasn't.

5    THE COURT:  I will take notice that it was filed.

6    MR. CONKLIN:  I mean that's totally denied.  It was
7  denied.

8    MR. OSTROWSKI:  He can put the document in evidence.
9  I mean put the document in evidence.

10   THE COURT:  I mean if you want -- if you want to mark
11 it, I'll put it into evidence that it was filed.

12   MR. OSTROWSKI:  Yeah, sure.  I want it in my case.

13   MS. SLABY:  Your Honor, and the opinion by Judge
14 Maria Musti Cook was attached to my motion as an exhibit.

15   THE COURT:  Okay.  And --

16   MR. CONKLIN:  Who was a defendant -- is a defendant
17 in a Federal suit.

18   THE COURT:  And -- I'm sorry.  And so I still haven't
19 found that exhibit because I --

20   MS. SLABY:  I believe, Your Honor, in the motion for
21 relief against Stephen G. Conklin, it is Exhibit C.

22   THE COURT:  Well, that -- let me -- C is showing up
23 as a mortgage in mine, unless I'm looking at Mr. Ostrowski's
24 case.  Yes, I have the wrong case.  Okay.

25       (Mr. Ostrowski engaged in off-the-record colloquy)

```
1              THE COURT:  Okay.  This is the opinion.  And do you
2    want to point out to me what representations you're making from
3    the opinion, Ms. Slaby?
4              MS. SLABY:  Yes, Your Honor.  On December 15th, 2008,
5    plaintiff, EMC, filed an emergency motion to strike the
6    fraudulent mortgage satisfaction piece, and this court granted
7    the motion to strike on March 4th, 2009.  This is on Page 3,
8    first paragraph.
9              MR. CONKLIN:  May I interject?
10             THE COURT:  Okay.  I don't see these pages are
11   numbered, but -- and --
12             MR. CONKLIN:  They're --
13             THE COURT:  Is that under "Discussion," is that what
14   you're --
15             MS. SLABY:  No.
16             THE COURT:  Tell me what --
17             MS. SLABY:  This has already been ruled upon, Your
18   Honor.
19             MR. OSTROWSKI:  Why don't we take --
20             THE COURT:  No, no, no, no --
21             MR. OSTROWSKI:  Why don't we take two weeks and sort
22   this out?
23             MR. CONKLIN:  I just want to respond to that --
24             MR. OSTROWSKI:  I just don't understand what the --
25             MR. CONKLIN:  Because she just --
```

1          MR. OSTROWSKI:  -- why we're doing this.

2          THE COURT:  Gentlemen --

3          MR. CONKLIN:  I just want to respond to what she just

4  said there.

5          THE COURT:  Gentlemen -- no.  No, I don't want you to

6  respond.  I want to follow this course --

7          MR. OSTROWSKI:  Why can't we do this orderly and

8  take --

9          THE COURT:  I --

10         MR. OSTROWSKI:  -- two weeks and do it right?

11         THE COURT:  We're going to do it my way.

12         MR. OSTROWSKI:  Of course.

13         THE COURT:  Yes, we're going to --

14         MR. OSTROWSKI:  And I'm submitting that you're doing

15  it a dishonest and improper way, Your Honor.

16         THE COURT:  Well, I understand you feel that way, and

17  I'm sorry you do --

18         MR. OSTROWSKI:  You got, you know, a new law clerk

19  who's being --

20         THE COURT:  -- but --

21         MR. OSTROWSKI:  --  you know, shown that this is how

22  you do your job.  This is just wrong --

23         THE COURT:  Well --

24         MR. OSTROWSKI:  -- from top to bottom.

25         THE COURT:  That's -- I understand you're unhappy,

1 but that's just the way it is.

2          MR. CONKLIN:  Your Honor --

3          MR. OSTROWSKI:  No, it's not a matter of happy or --

4 yeah, it is unhappiness, well, it's really disappointment.

5          THE COURT:  Ms. Slaby, would you --

6          MS. SLABY:  Yes.

7          THE COURT:  Would you -- I'm looking -- let me tell

8 you what I'm looking at.  I'm looking at the opinion, and it

9 starts off with factual and procedural history, and it says,

10 "Granted" up at the top.  And then it says, "Discussion."  The

11 particular matter that you're pointing out to me, where are you

12 referring to in that opinion where you indicate that they found

13 that that judgment was fraudulent?

14          MS. SLABY:  It's after the page that starts out

15 saying "Factual and Procedural History," it's the page

16 following that.

17          MR. OSTROWSKI:  We need evidence to even make --

18          MR. CONKLIN:  That --

19          MR. OSTROWSKI:  -- this ruling.

20          MR. CONKLIN:  That opinion, by the way, is under

21 appeal.

22          THE COURT:  Well, it says, "Discussion" -- where it

23 says, "Discussion," is it on that page?

24          MS. SLABY:  No.  It's on the page right before that.

25          THE COURT:  Okay.  It says, "On February 13," there's

1  a paragraph

2          MS. SLABY:  The paragraph right before that, Your

3  Honor.

4          MR. OSTROWSKI:  Two weeks to have another hearing.

5          THE COURT:  Who is plaintiff Anthou.

6          MS. SLABY:  Kristine Anthou is an attorney at Grenen

7  & Birsic that Mr. Conklin sued.

8          THE COURT:  Okay.

9          MR. CONKLIN:  May --

10          MR. OSTROWSKI:  She's the one that lied under oath

11  during that proceeding.

12          MR. CONKLIN:  May -- yeah.  May I make a --

13          THE COURT:  No.  No, just a minute.  I'm just --

14          MR. CONKLIN:  Well, I think perjury's kind of

15  important.

16          THE COURT:  I'm reading -- I'm just reading what the

17  judge's opinion said.

18          MR. OSTROWSKI:  That was attached to their motion.  I

19  mean we're preparing for court right now, two hours after a

20  hearing is scheduled, and this is supposed to be due process?

21          THE COURT:  It says, "The mortgage satisfaction piece

22  allege that defendant, Norley was attorney in fact, an

23  authorized representative for plaintiff Anthou.  However,

24  plaintiff Anthou had never given defendant Norley authority to

25  act on her behalf.  As a result, this Court dismissed the

1  emergency motion on December 8, 2008.

2  "On December 15th, 2008, plaintiff, EMC, filed an

3  emergency motion to strike fraudulent mortgage satisfaction

4  piece, and this Court granted the motion to strike on March 4,

5  2009."

6  MR. CONKLIN:  May I --

7  THE COURT:  Okay.  Now are you asking me to take

8  judicial notice of this pleading, as well?

9  MS. SLABY:  Yes, Your Honor, I am.

10  THE COURT:  This is the opinion of Judge Maria Musti

11  Cook in the Court of Common Pleas of York County, Case Number

12  2009SU674-08, EMC Mortgage Corporation, Grenen & Birsic, and

13  Kristine Anthou versus Stephen Conklin, Barbara J. Conklin,

14  Paul B. Culp, and Michael C. Norley.

15  MR. OSTROWSKI:  Objection.

16  THE COURT:  Okay.  Objection.

17  MR. OSTROWSKI:  The objection is I don't even know

18  what you're taking notice of.  I don't even --

19  THE COURT:  I'm taking judicial --

20  MR. OSTROWSKI:  You know, we -- there's been no

21  foundation established as to who these people are, what that

22  document is.

23  THE COURT:  Well, it's a --

24  MR. OSTROWSKI:  I mean there's a whole bunch of

25  predicate facts.

1           THE COURT:  No, there is -- there's no problem with
2  it at all because it is the opinion --
3           MR. OSTROWSKI:  Well, I have no problem with you
4  taking --
5           THE COURT:  It's the opinion of a Court in York
6  County that --
7           MR. OSTROWSKI:  I withdraw the objection as to the
8  opinion, of course.  That would be absurd.  I thought that you
9  were -- I thought that you were extending that to this
10 satisfaction -- I don't even know what we're talking about
11 honestly.
12          MR. CONKLIN:  Well --
13          MR. OSTROWSKI:  This is so disorganized --
14          MR. CONKLIN:  I --
15          MR. OSTROWSKI:  -- and so disorderly, I don't even --
16          MR. CONKLIN:  I --
17          MR. OSTROWSKI:  -- have a clue where you are.
18          MR. CONKLIN:  I just want to --
19          THE COURT:  Well, what this -- this particular
20 document refers to a satisfaction piece that says -- and
21 indicates that it was fraudulent.
22          MR. CONKLIN:  Uh --
23          MR. OSTROWSKI:  If I were preparing this --
24          THE COURT:  No, it doesn't say it was fraudulent.
25          MR. CONKLIN:  Exactly.

1          THE COURT:  It said it dismissed --

2          MR. CONKLIN:  Because he couldn't get power of

3 attorney.

4          THE COURT:  It said that the plaintiff, EMC, filed an

5 emergency motion to strike the fraudulent mortgage satisfaction

6 piece, and this court granted the motion.  So, the satisfaction

7 piece was filed, but it was stricken by the court.

8          MR. OSTROWSKI:  Well, we have no idea what's --

9          MR. CONKLIN:  And I want to --

10          MR. OSTROWSKI:  They didn't -- they didn't -- Steve,

11 let me.  They did not put in any foundational evidence as to

12 what satisfaction piece is being talked about.  I mean these

13 are real simple and basic facts.  This is not asking for a lot.

14 If I had my license, and I prepared the way that they prepared

15 for this hearing, I would be humiliated to step in front of the

16 bar in this court.

17          MS. SLABY:  Your Honor, this is attached as an

18 exhibit to our motion.

19          MR. OSTROWSKI:  I understand the opinion was, but

20 we're talking about facts referenced in the opinion.  There's

21 foundations that need to be laid.  Real simple and real basic

22 foundations that do not take a lot of time.  You don't fax

23 things into the record.

24          MS. SLABY:  This was not faxed.

25          MR. OSTROWSKI:  I mean how complicated is it?

TRANSCRIPTS PLUS, INC.
PHONE 215-862-1115 ● FAX 215-862-6639 ● E-MAIL CourtTranscripts@aol.com

1          THE COURT:  Okay.

2          MR. OSTROWSKI:  You don't fax things to Bankruptcy

3     Court chambers and --

4          MR. CONKLIN:  I --

5          MR. OSTROWSKI:  -- have that be competent evidence.

6          THE COURT:  Okay.  Hang on.  Well, this opinion is in

7     -- was filed.

8          However, Mr. Ostrowski's right, there's nothing

9     really to link necessarily this particular satisfaction piece.

10    But maybe there were more that were filed in that case.  Is

11    there another one that was filed in that case?

12         MS. SLABY:  Another mortgage satisfaction filed by

13    Mr. Conklin?

14         THE COURT:  Yes.  I mean maybe he filed more than

15    one.  Are we talking about more than one?

16         MS. SLABY:  No, Your Honor.  There was just one, and

17    the judge ruled that it was --

18         THE COURT:  Was there more than one filed to strike

19    on December 15, 2008?  And if I looked at that docket, couldn't

20    I know what that one was about?

21         MR. OSTROWSKI:  If --

22         MR. CONKLIN:  I --

23         MR. OSTROWSKI:  If all these records are -- if all

24    these records are properly put into evidence -- and honestly,

25    Judge, these are not real complicated issues.  These are very,

1  very basic evidentiary issues that they should --

2          THE COURT:  Actually it's very basic, yes.

3          MR. OSTROWSKI:  Yeah, very basic.

4          THE COURT:  I agree.

5          MR. OSTROWSKI:  I know.  And you want me to waive

6  basic rights is what you want because that's the way you're

7  used to doing business in this Court.  But it ain't happening.

8  I'm not waiving my rights.  I have rights to have this stuff

9  submitted in accordance with my due process.  And having --

10 having documents faxed into a bankruptcy chambers two hours

11 after a hearing started when they can't even be here, and

12 allowing them to get couriers to bring it up and substitute

13 documents, this is such a perversion of due process that it's -

14 - I don't even know how you can sit here and allow this to go

15 forward.

16         You need to grant us two weeks.

17         THE COURT:  Okay.

18         MS. SLABY:  Your Honor --

19         THE COURT:  Yeah.

20         MS. SLABY:  -- if I may?

21         THE COURT:  Um-hum.

22         MS. SLABY:  I know that we've been taking up a lot of

23 your time, and I don't want to continue taking up the Court's

24 time but if --

25         MR. OSTROWSKI:  You should have been here with your

1  case ready to go.

2          MS. SLABY:  Your Honor, if I could please just talk

3  without being interrupted by Mr. Conklin.

4          MR. OSTROWSKI:  That was Ostrowski.

5          THE COURT:  I don't know if I can promise that.

6          MR. CONKLIN:  That wasn't me interrupting.

7          THE COURT:  You can try.

8          MS. SLABY:  Your Honor, if we could just --

9          MR. OSTROWSKI:  Laughing.

10         MS. SLABY:  -- focus on the matter at hand right now,

11 which is -- I believe we're on Mr. Ostrowski's Chapter 7

12 filing.

13         THE COURT:  Yes.

14         MS. SLABY:  If we could -- if we could focus on that,

15 and the fact that he claims he has a valid leasehold interest

16 in the property.

17         THE COURT:  Yes.

18         MS. SLABY:  Which we've never seen evidence of it.

19 He did not file any schedules indicating that there was any

20 evidence of it.

21         THE COURT:  Well, they're not -- they're not yet due.

22 They're not yet due.  I'm sure that if you continued this, he

23 would be happy to make sure all of his schedules and statements

24 were filed.

25         MR. OSTROWSKI:  I'll come in here with bells on.

1          MS. SLABY:  Your Honor, but he has the burden of

2     proof here.  And if he's claiming a leasehold -- leasehold

3     interest in the property, we want to see it.  We have not seen

4     any document --

5          THE COURT:  Well, I --

6          MR. OSTROWSKI:  Serve a subpoena.

7          THE COURT:  You're correct.  He has the burden to

8     demonstrate that he has an interest in this property, and he --

9     he has indicated to me that he's choosing not to provide that

10    information.  He -- he --

11         MR. OSTROWSKI:  I'm just too prejudiced to fairly

12    protect my rights by getting on the record --

13         MS. SLABY:  Your Honor, then we ask you dismiss his

14    Chapter 7 petition.

15         THE COURT:  Dismiss the petition?

16         MR. OSTROWSKI:  It's not a refusal.

17         THE COURT:  I thought you were asking for relief from

18    the automatic stay.  Are you changing --

19         MS. SLABY:  Or in the alternative, dismissal.

20         THE COURT:  Okay.  Well, I'm not --

21         MR. OSTROWSKI:  Oh, yeah, change horses in the middle

22    of the stream.

23         THE COURT:  I'm not inclined -- I don't think he's

24    had adequate notice of a motion to dismiss.  And there may

25    other good reasons why he needs to be in Chapter 7.  And I

1  certainly wouldn't --

2          MR. OSTROWSKI:  I'm -- I'm insolvent.

3          THE COURT:  I would not -- I would not grant that

4  motion at this stage.

5          MS. SLABY:  Okay.  Your Honor, then we ask for relief

6  from stay at this point in time on behalf of EMC.

7          THE COURT:  Okay.  Well, Mr. Ostrowski, have -- are

8  you still -- you're settled in the -- in your position that you

9  don't want to talk about what your -- what this lease you have

10  unless you have some opportunity to -- now why you would need

11  to do discovery when you're the one who has the lease, I don't

12  know.  So, I don't think discovery would be an issue.

13          MR. OSTROWSKI:  I didn't say anything about

14  discovery.  I said that if they want -- they can serve a

15  subpoena on me if they wanted to.

16          THE COURT:  Well, but I mean --

17          MR. OSTROWSKI:  They could have done a subpoena duces

18  tecum.  There's all kinds of ways they could have covered --

19          THE COURT:  You've indicated --

20          MS. SLABY:  Your Honor, the burden of proof is on him

21  to prove --

22          MR. CONKLIN:  I --

23          THE COURT:  Ms. Slaby, no you're interrupting me.

24          MS. SLABY:  I'm sorry.

25          THE COURT:  Mr. Ostrowski, you've indicated that you

1  don't want to -- you won't tell me unless you order you to that
2  -- the nature of this lease, what property it's for, and
3  whether you live at this -- whether it's a residential lease,
4  or a commercial lease, you know, when you entered into it.
5  Items that you're going to have to disclose in your schedules,
6  but you've indicated you don't want to tell me any of that now.
7          MR. OSTROWSKI:  It --
8          THE COURT:  Is that right?
9          MR. OSTROWSKI:  Well, no, that's completely wrong.
10          MR. CONKLIN:  I --
11          THE COURT:  Oh, okay.  Well, then --
12          MR. OSTROWSKI:  I don't -- it's not a matter of not
13  wanting to tell you.  Do you want to step into your chambers?
14  We can go talk all you want.
15          THE COURT:  No, you have --
16          MR. OSTROWSKI:  It's a matter of appearing in a court
17  of law, Your Honor.
18          THE COURT:  You have the burden of proof here.
19          MR. OSTROWSKI:  It's a matter of having due process
20  rights.  And my rights just simply are not protected.
21          THE COURT:  Well, this is simple.  I'm asking you for
22  an offer of proof.
23          MR. OSTROWSKI:  My offer of proof is I have a lease
24  in the property.  I mean I don't know what else --
25          THE COURT:  Well, and I -- well, then tell me about

TRANSCRIPTS PLUS, INC.
PHONE 215-862-1115 ● FAX 215-862-6639 ● E-MAIL CourtTranscripts@aol.com

Case 1:12-bk-00331-MDF   Doc 56   Filed 03/02/12   Entered 03/02/12 12:50:33   Desc
Main Document     Page 81 of 141

1  that.

2      MR. OSTROWSKI:  It's a written lease.  I have a

3  written lease in the property.

4      THE COURT:  You have a written lease that you could

5  produce today if I ask you to go get it.

6      MR. OSTROWSKI:  Sure.  Yeah.  Absolutely.  I signed

7  it.

8      THE COURT:  Okay.  And tell me about that lease.

9      MR. OSTROWSKI:  It's -- it's on eight and a half by

10 11 paper --

11     THE COURT:  Well, what -- no, you know probably --

12     MR. OSTROWSKI:  It's a real standard lease.  I mean I

13 don't know what to tell you.

14     THE COURT:  Well, a lease for what?  To live there?

15 To grow corn there?

16     MR. OSTROWSKI:  It's a lease to do -- it's a lease --

17     THE COURT:  To build buildings there.  A lease to do

18 what?

19     MR. OSTROWSKI:  It's a lease for my -- for -- it's a

20 lease.  I mean I lease the property.

21     THE COURT:  To do what?

22     MR. OSTROWSKI:  To do whatever I want there.

23     MR. CONKLIN:  Your --

24     MR. OSTROWSKI:  Live there, hunt there, fish there,

25 farm there, whatever I want.  I lease the property.  I mean I

1  don't --

2          THE COURT:  Is that -- well, that's not an unusual

3  thing --

4          MR. CONKLIN:  May --

5          THE COURT:  -- to ask what a lease is for.

6          MR. CONKLIN:  May --

7          THE COURT:  So, when -- this is not your issue.

8  Right now --

9          MR. CONKLIN:  Well, but I can stipulate to certain

10 things.

11         THE COURT:  This is not your issue.

12         MR. CONKLIN:  Okay.

13         MR. OSTROWSKI:  But you asked for --

14         THE COURT:  And when did you enter into this lease?

15         MR. OSTROWSKI:  I object to you picking up and

16 carrying their -- this is just -- why can't we just get a --

17 you know, you obviously know.  I've been saying for two hours

18 that my back is to the wall on this stuff.  I've been begging

19 and pleading for you to accord me a little bit of fairness,

20 Your Honor.  I was not a bankruptcy attorney.  The only time I

21 was ever in Bankruptcy Court was the time I sat here with

22 Steve's father, and there was a very discrete issue that I was

23 able to argue sufficiently because it was based on one case,

24 one principle.  I do not know the ins and outs of bankruptcy

25 law and bankruptcy procedure.  I'm just -- I didn't even have

1 time, Your Honor, to read the bankruptcy rules.  And if I was

2 counsel in the case, I'd fire myself right now because you

3 don't come into court and not read the rules.  I don't know

4 what the bankruptcy rules provide.  I'll read them, I wanted to

5 read them.

6          MS. SLABY:  Your Honor --

7          MR. OSTROWSKI:  I didn't have time.  I didn't

8 schedule this hearing.  I didn't make it a week from them.  I

9 didn't give me three days' notice; they did.  I didn't come in

10 here and not put evidence into the record; they did.  I didn't

11 come in here and ask for accommodation for 15 minutes for that,

12 half hour for this, and you're bending over backwards, Judge,

13 for everything that they're doing.

14          I'm asking for a very small accommodation.  I am an

15 insolvent American citizen who needs the protection of the

16 Bankruptcy Court.

17          MS. SLABY:  Your Honor --

18          MR. OSTROWSKI:  I'm asking for due process in that

19 protection.

20          THE COURT:  Ms. Slaby, hang on.  Just let --

21          MS. SLABY:  Okay.

22          THE COURT:  Let him finish.  Anything else?

23          MR. OSTROWSKI:  I mean the gesticulation and

24 gesturing wasn't really necessary, Your Honor.  I mean as if to

25 be dismissive that I'm sitting here saying I'm an insolvent

1  American citizen.

2        THE COURT:  I'm talking to her.

3        MR. OSTROWSKI:  Okay.

4        THE COURT:  I wasn't addressing you.

5        MR. OSTROWSKI:  Okay.

6        THE COURT:  I'm sorry you misunderstood that.

7        MR. OSTROWSKI:  I am an insolvent American citizen

8  who has availed myself of the protection of the Bankruptcy

9  Courts under Title 15 of the United States Code.  I have rights

10  to due process of law --

11        THE COURT:  Actually it's Title 11, but that's okay.

12        MR. OSTROWSKI:  Title 11, whatever.  I don't know,

13  that's the banking code, I think, 15.  Title 11.  I don't know

14  how much more I can say to that.

15        If you are compelling me to answer questions, I'll

16  answer your questions.  To me, I happen to -- I happen to

17  come --

18        THE COURT:  No, I'm not compelling you because you --

19  I have not asked you any complex questions.

20        MR. OSTROWSKI:  No, you haven't.

21        THE COURT:  Any individual who appeared before me,

22  whether or not he had a legal education, no matter what job he

23  had, or if he didn't have a job, I would not -- and he told me

24  he had a lease, I wouldn't think it would be an unfair question

25  to ask him how long is the lease, is it for a year?  Is it --

1          MR. OSTROWSKI:  Of course you wouldn't think that.

2          THE COURT:  Is it for -- is it for six months?

3          MR. OSTROWSKI:  You wouldn't think --

4          THE COURT:  Are we leasing -- are we leading a garage

5   to park a car, or are we leading a house where we leave?  Are

6   we leasing a barn to store grain?  Or are we --

7          MR. OSTROWSKI:  I leased 112 acres of property from

8   Stephen Conklin to do with what I please.  The lease is in

9   writing.

10          THE COURT:  Okay.

11          MR. OSTROWSKI:  It was --

12          THE COURT:  And when did you enter into this lease?

13          MR. OSTROWSKI:  I'd have to -- that, I don't know the

14   exact date, Your Honor.  And I'm not going to sit here and

15   guess.

16          THE COURT:  Okay.  No, if you don't --

17          MR. OSTROWSKI:  When we're already going forward --

18          THE COURT:  If you don't know, you don't know.  But

19   is this a recorded lease?

20          MR. OSTROWSKI:  Good idea.  No.

21          THE COURT:  No, it wasn't recorded, though, right?

22          MR. OSTROWSKI:  Well, it will be.

23          MR. CONKLIN:  Well --

24          MR. OSTROWSKI:  If it can be, it will be.

25          MR. CONKLIN: Well --

1          THE COURT:  Well --

2          MR. CONKLIN:  It may -- it may --

3          THE COURT:  Since the property belongs now to the

4 bank, that might be a little difficult.

5          MR. OSTROWSKI:  Well, that's a presumption --

6          MR. CONKLIN:  Well, that's --

7          MR. OSTROWSKI:  That's a --

8          THE COURT:  No, I am presuming that because I have a

9 deed in front of me that says that.  I have a deed from the

10 Sheriff that says that.

11          MR. OSTROWSKI:  You can just say that you're going to

12 do this despite my due process rights, Your Honor, and make the

13 decisions you're going to make, and we can just be done with

14 it.  You know?

15          THE COURT:  Well --

16          MR. OSTROWSKI:  Because I'm just -- all -- I'm not

17 really asking for a heck of a lot here.  These are real basic

18 things.  This hearing, if done correctly, could have taken a

19 half an hour.  They could have come in here and sat an attorney

20 at that table, and had a couple of documents in their hand, and

21 walked up, and put them on the witness stand, and said, "Is

22 this what this document is?"  And moved them into evidence, and

23 objections could have been made, and cross-examination could

24 have been done.  I mean I'm assuming that that witness stand is

25 there for a reason, and that it's for hearings.  You called

1  this a hearing.  They asked for a hearing.  I didn't.  I don't

2  want to be here.  I have a lot of other things to do.  I want

3  to study.  I want to work on my schedules.  I want to get my

4  bankruptcy stuff done.  I mean I do not see why -- I mean there

5  -- and there is very, very, very clear resistence from you to

6  grant us anymore time on this.  And I don't understand that.

7            THE COURT:  Well, it's primarily because --

8            MR. OSTROWSKI:  Do you want me to get down on my

9  knees and beg?  I mean what do you want?  I already said please

10 a couple of times.

11           THE COURT:  No, not really.  No, actually the main

12 reason that I'm inclined to grant the relief is because I have

13 a recorded deed that the property no longer belongs to Mr.

14 Conklin.  Now I understand --

15           MR. OSTROWSKI:  This is not evidence of anything.

16           THE COURT:  I under --

17           MR. OSTROWSKI:  This is received on a facsimile

18 machine from a Bankruptcy Court, it has something --

19           THE COURT:  Well --

20           MR. OSTROWSKI:  -- called a --

21           THE COURT:  That's fine.

22           MR. OSTROWSKI:  -- shopping cart notice --

23           MR. CONKLIN:  And --

24           THE COURT:  Yes, I -- I can certainly --

25           MR. CONKLIN:  And still subject to verification.

1          THE COURT:  Well --

2          MR. OSTROWSKI:  And it's still subject to cross-

3     examination.  And it's still subject to attack.  We -- I intend

4     specifically to say that this is not what they are representing

5     it to be.

6          THE COURT:  That it's not --

7          MR. OSTROWSKI:  They have to lay foundations, Judge.

8          THE COURT:  That it's not a deed?

9          MR. OSTROWSKI:  They have to lay foundations in order

10    to meet exceptions to bankruptcy -- to rules of evidence.  Very

11    simple and very basic foundations.  Those foundations are

12    subject to cross-examination.  You're telling me that they

13    faxed you something, and you're inclined to accept it on their

14    word, and -- because you received a fax.

15         THE COURT:  No, I'm able to take judicial notice of a

16    document that I have reason to believe is authentic.  If they

17    were giving me information about what they had done in terms of

18    working with Mr. Conklin, I wouldn't take that on their

19    representations.  But I think 2001 permits me to take judicial

20    notice --

21         MR. OSTROWSKI:  Is there some -- is there some

22    prejudice here or something --

23         THE COURT:  Not 2001.  201, I'm sorry.

24         MR. OSTROWSKI:  -- that I'm not missing as to why I

25    can't get two weeks?  Is there -- is something I'm missing

1  here?

2        THE COURT:  Well, the reason --

3        MR. OSTROWSKI:  I don't understand.  You understand,

4  Judge, I'm here like on three, four days' notice.

5        THE COURT:  Well --

6        MR. OSTROWSKI:  I had to prepare a response to a

7  petition -- a lengthy petition where they attacked me

8  personally and are asking for sanctions, and they're calling me

9  as engaging in bad faith conduct.  And you're saying -- I

10 mean --

11       THE COURT:  Well, and I'm not proceeding --

12       MR. OSTROWSKI:  And you're, frankly, treating me like

13 I'm doing something wrong by asking for this.

14       THE COURT:  I'm not --

15       MR. OSTROWSKI:  And it's just wrong top to bottom.

16       THE COURT:  I'm not entertaining sanctions at this

17 point in time.  I'm not inclined to entertain --

18       MR. OSTROWSKI:  Well, it's nice to know that now.  I

19 didn't know that yesterday when I was worried about coming in

20 here and being sanctioned.

21       THE COURT:  Well, I'm not entertaining sanctions at

22 this point.  But what I am entertaining is at least to the

23 extent that this property -- that there has been a Sheriff's

24 sale, and the deed has been conveyed from the Sheriff to the

25 EMC Mortgage based on taking judicial notice of this document.

1 If, for some reason, you find that -- I mean you have the

2 burden of proof -- we've already talked about that earlier --

3 on everything except equity in the property.

4          MR. OSTROWSKI:  I don't even know --

5          THE COURT:  He does.  He does.

6          MR. OSTROWSKI:  I -- you know what, and I don't even

7 know what that means, Your Honor.  I haven't even had a chance

8 to study it because --

9          THE COURT:  Well, the -- there --

10          MR. OSTROWSKI:  Because you scheduled it and you held

11 mail to screw this guy.

12          THE COURT:  Well --

13          MR. OSTROWSKI:  You -- somebody in here held mail.

14          THE COURT:  Actually this was -- you know, this is a

15 deed that was recorded some time --

16  (The Court engaged in off-the-record colloquy with Ms. Davis)

17          THE COURT:  This deed was recorded back in 2009.  And

18 so this is not something that is fairly recent, this is

19 something that's happened, you know, years ago.  And so I don't

20 think that this is anything that's particularly surprising.

21          There are pleadings that have been attached also

22 indicating that -- and there is this order from Judge -- is it

23 Cook?

24          MS. SLABY:  Yes.  Judge Maria Musti Cook, Your Honor.

25          MR. CONKLIN:  Who is a defendant in a federal suit.

1          THE COURT:  Well, that -- I mean -- sure, you've --
2 that doesn't --

3          MR. CONKLIN:  And that -- and that --

4          THE COURT:  That doesn't change the finality.

5          MR. CONKLIN:  And that -- it -- well, it's not final
6 yet because that's on appeal.

7          THE COURT:  No, it doesn't change the finality of her
8 prior decision.

9          MR. CONKLIN:  I understand, but that's --

10         THE COURT:  Okay.

11         MR. CONKLIN:  That's on appeal, as well as the --

12         THE COURT:  That's fine.

13         MR. CONKLIN:  -- ejectment complaint is on appeal.

14         THE COURT:  That's fine.  So, I do not believe, at
15 least as to Mr. Conklin's case, that there is any dispute over
16 the fact that under Pennsylvania law, Mr. Conklin's rights were
17 terminated in that property at the fall of the Sheriff's hammer
18 in 2009.

19         The debtor has been in possession since that time
20 period.

21         MR. OSTROWSKI:  That's what you said in 2004.  The
22 exact same thing.  So, when did it happen, Judge?  You can't
23 even keep your own -- your own ruling straight.

24         THE COURT:  Well, no, I'm saying --

25         MR. OSTROWSKI:  That's exactly the words that are in

1  the transcript from October 21st, 2004 --

2         THE COURT:  Well --

3         MR. OSTROWSKI:  -- when you were trying to do it to

4  him again.

5         THE COURT:  Well, the deed -- I'm going by what the

6  deed tells me.

7         MR. OSTROWSKI:  Oh, well, what are we going by?

8         MR. CONKLIN:  And --

9         MR. OSTROWSKI:  I don't know what we're going by --

10        MR. CONKLIN:  Well, hold on a second.

11        MR. OSTROWSKI:  -- because there's no due process.

12        MR. CONKLIN:  Hold on.  Hold on.  Hold on a second.

13        THE COURT:  Okay.  I'm going by the deed.

14        MR. CONKLIN:  They're sending you a fax copy.  I

15 don't have a chance to respond to it properly.  I mean I'm just

16 being hit --

17        THE COURT:  Well, I don't know what you would

18 respond.

19        MR. CONKLIN:  Well -- well, for example --

20        MR. OSTROWSKI:  Cross-examination.

21        MR. CONKLIN:  -- off the top of my head, again, it's

22 subject to verification, one.  Two, we -- maybe we should take

23 judicial notice that the Sheriff doesn't have his oaths of

24 office on file to hold the office in the first place.

25        THE COURT:  Well --

TRANSCRIPTS PLUS, INC.
PHONE 215-862-1115 ● FAX 215-862-6639 ● E-MAIL CourtTranscripts@aol.com

1          MR. OSTROWSKI:  There you go.

2          MR. CONKLIN:  That's two.

3          THE COURT:  Well, that -- I am not going to be --

4          MR. CONKLIN:  Well, wait a minute.  Is it --

5          THE COURT:   This is a final judgment.  I do not see

6  -- we're back to that earlier discussion we had that I don't

7  collaterally attack those judgments.  And I don't -- I do not

8  have jurisdiction to do anything over the propriety of that

9  deed that was done pursuant to a court order in York.

10         MR. OSTROWSKI:  Can I research that issue?  I want to

11 research --

12         MR. CONKLIN:  Yeah, I --

13         THE COURT:  No.

14         MR. OSTROWSKI:  I saw you say that before.  I'd like

15 to research that issue that issue.  I don't buy that honestly.

16         MR. CONKLIN:  And again --

17         MR. OSTROWSKI:  I don't think that that's --

18         THE COURT:  Oh, well, that's --

19         MR. CONKLIN:  There would be --

20         THE COURT:  Well, you don't have to buy it.

21         MR. CONKLIN:  There would be judicial --

22         MR. OSTROWSKI:  Well, I'd like to research it so I

23 can make my own judgment and protect my own interest, that's

24 all.

25         THE COURT:  Well, I'm going to -- I'm going to grant

1 the motion for relief from the stay --

2          MR. OSTROWSKI:  Did you have any conversations with

3 Judge Rambo (phonetic) --

4          MR. CONKLIN:  I'm not even getting to finish.

5          MR. OSTROWSKI:  Steve.

6          THE COURT:  No.

7          MR. OSTROWSKI:  Did you have any conversation with

8 Judge Rambo since I filed bankruptcy, or Judge Jones, or Judge

9 Connor about me?  I'd like to know that.

10          THE COURT:  For what purpose?  I haven't had any

11 conversations with them about you, no.

12          MR. OSTROWSKI:  Since I filed this bankruptcy.

13          THE COURT:  No.

14          MR. OSTROWSKI:  Okay.

15          THE COURT:  No.  Why would I?

16          MR. OSTROWSKI:  So --

17          THE COURT:  No, I -- Mr. Ostrowski, I mean I

18 understand you think that I'm bias, but you really have not

19 been on my radar.  I mean I'm not -- I'm unfamiliar -- I'm

20 unfamiliar with your case.  You're -- you're --

21          MR. OSTROWSKI:  I don't see --

22          THE COURT:  You're not in Bankruptcy Court.

23          MR. OSTROWSKI:  Your bias is revealed by the fact

24 that you won't afford me --

25          THE COURT:  Well, okay.  Well --

1           MR. OSTROWSKI:  -- my pleas for basic due process

2   rights for --

3           THE COURT:  I understand --

4           MR. OSTROWSKI:  -- cross-examination of evidence.

5           THE COURT:  I understand what you're -- I

6   understand --

7           MR. OSTROWSKI:  You just accepted a fax --

8           MR. CONKLIN:  I --

9           MR. OSTROWSKI:  -- from York County --

10          MR. CONKLIN:  I think --

11          MR. OSTROWSKI:  -- and you're ruling on -- you're

12  granting relief from a stay.

13          MR. CONKLIN:  I think there's more than

14  (indiscernible - Mr. Conklin and Mr. Ostrowski speaking

15  simultaneously).

16          MR. OSTROWSKI:  There's no fairness in any of that.

17          THE COURT:  Okay.  I am --

18          MR. CONKLIN:  Obviously.

19          THE COURT:  Well --

20          MR. CONKLIN:  I renew my motion to recuse --

21          THE COURT:  Well, that's fine.

22          MR. CONKLIN:  -- because you're not -- because you're

23  not even letting me finish.  If you're going to accept on the

24  record a fax --

25          THE COURT:  I am.

1          MR. CONKLIN:  -- and take judicial notice, well, then

2   you take --

3          THE COURT:  I am --

4          MR. CONKLIN:  -- judicial notice that there's a

5   mortgage satisfaction piece on file.  And you take judicial

6   notice that those folks -- those folks -- deposited those funds

7   in that account, a Fidelity account currently trading under

8   Fidelity Advisors Freedom, Income Class T, Fund Manager John

9   Jasellon (phonetic), 82 Devonshire Street, Boston,

10  Massachusetts.  Fund -- fund number --

11         MR. OSTROWSKI:  This is wrong.

12         MR. CONKLIN:  What's their -- I think it's 600.

13  CUSIP number 315792507.

14         MR. OSTROWSKI:  How about if I prostrate myself on

15  the floor and kiss your black robe and ask for a week?  I mean

16  how about that?

17         MR. CONKLIN:  Why can't I be heard on these things?

18  Why can't I get one time a fair hearing --

19         THE COURT:  Well, because -- well, here --

20         MR. CONKLIN:  This could have been settled seven

21  years ago --

22         THE COURT:  All --

23         MR. CONKLIN:  -- had I got that hearing.  I've been

24  subjected all this time to the same treatment.  I mean it's so

25  blatant, so blatant, and I can't get any court to, you know, to

1  address my grievances.

2        THE COURT:  Mr. Conklin, I'm not saying you can't get

3  any court to do that.  I'm -- what I'm saying is that I cannot

4  review what happened in your foreclosure action in the State

5  Court.  That is what I am saying.  I am not an appellate court

6  for what happens in State Court.  And there was a court order

7  entered granting mortgage foreclosure, and there was authority

8  for the Sheriff to issue a deed.

9        Now you've alleged a variety of defects and they may

10  be legitimate.  But all I'm saying is this is not the place --

11        MR. CONKLIN:  Well, even on the deed --

12        THE COURT:  -- to have them addressed.

13        MR. CONKLIN:  -- you're accepting a faxed deed, and

14  clearly it says on the recorder of deed's thing there with the

15  asterisk, these things still are subject to verification.  That

16  deed is not -- that -- how many years is it now?  And that's

17  what's coming up today and it's still not verified?

18        THE COURT:  I mean I don't --

19        MR. OSTROWSKI:  And --

20        MR. CONKLIN:  I think that's worth --

21        THE COURT:  Well --

22        MR. OSTROWSKI:  Incidentally, Your Honor --

23        THE COURT:  Okay.

24        MR. OSTROWSKI:  -- I met my burden of proof.  I said

25  I have a lease to the property.  Do -- can somebody swear me

1 in?  I mean I -- I told you --

2         THE COURT:  Well, I'll take -- I'll take -- well,

3 we'll swear you in, and let you put on there that you have a

4 lease on the property.

5         MR. OSTROWSKI:  Yeah.

6         THE COURT:  That's fine.

7         MR. OSTROWSKI:  I mean -- if -- you'll -- yeah, I

8 have a written lease to the property, 112 acres --

9         THE COURT:  If you've now changed your mind, and you

10 want to be sworn --

11         MR. OSTROWSKI:  No, I didn't change my mind.  I said

12 this a long time ago.  I said it in my motion, and I said it

13 very early in this proceeding today.  I have not changed my

14 mind at all.

15         THE COURT:  Oh, okay.

16         MR. OSTROWSKI:  This is not at all a change of mind.

17 I mean I don't have a written document with me, I wasn't asked

18 to bring it.  But I testified or I stipulated or I said -- and,

19 you know --

20         THE COURT:  Well, do you want to be put under oath on

21 that issue, that you have a --

22         MR. OSTROWSKI:  Well, I do.  Absolutely.

23         THE COURT:  All right.  Well, raise your right hand.

24         MR. OSTROWSKI:  Well, who's going to ask the

25 question.

1          THE COURT:  She is, I assume.

2          MR. OSTROWSKI:  Then let's do it -- you said before

3   that we were going to do this in a proper proceeding.  Let's

4   get her up here.

5          THE COURT:  Well, you indicated that -- you indicated

6   that you wanted -- I have asked you about -- I asked you about

7   your -- about the lease.  And I'm accepting what you said.  If

8   you want to put what you've just said under oath -- you

9   indicated that you had a lease, and you can do whatever you

10  want, and you don't know the time, and it's written, but you

11  don't know any details.  If that's what you want to put on the

12  record, you're representing yourself.

13         MR. OSTROWSKI:  Yeah.

14         THE COURT:  There is no one to ask questions other

15  than you.

16         MR. OSTROWSKI:  Oh, I understand that.

17         THE COURT:  Right?

18         MR. OSTROWSKI:  Yes, I understand that, Judge.

19         THE COURT:  Okay.  So, you have to just offer that.

20         MR. OSTROWSKI:  I did.

21         THE COURT:  I'm --

22         MR. OSTROWSKI:  Very early, I think.

23         THE COURT:  Well --

24         MR. OSTROWSKI:  I mean that was done by quarter of 10

25  or 10 o'clock.

1          THE COURT:  But you just now said you wanted to put

2     it under oath.

3          MR. OSTROWSKI:  Well, I'm saying if that -- because

4     you just said you're granting relief from the stay, which

5     suggests then that a burden somewhere in this proceeding

6     shifted to me, which I have never received notice that they met

7     their burden.  And if the burden has now passed to me, then

8     we're on a different --

9          THE COURT:  Okay.  I'm working --

10         MR. OSTROWSKI:  See here, Judge --

11         THE COURT:  I'm working --

12         MR. OSTROWSKI:  Here, Judge, this is a real due

13    process issue.

14         THE COURT:  I haven't gotten -- I have not gotten to

15    your issue yet.  I'm talking about Mr. Conklin, remember?

16         MR. OSTROWSKI:  Okay.

17         THE COURT:  We're back on Mr. Conklin's case.  In Mr.

18    Conklin's case, his rights, whether he thinks they were done

19    properly or not, based upon this document of which I'm taking

20    judicial notice, have been terminated.  And were terminated

21    years ago.

22         And I understand that he has -- if I assume the --

23    now maybe you can test the representations in their motion that

24    there were all these --

25         MR. OSTROWSKI:  Judge, why don't you grant a

1    reasonable continuance?

2              MR. CONKLIN:  If they're pleading --

3              MR. OSTROWSKI:  My gosh.

4              MR. CONKLIN:  If they're pleading in their motion

5    that I executed straight to them, but they're putting in

6    exhibits that say "Saxon," where's the connection?

7              THE COURT:  Well, again --

8              MR. OSTROWSKI:  There is none.

9              MR. CONKLIN:  Their pleading itself should have never

10   been considered.

11             THE COURT:  Well, I'm --

12             MR. CONKLIN:  Never.

13             THE COURT:  The problem, Mr. Conklin, is there's a

14   recorded deed that transfers the property to EMC --

15             MR. CONKLIN:  That is still subject to verification.

16             THE COURT:  Well --

17             MR. CONKLIN:  Still subject to verification --

18             THE COURT:  Well, that --

19             MR. CONKLIN:  And, again, take judicial notice --

20             MR. OSTROWSKI:  That doesn't establish anything.

21             MR. CONKLIN:  -- by a Sheriff that doesn't have his

22   oath of office on file.

23             THE COURT:  I don't know what you --

24             MR. CONKLIN:  And refuses -- refuses to take his oath

25   of office.  Refuses.

1          THE COURT:  Well, you're talking about this cover

2    sheet.  What I'm --

3          MR. OSTROWSKI:  What does that document even

4    establish?

5          MR. CONKLIN:  Well, that's what's --

6          MR. OSTROWSKI:  I mean these --

7          MR. CONKLIN:  That's where the stamp's at.  The

8    stamp's on the cover sheet.

9          THE COURT:  It shows that there's a deed for that

10   property.  It shows there's a deed for that property.

11         MR. OSTROWSKI:  And what does that -- how does that

12   grant -- I don't understand how that --

13         MR. CONKLIN:  Still subject to verification.

14         THE COURT:  How does that grant -- how does that

15   terminate his interest?

16         MR. OSTROWSKI:  Yeah.  How does that terminate his

17   interest under the circumstances?

18         THE COURT:  Well, I'll let you do the legal research

19   on your own time.

20         MR. OSTROWSKI:  Okay.  So, we're going to have a

21   continuance then so I can do that?

22         THE COURT:  No.  No.  I'm --

23         MR. OSTROWSKI:  Why, Judge?

24         THE COURT:  You know you can do this on your appeal.

25   There's going to be an appeal, fine.

1          MR. OSTROWSKI:  You're engaged in rogue behavior

2    right now, Judge.

3          THE COURT:  Well, that's fine.  That's --

4          MR. OSTROWSKI:  And you have to know that.  You have

5    to know that.  Your young law clerk has to know that.  You are

6    corrupting the process.  You're engaged in a corrupt act right

7    now.

8          MR. CONKLIN:  This is no different than.

9          MR. OSTROWSKI:  And you're doing it with a smile on

10   your face.

11         MR. CONKLIN:  Seven years ago, this could have been

12   settled.  Seven years ago.  And you recognized it.  You

13   recognized it and said, "Yeah, you're going to go -- you'll get

14   your hearing next month, and if you need even more time, you

15   can ask for it, but you've got to move quickly and get your

16   evidence in.  Because this is bizarre.  This is collusive

17   behavior."

18         Do you think anything's change?  I've been subjected

19   to this for over seven years.  The total fraud.  I've got

20   expert affidavits.  I can't get a State Court to hear me.  I've

21   got defendant judges still ruling on cases, which I'm putting

22   up on appeal, that even when I try to file an appeal timely,

23   they -- they've denied.  I had to do a writ of mandamus and a

24   petition for review nunc pro tunc to the Superior Court to get

25   my appeal in because they're trying to shut me down.  I can't

1  get a court to hear me.  And I think a lot of that has to do

2  with because I'm associated with Don Bailey.  I'm a friend of

3  his and I will not -- I will not desert my friend.  And since

4  he's come into play, which is what happened between October,

5  2004 and November, 2004 was the letter that went -- that Don

6  dictated to me to give to DeHart because he suspected something

7  else going on.  And everything changed.  Once that -- and this

8  happened time and time again, and there's nothing changing

9  here.

10         Why I can't, after all this time, even get a week to

11 go over this instead of having them salt the file real quick by

12 sending in something that you're going to take judicial notice

13 of --

14         MR. OSTROWSKI:  It's wrong.

15         MR. CONKLIN:  -- that says right on it, "Still

16 subject to verification."

17         MR. OSTROWSKI:  Why can't we have a hearing --

18         MR. CONKLIN:  And you accept that is bizarre.  That's

19 bizarre.

20         MR. OSTROWSKI:  Why can't we have a hearing?  This is

21 America.  This is a Court of law --

22         MR. CONKLIN:  With all due respect.

23         MR. OSTROWSKI:  -- in the United States of America

24 and I'm asking for a real basic due process right.  Very, very

25 fundamental and very, very basic.  And, Judge, you're proving

1  that you are not constrained by the 14th Amendment of the

2  United States Constitution even though that's the Constitution

3  you took an oath to uphold.  You acknowledged that this is an

4  irregular procedure.  You said it in your own words.  You

5  acknowledge that they have a burden that they need to prove

6  that they own this property.  You said all this and you're

7  running right past it.  There's something else going on here.

8  I'm asking a legitimate questions.  I'm making legitimate

9  points.  I'm trying to do it as respectfully as I can, even

10 though I have zero respect for what's going on in this

11 courtroom, it makes it very difficult.  But I am trying to

12 conduct myself with appropriate demeanor.  I'm trying to

13 articulate my request.  They've been very reasonable and very

14 simple.  If you're going to run over my rights, too, I can't

15 stop you from doing that.

16        THE COURT:  Mr. Conklin -- Mr. -- the issue is, Mr.

17 Conklin, I want to go back to what you're saying, is that -- I

18 mean I -- I mean I doubt you accept this.  But I -- I

19 understand -- I understand that you feel that you have not

20 gotten a fair hearing, and have not gotten justice dealing with

21 this mortgage company.  I understand that.

22        But the problem is that I am a Bankruptcy Court.  And

23 I am not -- and I think I've said this about three times:  You

24 -- when you begin talking about your concerns about this --

25 about this whole transaction, you go into the substance.  And

1  the problem is I would not be able to hear that.  Say I didn't

2  grant relief from the stay.  The next thing you're going to

3  want to do is to talk about -- say I don't grant relief from

4  the stay, what happens next?  What happens next is there is

5  going to be shown a recorded deed to EMC, and you don't own the

6  property.  What are you going to do in your Chapter 13 with a

7  property you don't own?

8         MR. CONKLIN:  I would think it would be proof of

9  claim, and I would think, you know, under 3001(d), they would

10  have to show --

11         THE COURT:  Why would they be filing a proof of

12  claim?

13         MR. CONKLIN:  Well, because I -- they don't have a

14  claim.  They don't have this.  They never had this.

15         THE COURT:  No, they own a property, and they have a

16  deficiency.

17         MR. CONKLIN:  No, they don't have it.  They don't own

18  it.  They don't have it.

19         THE COURT:  Well, see, that's --

20         MR. CONKLIN:  And it's been paid for.

21         THE COURT:  That's where --

22         MR. OSTROWSKI:  That's why we should be having

23  evidence.

24         MR. CONKLIN:  Is the pay for --

25         MR. OSTROWSKI:  Cross-examination.

1          MR. CONKLIN:  Is the --

2          THE COURT:  That's why I disagree.  I think --

3          MR. OSTROWSKI:  What --

4          THE COURT:  -- it's a legal matter.  This isn't a

5     factual matter, this is a legal matter.  As a legal matter --

6          MR. OSTROWSKI:  But it is factual because you're

7     relying --

8          THE COURT:  No.

9          MR. OSTROWSKI:  -- on evidence that's not properly in

10    the record --

11         THE COURT:  I'm taking --

12         MR. OSTROWSKI:  -- that hasn't been subject to cross-

13    examination, that hasn't had a proper foundation laid for it.

14    I mean, Judge, look, on the 362 issue, can I have a week then

15    to -- if you're finding that they met their burden, can I have

16    one week so I can prepare and come back in here and meet my

17    burden?

18         THE COURT:  I'm dealing with Mr. Conklin, I'm not

19    dealing with you right now.

20         MR. CONKLIN:  Yeah, okay.

21         MR. OSTROWSKI:  Okay.

22         THE COURT:  Okay.

23         MR. CONKLIN:  I lost my train of thought there.

24         MR. OSTROWSKI:  Sorry.

25         THE COURT:  I'm trying to -- I'm trying to let Mr.

1    Conklin understand why I'm ruling against him.  And that these
2    criticisms or these concerns, however you want to characterize
3    your view of what's happened in State Court, has to occur
4    there.  Or if there's some other cause of action under Federal
5    law that you can bring in District Court, I don't know what
6    that is, you can do that.  But you can't, under any
7    circumstances, do that in Bankruptcy Court.  That's what --
8    that's -- that's all I'm saying.  You're in the wrong forum.
9    It'd be like being in --

10           MR. CONKLIN:  Well --

11           THE COURT:  -- Traffic Court and asking a judge to
12   invalidate your mortgage there.  I do not have authority to do
13   that.

14           MR. CONKLIN:  We're talking about a bankruptcy
15   estate.

16           THE COURT:  And your property is not in the estate
17   that you owned previously.  And I'm finding that as a legal
18   matter.  That it's not in the estate because there was a
19   Sheriff's deed, and it's very well established.  I've had this
20   come up many times in the eight years I've been on the bench.
21   Once the Sheriff's hammer drops, you have nothing to resurrect
22   in bankruptcy.  That's the way it is.

23           If they had filed a foreclosure complaint, and you
24   filed bankruptcy, and there is not yet a --

25           MR. CONKLIN:  Understood.

1          THE COURT:  -- Sheriff's hammer --

2          MR. CONKLIN  I understand that.

3          THE COURT:  -- there, you can re-in -- you have

4   options to reinstate.  But that's what the law provides.

5          MR. CONKLIN:  And we're going to accept that deed,

6   even though it needs to be verified -- and it's still subject

7   to verification --

8          THE COURT:  I am going to accept that deed.

9          MR. CONKLIN:  Okay.

10         THE COURT:  I understand you think that --

11         MR. CONKLIN:  And --

12         THE COURT: -- it's inappropriate for me to do that --

13         MR. CONKLIN:  And on that basis alone, you're going

14   to let it go to them even though --

15         THE COURT:  On that basis alone, I am granting them

16   relief from the stay.  I'm not -- I'm not doing anything with

17   the property.  I'm saying that the relief from the -- the --

18   granting relief from the stay doesn't give them anything other

19   than they are permitted to go back under State law and do

20   whatever it is that they are entitled to do under State law.

21   And if you have a problem with that, or you feel that's unjust,

22   then you have to pursue your remedies there.

23         I'm saying there is no remedy in Bankruptcy Court.

24   That's all I'm saying.  There is no remedy in Bankruptcy Court.

25         So, the motion for relief will be granted, Mr.

1  Conklin.

2          As to Mr. Ostrowski on the issue of the lease, my --

3          MR. OSTROWSKI:  I know what you want from me and I'm

4  not -- you're not going to get it.

5          THE COURT:  What?  What do you think I want from you?

6          MR. OSTROWSKI:  I know what you want from me, Judge.

7  But go ahead.

8          THE COURT:  No, I'm -- I want to know what you think

9  I want.

10          MR. OSTROWSKI:  You want me to make all these factual

11  admissions so you can use them to stick a dagger in my back,

12  and stick a dagger in Steve Conklin's back.  I know what you

13  do.  I mean you're making it as obvious as you can.  You've

14  corrupted this whole process.  This poor law clerk, to have to

15  sit here and look at a future that these are the courts that he

16  gets to practice in front of is just -- it's just shameful.

17  It's really shameful.

18          THE COURT:  Okay.

19          MR. OSTROWSKI:  But I -- I have -- I have a burden of

20  proof --

21          MR. CONKLIN:  What --

22          MR. OSTROWSKI:  -- on my -- on my three --

23          MR. CONKLIN  What --

24          MR. OSTROWSKI:  -- 362, we talked about my burden of

25  proof.  Your Honor, again, I'm not real familiar with the

1    bankruptcy law, the bankruptcy statutes, the bankruptcy codes,

2    I really would just like some real basic due process, like one

3    week to --

4              THE COURT:  Well, even --

5              MR. OSTROWSKI:  -- to get some -- to -- to --

6              THE COURT:  Let -- let's do it this way --

7              MR. OSTROWSKI:  Just to make sure that my rights are

8    protected.

9              THE COURT:  Let's accept the fact that you have a

10   lease.  Let's -- I'll accept that as true.

11             MR. OSTROWSKI:  Okay.

12             THE COURT:  Okay.  So, you have a lease.  What does

13   -- what does granting relief from the stay, how does that

14   prejudice you?  Because if the -- when a mortgage company

15   repossesses or takes back through foreclosure a property that

16   they are foreclosing on the owner, and it's subject to a

17   lease --

18             MR. OSTROWSKI:  My possessory right continues, right.

19             THE COURT:  Right.  Right.

20             MR. OSTROWSKI:  My right of possession continues.

21             THE COURT:  Well, relief from the stay would only be

22   for them to -- if you have a right to be there, then you simply

23   litigate that in State Court.  I mean you're in a Chapter 7.

24   The lease -- the trustee is not going to administer your lease.

25             MR. OSTROWSKI:  Okay.

1

```
1           THE COURT:  You're not -- you haven't alleged that

2  you're --

3           MR. OSTROWSKI:  Honestly, Judge, I don't know all

4  this.  I don't --

5           THE COURT:  You're not --

6           MR. OSTROWSKI:  I'm --

7           THE COURT:  Yes, you -- well --

8           MR. OSTROWSKI:  I would.

9           THE COURT:  The --

10          MR. OSTROWSKI:  I can study.  I'm pretty sharp on the

11 law.

12          THE COURT:  The trustee is not going to -- you're in

13 a 7, you're not in a 13, and you're not doing anything with the

14 property to earn in come, I'm assuming.

15          MR. OSTROWSKI:  Hey, so long as the Sheriff can't

16 throw me out of my property, my leasehold interest, I guess,

17 you know, I have to --

18          THE COURT:  Well --

19          MR. OSTROWSKI:  -- live with that right now.  So,

20 I'll be --

21          THE COURT:  Well, it's up to you --

22          MR. OSTROWSKI:  I'll be down there when the Sheriff

23 come to throw the Conklin family out, and I'll cite your order

24 -- I want a copy of this transcript so I can show him that the

25 bankruptcy judge just said I have a right to remain on this
```

1 property.  So, that -- that -- that settles that.

2            Thank you, Judge.

3            THE COURT:  The -- the purchaser of a property sold

4 at mortgage foreclosure sale takes subject to a lease made

5 prior to the mortgage.  So, I don't know --

6            MR. OSTROWSKI:  We'll litigate that in State Court, I

7 guess.

8            THE COURT:  I don't know if the deed is going to be

9 prior to the mortgage or not.

10            MR. OSTROWSKI:  Yeah.

11            THE COURT:  Now, that may be properly --

12            MR. OSTROWSKI:  No, you don't.

13            THE COURT:  So, in other words, if it was made before

14 the mortgage went on, it would go subject -- you would still

15 have an interest in the property.

16            MR. OSTROWSKI:  They'll -- basically EMC will have to

17 sue me in civil court --

18            THE COURT:  The --

19            MR. OSTROWSKI:  -- and we'll litigate this there in

20 York County.  I'm fine with that.

21            THE COURT:  The purchaser of a mortgage property at

22 sheriff sale has the right to affirm or disaffirm a lease that

23 was executed subsequent to the mortgage.  So, if the

24 mortgage --

25            MR. OSTROWSKI:  We'll sort that out in State Court.

1          THE COURT:  So, if the mortgage -- if the lease was

2    executed afterward, then they have a right to affirm or

3    disaffirm.  I'm simply going to grant them relief from the stay

4    and -- which doesn't eject you from the property at all.  I

5    mean that --

6          MR. OSTROWSKI:  Good.

7          THE COURT:  I don't have the -- again, I'm a court of

8    a limited jurisdiction.  I have no power to do that.

9          MR. OSTROWSKI:  And EMC can't eject me either from my

10   lease.

11         THE COURT:  Well, that -- and I'm certainly not

12   ruling on that.

13         MR. OSTROWSKI:  Okay.

14         MR. CONKLIN:  Your Honor --

15         MR. OSTROWSKI:  Good.

16         THE COURT:  So, otherwise --

17         MR. CONKLIN:  One --

18         MR. OSTROWSKI:  Good.

19         MR. CONKLIN:  One --

20         THE COURT:  I'm also going to grant relief from the

21   stay --

22         MR. CONKLIN:  What --

23         THE COURT:  -- for EMC --

24         MR. CONKLIN:  I --

25         THE COURT:  -- to take whatever action they believe

1 they're entitled to take --

2         MR. CONKLIN: Your Honor --

3         THE COURT: -- in regard to the lease.

4         MR. CONKLIN: One -- okay. One -- one last thing,

5 and what precipitated, you know, when I filed and stuff like

6 that. Does this Court have the power of mediation?

7         THE COURT: Well --

8         MR. CONKLIN: And the reason -- and the reason I

9 bring that up --

10         THE COURT: I understand what you're saying.

11         MR. CONKLIN: -- is because before coming to this

12 Court, before filing, there were several efforts made to get

13 with the bank, and the bank's attorneys, and one of them was

14 through what's called Opportunities, Inc. Rebecca Jackson has

15 been in negotiations. I know Ms. Slaby -- is to Selby or Slaby

16 -- I'm sorry.

17         THE COURT: Slaby.

18         MR. CONKLIN: Slaby.

19         MS. SLABY: Slaby.

20         MR. CONKLIN: -- has certainly talked to her, and

21 we've also -- she -- Rebecca Jackson has also talked to

22 Sharnese Conaway (phonetic) --

23         MS. SLABY: Your Honor, I'm sorry. I have to

24 interrupt. He does not own the property, so I don't know how

25 he could enter into negotiations with somebody to work out some

1  kind of agreement if he doesn't own the property.

2         THE COURT:  Well, just -- I understand your position.

3         MR. CONKLIN:  Let --

4         THE COURT:  Just let him finish.

5         MR. CONKLIN:  Let me finish because, again,

6  personally, I don't think they own it.  But this was what was

7  going on.  Of course, the bank won't talk to me, but they're

8  talking to Rebecca Jackson, we even set up for conference

9  calls, that's what couldn't be completed before coming to the

10  Court in bankruptcy.  As well as --

11         MS. SLABY:  Your Honor, that's -- that's absolutely

12  false.

13         MR. CONKLIN:  That --

14         THE COURT:  Okay.  Well --

15         MR. CONKLIN:  Are you --

16         THE COURT:  I'll --

17         MR. CONKLIN:  Are you saying I'm prevaricating?  Are

18  you -- are you calling me a liar right now?

19         THE COURT:  Let's not get -- we really are getting

20  off the track now.

21         MR. CONKLIN:  Well, I'm just saying -- and I'd like

22  to finish.  I would like to finish.

23         THE COURT:  Well, I --

24         MR. CONKLIN:  Just -- and then you can say --

25         THE COURT:  Ms. Slaby, just let him finish.

1          MR. CONKLIN:  You can just say yes, no, whatever, you

2     know.  I mean whatever you're going to do, which seems

3     predestine, but.

4          Under the mediation, if I could just get two weeks

5     because -- that's one issue that's up under.  There's also a

6     certified public account that's working on a land trust and

7     buying the entire property.  It's all about money.  They just

8     want their money or whatever, which I think they've already

9     gotten, and I think I could prove they already gotten it.  But,

10    once again, there's a certified -- and I've got her credentials

11    here.  She's -- she's dealing with it, trying to set it up, and

12    fund raising is already underway so the whole thing could be

13    paid off, and there's already a couple of buyers that would buy

14    lots if we can come to some agreement.

15         Now does this Court have the power to remediate?

16         THE COURT:  No, not because -- I do, but it has to be

17    property of the estate.  And it's not property of the estate.

18         MR. CONKLIN:  Okay.

19         MR. OSTROWSKI:  Some basic cross-examination on that

20    stuff would have been due process, but --

21         MR. CONKLIN:  You -- you're saying you have --

22         MR. OSTROWSKI:  I guess due process is asking too

23    much in the Court.

24         THE COURT:  I'm saying that if -- if -- again,

25    mediation can be done in the Bankruptcy Court context.  Yes,

1 you can have mediation, just like you can in District Court.

2          But in this particular case -- and I don't force

3 parties into mediation.  The parties have to agree to mediate.

4          MR. CONKLIN:  Right.

5          THE COURT:  That's the other thing.  At this point in

6 time, I mean, Ms. Slaby, I -- based on your interjection, I

7 assume you're not interested in mediating at this point. But --

8          MS. SLABY:  That is correct, Your Honor.

9          THE COURT:  But if there was someone who would come

10 and offer to purchase the property from the bank, is that an

11 option?  Just for --

12          MS. SLABY:  They -- yes, Your Honor.  Anybody is free

13 to purchase and offer -- offer on the property.

14          MR. CONKLIN:  May I back up there a second?  She's

15 saying she's not interested in -- in this process, but yet

16 through --

17          MS. SLABY:  Your Honor, I'm sorry, but this is

18 irrelevant.

19          MR. CONKLIN:  -- through -- may -- through Rebecca

20 Jackson -- I mean I'm supposed to be faxing her documents to

21 further this process?  I mean that was just as of yesterday.

22          THE COURT:  Well, let me just indicate that outside

23 the bankruptcy context --

24          MR. CONKLIN:  Who just prevaricate now?

25          THE COURT:  -- many times -- let me -- let me just

1  say.  Frequently, I will grant relief from the stay because

2  that's a condition for a mortgage company to enter into a

3  mortgage modification.  This is not your situation.

4          MR. CONKLIN:  Okay.

5          THE COURT:  But that's often it.  Often that is a

6  condition that the mortgage company requires to do a

7  modification.  So, it's not unusual to lift the stay, and then

8  for a party to continue to negotiate with the mortgage company

9  once the stay has been lifted.  As I think I've said several

10 times before, here -- in this case, we are several steps beyond

11 that because we have -- you -- you know, I understand that you

12 don't agree legally this is correct, but --

13         MR. CONKLIN:  Fraud taints everything.

14         THE COURT:  All right.  Okay.

15         MR. CONKLIN:  Every judgment, no validity to it --

16         THE COURT:  All right.  Well, I understand that's

17 your position.

18         MR. CONKLIN:  Hovey v. Elliott, Supreme Court clearly

19 says, you know, any of these acts were acts of lawlessness, and

20 no tribunal is supposed to give them any respect.

21         THE COURT:  Well --

22         MR. CONKLIN:  These are clear.

23         THE COURT:  Well --

24         MR. CONKLIN:  These are clear --

25         THE COURT:  You and I just disagree on that.  We

1  disagree.

2          MR. CONKLIN:  Well, I guess -- then we disagree with

3  the Supreme Court.

4          THE COURT:  Well, we disagree with our understanding

5  of the Supreme Court.  We probably agree that we would need to

6  follow the Supreme Court, but we probably disagree on how we

7  would interpret it.

8          So, all I'm saying is you can pursue those actions

9  but -- any actions you want to try to obtain the property, but

10 you're going to have to negotiate with EMC.  And that would

11 have been the situation no matter what because this is not

12 property of the estate.  Okay.

13         So, the stay is lifted.  Both in Mr. Ostrowski's case

14 and in Mr. Conklin's case.  Do I need to make myself clear one

15 more time?

16         MS. SLABY:  Thank you, Your Honor.  If I may, are you

17 signing my order in its entirety?

18         THE COURT:  The request for in rem relief?

19         MS. SLABY:  Yes, and the waiver of Rule 4001?

20         THE COURT:  Yeah -- well, no --

21         MR. CONKLIN:  Well --

22         THE COURT:  No, I will not sign the waiver of 4001.

23 I will give them time to appeal, and I'm denying a motion for

24 sanctions.

25         MR. CONKLIN:  Okay.  When we -- when we -- thank you.

1 When we say time for appeal.  Stay's lifted, you know, I

2 appeal --

3         THE COURT:  I'm not going to give you legal advice on

4 how to proceed.

5         MR. CONKLIN:  I'm just trying to get an

6 interpretation of what you're saying here.

7         THE COURT:  Well, that's called legal advice.  In

8 other words, I'm not waiving -- I'm not waiving any time that

9 you may have to file an appeal.

10         MR. CONKLIN  Okay.

11         THE COURT:  So, you need to figure out what you need

12 to do to appeal  --

13         MR. OSTROWSKI:  Your Honor --

14         THE COURT:  -- if you wish to appeal.

15         MR. OSTROWSKI:  Just one last request.  I think I did

16 receive a notice about some schedules and things that I have to

17 submit.  Honestly, this procedure, I'm not familiar with it.  I

18 did do some work to get ready for this.  I haven't tended to

19 the other matters.  Could I get one additional week to submit

20 my schedules and things of that nature?

21         THE COURT:  Yes, of course.  You can get an extension

22 of time from whatever the deadline -- you should have gotten a

23 notice from -- let me see.

24         MR. OSTROWSKI:  I think it came in the mail yesterday

25 actually, if I'm not mistaken, maybe Saturday.  I saw it

1  yesterday.

2              MS. SLABY:  Your Honor, if I may?

3              THE COURT:  Yes, you may.

4              MS. SLABY:  We -- we believe that the Rule 4001

5  should be waived.  We believe that this is a complete stall

6  tactic as both bankruptcies are filed on the same day as the

7  eviction.  And we're concerned that other filings may delay an

8  eviction that's already been schedule, now this will be for the

9  fourth time.  And we believe that Rule 4001, given the

10 circumstances here, should be included in the order.

11             THE COURT:  Well, I understand that's your position,

12 but I'm doing this basically on the fact that the debtor does

13 not have an interest in the property; Mr. Conklin.  We really

14 haven't had extensive evidence, as Mr. Ostrowski has pointed

15 out numerous times as to a basis as to why I should waive that

16 rule.

17             So, I mean if you wanted to put on a complete trial,

18 I might have considered that.  But not under the circumstances.

19             Okay.  So, that aspect of it is denied.

20             MR. OSTROWSKI:  Thank you, Judge.

21             THE COURT:  Okay.  I think we're concluded for today.

22 Let me -- let's see.  You were -- I'm going to respond -- I

23 don't think, Ms. Slaby, that you necessarily need to be

24 involved in this if you don't choose to.  I'm checking to see

25 when the deadline is for Mr. Ostrowski to file his schedules.

1                              (Pause)

2              THE COURT:  Okay.  The problem is he doesn't -- you

3  don't even have a mailing matrix filed, which allows parties to

4  have notice.

5              MR. OSTROWSKI:  Okay.  Well, I think that's the first

6  thing -- can I get one more week to do that?  That might be due

7  like real soon.

8              THE COURT:  Yeah.

9              MR. OSTROWSKI:  And honestly I got sidetracked by

10 this proceeding.

11             THE COURT:  Like immediately.

12             MR. OSTROWSKI:  Yeah.

13             THE COURT:  All right.

14             MR. OSTROWSKI:  I want to get this stuff in.

15             THE COURT:  You have -- you have from a week from

16 today to get in the mailing matrix.

17             MR. OSTROWSKI:  Great, thank you.

18             THE COURT:  And you have -- okay.  The schedules and

19 statements were due within 14 days of the initial petition or

20 filing.  And those are checkmarked on your notice.

21             MR. OSTROWSKI:  I saw that, yeah.

22             THE COURT:  If you look at that, it tells you exactly

23 what you're supposed to have.  I'll give you an additional 14

24 days beyond that to file them.

25             MR. OSTROWSKI:  Thank you.

1          THE COURT:  All right.  Okay.

2          MR. OSTROWSKI:  Adjourned?

3          THE COURT:  We're adjourned.

4      (Whereupon, at 12:31 P.M., the hearing was adjourned.)

5

6                          CERTIFICATE

7

8      I, KAREN HARTMANN, certify that the foregoing is a correct

9  transcript from the electronic sound recording of the

10 proceedings in the above-entitled matter.

11

12

13  /s/  *Karen Hartmann*     AAERT CET**D0475 Date: February 25, 2012

14 TRANSCRIPTS PLUS, INC.

15

16

17

18

19

20

21

22

23

24

25

**&**

**&-** 6:14 63:17
72:7 73:12

**/**

**/S/-** 125:13

**1**

**10-** 7:18,20 23:8
49:25 50:2 55:5
100:24,25
**100-** 37:17 57:7
**10:08-** 7:25
**11-** 82:10 85:11,
12,13
**112-** 86:7 99:8
**11:05-** 63:15
**11:33-** 63:15
**12-** 57:3
**12:31-** 125:4
**13-** 13:1 41:20,
24 71:25 107:6
113:13
**14-** 57:13 124:19,
23
**14ᵀᴴ-** 106:1
**15-** 7:19 20:12,
13 21:17 35:13
63:3,11,13,14
76:19 84:11 85:9,
13
**15-MINUTE-** 20:9
**15ᵀᴴ-** 69:4 73:2
**18ᵀᴴ-** 15:3 16:13
17:11
**1986-** 65:21
**1ˢᵀ-** 67:17

**2**

**2-** 38:2
**2001-** 89:19,23
**2001B-** 65:7
**2004-** 10:21 11:5,
13 15:3,4 16:13
17:11 92:21 93:1
105:5
**2008-** 10:6 13:6,
7 67:17 69:4
73:1,2 76:19
**2009-** 17:15
63:25 69:7 73:5
91:17 92:18
**2009SU67408-**
73:12
**201-** 65:10 89:23

**2012-** 125:13
**21-** 10:21
**21ˢᵀ-** 11:13 15:4
17:11 93:1
**23ᴿᴰ-** 38:2 63:25
**24ᵀᴴ-** 27:15
**25-** 125:13
**28-** 9:17
**2D-** 65:21
**2ᴺᴰ-** 13:7

**3**

**3-** 69:7
**30-** 16:3,8
**300ID-** 107:9
**315792507-** 97:13
**362-** 50:16 51:5
108:14 111:24
**362D-** 50:17

**4**

**4-** 73:4
**4001-** 121:19,22
123:4,9
**455A-** 9:17
**4:50-** 5:18
**4ᵀᴴ-** 69:7

**5**

**500-** 65:21

**6**

**600-** 97:12

**7**

**7-** 32:10,16,21
34:8,12 35:3
37:12,21,23 39:5
41:20 43:4 78:11
79:14,25 112:23
113:13
**790-** 66:1
**797-** 66:1

**8**

**8-** 73:1
**803-** 65:1,21
**82-** 97:9
**8:30-** 6:1

**9**

**9-** 23:8 49:25
55:5
**9:54-** 7:25

**A**

**ABIDE-** 9:3
**ABILITY-** 54:22
**ABLE-** 59:3,4
83:23 89:15 107:1
**ABOVE-** 52:19
**ABSOLUTE-** 44:19
57:15
**ABSOLUTELY-**
23:18 43:17
56:24 82:6 99:22
117:11
**ABSURD-** 74:8
**ABUSE-** 37:24
41:21 56:16
**ACCEPT-** 9:1
48:21 49:2 89:13
96:23 105:18
106:10 110:5,8
112:9,10
**ACCEPTED-** 96:7
**ACCEPTING-** 48:25
98:13 100:7
**ACCESS-** 6:5
**ACCOMMODATE-**
20:10
**ACCOMMODATED-**
20:12
**ACCOMMODATION-**
84:11,14
**ACCOMMODATOR-**
67:20
**ACCOMPLISH-** 12:23
**ACCORD-** 83:19
**ACCORDANCE-** 77:9
**ACCORDING-** 5:14
**ACCOUNT-** 97:7
118:6
**ACCRUE-** 37:19
**ACKNOWLEDGE-**
11:1 106:5
**ACKNOWLEDGED-**
106:3
**ACKNOWLEDGING-**
44:7
**ACRES-** 86:7 99:8
**ACRIMONY-** 21:8
**ACROSS-** 57:16
**ACT-** 7:2 50:23
52:10 72:25 104:6
**ACTION-** 10:22
12:5 14:14 98:4
109:4 115:25
**ACTIONS-** 121:8,9
**ACTS-** 120:19

**ACTUAL-** 66:19
**ADDITION-** 6:19
**ADDITIONAL-**
18:17 29:10
122:19 124:23
**ADDRESS-** 37:12,
14 39:16,19
43:19 98:1
**ADDRESSED-** 98:12
**ADDRESSING-** 85:4
**ADEQUATE-** 50:20
52:7 79:24
**ADJOURNED-** 125:2,
3,4
**ADMINISTER-**
32:18 112:24
**ADMISSIONS-**
111:11
**ADMIT-** 58:6 60:11
**ADVANTAGE-** 36:6,
8,12
**ADVERSARIAL-**
11:2,12
**ADVICE-** 122:3,7
**ADVISE-** 25:14
**ADVISORS-** 97:8
**ADVOCATE-** 57:4
**AFFAIRS-** 35:4
**AFFIDAVIT-** 17:20
55:2
**AFFIDAVITS-**
104:20
**AFFIRM-** 12:7
114:22 115:2
**AFFORD-** 95:24
**AGAINST-** 9:15
10:20 12:10,19
14:2 18:12 19:20,
23 34:15 52:10
66:25 68:21 109:1
**AGREE-** 58:18
59:2 77:4 119:3
120:12 121:5
**AGREED-** 56:14,15
**AGREEMENT-** 117:1
118:14
**AGREES-** 56:5
**AHEAD-** 21:15
22:15 34:14 37:4
111:7
**AID-** 42:18
**AIN'T-** 77:7
**ALLEGATIONS-**
9:13,20 49:11,15,
18
**ALLEGE-** 23:3,5

66:10 72:22
**ALLEGED-** 13:20
24:5 36:16 59:23
98:9 113:1
**ALLOW-** 13:13
53:25 77:14
**ALLOWED-** 5:1
37:19
**ALLOWING-** 77:12
**ALLOWS-** 124:3
**ALONE-** 110:13,15
**ALTERNATIVE-**
79:19
**AM/RECONVENE-**
7:25 63:15
**AMAZING-** 61:8,13
63:14
**AMENDMENT-** 106:1
**AMERICA-** 33:12
34:4 47:23
105:21,23
**AMERICAN-** 84:15
85:1,7
**ANALYSIS-** 20:6
**ANDREW-** 4:2
**ANGRY-** 24:25
**ANSWER-** 6:19,22
24:3 26:24 42:13,
25 46:25 47:6,9,
14,16 48:12
85:15,16
**ANSWERED-** 46:12
**ANSWERS-** 6:20
**ANTHOU-** 72:5,6,
23,24 73:13
**ANYMORE-** 19:3
88:6
**ANYONE'S-** 5:1
**ANYTHING'S-**
104:18
**ANYWAY-** 9:25 20:6
10:13,16 15:8,11
**APOLOGIES-** 10:12
**APOLOGIZE-** 10:17
21:4 39:25
**APPALLED-** 22:1
**APPEAL-** 12:5
38:24 55:25 56:2
71:21 92:6,11,13
103:24,25 104:22,
25 121:23 122:1,
2,9,12,14
**APPEALS-** 33:6
**APPEAR-** 14:14
33:14
**APPEARANCE-** 7:11
**APPEARED-** 85:21

**APPEARING-** 81:16
**APPELLATE-** 98:5
**APPERTAINING-**
10:22
**APPLIES-** 29:20
65:3
**APPLY-** 65:2
**APPROPRIATE-**
12:21 33:7 46:4
60:1 106:12
**AREN'T-** 6:10
**ARGUE-** 83:23
**ARGUED-** 66:9
**ARGUMENT-** 24:8
**ARRANGEMENT-** 4:17
**ART-** 12:19
**ARTICULATE-**
106:13
**ARTICULATED-** 43:2
**ASPECT-** 123:19
**ASSESSMENT-** 56:14
**ASSET-** 36:15
**ASSOCIATED-**
16:22 105:2
**ASSUME-** 100:1
101:22 119:7
**ASSUMING-** 48:20
87:24 113:14
**ASTERISK-** 67:4
98:15
**ASTERISKS-** 66:24
**ATTACH-** 45:21
62:12
**ATTACHED-** 36:25
45:18 66:8 68:14
72:18 75:17 91:21
**ATTACK-** 52:25
53:2 54:1,20
89:3 94:7
**ATTACKED-** 21:21
22:2 90:7
**ATTORNEY-** 6:13
15:6 16:5,7,17
25:5 40:19 45:13
72:6,22 75:3
83:20 87:19
**ATTORNEYS-** 25:4
116:13
**AUTHENTIC-** 89:16
**AUTHENTICATING-**
62:4
**AUTHORITY-** 72:24
98:7 109:12
**AUTHORIZED-** 72:23
**AUTOMATIC-** 41:21
79:18

**AVAILABLE-** 26:17
**AVAILED-** 85:8
**AVERS-** 10:20

---
**B**
---

**BACK-** 6:18 7:19
8:1 14:19,22
15:3 22:6 26:13
39:3 57:18 62:21,
23 63:7 83:18
91:17 94:6
101:17 106:17
108:16 110:19
111:11,12 112:15
119:14
**BACKWARDS-** 84:12
**BAILEY-** 16:17,22
105:2
**BANK-** 87:4
116:13 117:7
119:10
**BANK'S-** 116:13
**BANKING-** 85:13
**BANKRUPTCIES-**
123:6
**BANKRUPTCY-**
12:20,22 13:18,
19 15:5 17:14,17
25:22 28:15 35:7
37:11,12,20,22
39:14 41:22
43:20 46:3,8
47:23,24 50:16
51:5 56:6,13,23
62:15 65:15,16
76:2 77:10 83:20,
21,24,25 84:1,4,
16 85:8 88:4,18
89:10 95:8,12,22
106:22 109:7,14,
22,24 110:23,24
112:1 113:25
117:10 118:25
119:23
**BAR-** 4:4 75:16
**BARBARA-** 64:1
73:13
**BARN-** 86:6
**BASED-** 11:4,6
54:15 55:1 83:23
90:25 101:19
119:6
**BASIC-** 75:13,21
77:1,2,3,6 87:17
89:11 96:1
105:24,25 112:2

118:19
**BASIS-** 22:18
24:9 37:23 38:7,
8,10,12,13 39:2
41:20,22 43:4
45:8 110:13,15
123:15
**BEAR-** 51:7,11
**BEARING-** 13:23
**BEARS-** 51:13
**BEAT-** 10:8
**BEGGING-** 30:8
83:18
**BEGINNING-** 52:6
**BEHAVIOR-** 10:23
11:14,18 15:8
104:1,17
**BEHIND-** 58:4
**BELIEVES-** 10:19
**BELLS-** 78:25
**BELONGS-** 87:3
88:13
**BENCH-** 31:5
33:11 109:20
**BENDING-** 84:12
**BENEFIT-** 29:16
**BETH-** 4:11
**BETWEEN-** 16:16
21:8 105:4
**BIAS-** 9:14 10:20
18:13,22 95:18,23
**BIASED-** 12:4,9
18:1 19:20,23
20:1
**BINDING-** 66:2
**BIRSIC-** 6:14
63:17 72:7 73:12
**BIT-** 13:4 41:16
83:19
**BIZARRE-** 10:23
11:13,16 15:8,11
38:25 104:16
105:18,19
**BLACK-** 97:15
**BLATANT-** 97:25
**BOOM-** 27:24
**BOSTON-** 97:9
**BOTH-** 4:3 6:20
29:15,16 31:14,
17,18,19,23 32:3
55:4 121:13 123:6
**BOTTOM-** 67:3
70:24 90:15
**BREAK-** 7:17,23
63:4
**BROUGHT-** 26:7

**BUILD-** 82:17
**BUILDINGS-** 82:17
**BUNCH-** 73:24
**BURDEN-** 44:5,17,
18,19 45:23,25
50:25 51:2,3,7,
11,13,17 52:1,16
79:1,7 80:20
81:18 91:2 98:24
101:5,7 106:5
108:15,17 111:19,
24
**BURDENED-** 31:23
**BUSINESS-** 77:7
**BUY-** 94:15,20
118:13
**BUYERS-** 118:13
**BUYING-** 118:7

---
C
---

**CALENDAR-** 4:1
**CALIFORNIA-**
65:18,23
**CALL-** 4:3,16,23
44:12 45:15
**CALLED-** 25:9
34:25 45:12
46:16 87:25
88:20 116:14
122:7
**CALLING-** 4:20
90:8 117:18
**CALLS-** 117:9
**CAMPBELL-** 16:6
**CAN-** 4:4 9:11
12:18 13:25
14:19,20 18:3,5,
6 19:24 24:15
30:9,12 31:7
32:10 33:6,8
34:4 37:22 40:24
43:11 44:3 47:12
48:13,15 49:2
50:14 51:24 54:3,
5 55:1,2 56:5,23
57:18,20,21,22
58:6,24 60:22
61:1,3,8 68:8
77:14 78:5,7
80:14 81:14 83:9
85:14 86:24
87:11,13 88:24
94:10,23 98:25
100:9 101:23
103:21,24 104:15
106:9 108:14,15,

16 109:5,6 110:3
111:11,13 113:10,
24 117:24 118:1,
14,25 119:1
121:8 122:21
124:6
**CAN'T-** 24:16
25:14 27:23
32:20 39:1 41:6
47:19 48:25
55:12 60:24
61:10,12 70:7
77:11 83:16
89:25 92:22
97:17,18,25 98:2
104:20,25 105:10,
17,20 106:14
109:6 113:15
115:9
**CANNOT-** 18:21
25:12 33:15,16
40:24 52:25 53:2
54:1 55:16,17,24
56:13,22 98:3
**CAPTION-** 62:10
**CAR-** 86:5
**CARRYING-** 44:5
83:16
**CART-** 88:22
**CASE-** 5:13 6:24
9:10 13:1 14:11
18:9 19:18,21
21:8 22:5,6
25:17,21 34:7,12
35:3 38:25 41:12,
18 44:10,12
45:14 48:17 57:6
60:16 65:22
68:12,24 73:11
76:10,11 78:1
83:23 84:2 92:15
95:20 101:17,18
119:2 120:10
121:13,14
**CASES-** 6:21
12:11 25:22 42:2
65:15,19 66:2
104:21
**CAUSE-** 50:19
52:7 109:4
**CENTER-** 28:15
**CERTAIN-** 10:1,2
12:3 83:9
**CERTAINLY-** 17:24
40:10,11 56:6,16
80:1 88:24

115:11 116:20
**CERTIFICATE-**
125:6
**CERTIFIED-** 58:12
59:11 60:21
61:14 62:4 63:2,
18 67:8 118:6,10
**CERTIFY-** 125:8
**CETERA-** 42:19
**CHALLENGED-** 26:14
**CHAMBERS-** 60:19
61:5,9 63:17
76:3 77:10 81:13
**CHANCE-** 34:9
91:7 93:15
**CHANGE-** 67:4
79:21 92:4,7
99:11,16 104:18
**CHANGED-** 16:13,
20 99:9,13 105:7
**CHANGING-** 79:18
105:8
**CHAPTER-** 12:25
32:10,16,21 34:8,
12 35:3 37:12,21,
23 39:5 41:20,24
43:4 78:11 79:14,
25 107:6 112:23
**CHARACTERIZATION-**
12:20
**CHARACTERIZE-**
109:2
**CHARLES-** 16:18
**CHECK-** 22:6 40:15
**CHECKED-** 5:23
**CHECKING-** 123:24
**CHECKMARKED-**
124:20
**CHILL-** 39:10
**CHOOSE-** 21:8
24:2,3 123:24
**CHOOSING-** 79:9
**CIRCUIT-** 22:5
33:6 65:19
**CIRCUMSTANCES-**
25:7 103:17
109:7 123:10,18
**CITE-** 113:23
**CITIZEN-** 84:15
85:1,7
**CIVIL-** 16:17
114:17
**CLAIM-** 26:15
52:25 53:11 54:6,
13 55:4,5 107:9,
12,14

**CLAIMING-** 54:5
79:2
**CLAIMS-** 14:1
26:5,6 27:2
37:16 42:3 78:15
**CLARIFY-** 8:5
**CLASS-** 97:8
**CLEAR-** 10:13
22:1 38:4 53:6
56:24 88:5
120:22,24 121:14
**CLEARLY-** 10:21
11:13 56:8 60:15
98:14 120:18
**CLERK-** 70:18
104:5 111:14
**CLOCK-** 7:18
**CLUE-** 74:17
**CM/ECF-** 6:6
**CODE-** 41:22
50:16 51:5 85:9,
13
**CODEBTOR-** 37:16
**CODES-** 112:1
**COLLATERAL-** 54:19
**COLLATERALLY-**
52:25 53:2 54:1
94:7
**COLLOQUY-** 10:18
60:14 68:25 91:16
**COLLUSIVE-** 10:23
11:14,18 15:8
104:16
**COME-** 4:3,4 6:17
13:10 29:2 56:18
57:17,21 60:11
78:25 84:3,9,11
85:17 87:19
105:4 108:16
109:20 113:14,23
118:14 119:9
**COMES-** 16:22
27:22 57:16
**COMING-** 90:19
98:17 116:11
117:9
**COMMENTS-** 9:12
**COMMERCIAL-** 81:4
**COMMON-** 26:5
38:5 73:11
**COMPANIES-** 56:17
**COMPANY-** 106:21
112:14 120:2,6,8
**COMPELLED-** 47:5
**COMPELLING-**
85:15,18

129

COMPETENT- 65:6
76:5
COMPLAINT- 92:13
109:23
COMPLETE- 26:15
123:5,17
COMPLETED- 117:9
COMPLETELY-
37:13 40:23 41:2
48:7 81:9
COMPLEX- 11:24
85:19
COMPLIANCE- 30:1
COMPLICATED-
19:24 75:25 76:25
COMPREHENSIBLE-
44:20
COMPUTER- 6:6
CONAWAY- 116:22
CONCEDING- 60:12
CONCEPTS- 55:15,
21
CONCERN- 14:11
CONCERNED- 31:16
123:7
CONCERNING- 50:23
CONCERNS- 106:24
109:2
CONCLUDE- 9:19
CONCLUDED- 123:21
CONDITION- 120:2,
6
CONDUCT- 90:9
106:12
CONFERENCE- 6:7
117:8
CONFIDENT- 18:8
CONFUSED- 11:10
CONK- 19:10
CONKLIN- 4:2,5,7
6:20 8:6,11 9:15,
22 10:3,12,15
11:10,17,20,22
12:13,15 13:3,7,
9,12,17,23 14:8,
19,22 15:3,12,14,
17,20,22,24 16:1,
12 17:1,4,7,10,
22 18:3,5,19,25
19:4,13,15,23
20:2,7 21:1,23
22:1,9,11,14,16,
23 23:2,4,8,10,
12,15,18,22 24:1,
14 25:23 26:3,13,
19,23,24,25 27:2,

5,8,11,19,21
28:6 29:19,21
30:16,18,20,22,
25 34:6 38:6,18,
23 39:7,9,13
40:2,14,16 41:5,
8,10,23 43:5
44:14,16 49:9,15,
18,21,24 50:5,8
51:25 52:3,23
53:1,4,8,11,16,
19,22 54:3,5,9,
15,17,21 55:10
56:3,7 57:3,9,19,
23 58:1,5,11,14,
22,24 59:17,19,
21,24 60:7 61:8,
11,13 62:1 63:14
64:2,15 66:4,6,
12,15,18,22,24
67:3,12,19,23
68:4,6,16,21
69:9,12,23,25
70:3 71:2,18,20
72:7,9,12,14
73:6,13 74:12,14,
16,18,22,25 75:2,
9 76:4,13,22
78:3,6 80:22
81:10 82:23 83:4,
6,9,12 86:8,23,
25 87:2,6 88:14,
23,25 89:18
91:25 92:3,5,9,
11,13 93:8,10,12,
14,19,21 94:2,4,
12,16,19,21 95:4
96:8,10,13,14,18,
20,22 97:1,4,12,
17,20,23 98:2,11,
13,20 101:15
102:2,4,9,12,13,
15,17,19,21,24
103:5,7,13 104:8,
11 105:15,18,22
106:16,17 107:8,
13,17,20,24
108:1,18,20,23
109:1,10,14,25
110:2,5,9,11,13
111:1,21,23
113:23 115:14,17,
19,22,24 116:2,4,
8,11,18,20 117:3,
5,13,15,17,21,24
118:1,18,21

119:4,14,19,24
120:4,13,15,18,
22,24 121:2,21,
25 122:5,10
123:13
CONKLIN'S- 6:24
8:10 9:10 21:20
37:13 43:21
92:15,16 101:17,
18 111:12 121:14
CONNECTION-
18:13 102:6
CONNOR- 95:9
CONSIDER- 12:17,
18
CONSIDERED-
102:10 123:18
CONSIDERING-
59:22,23
CONSTITUTION-
54:22 57:24 106:2
CONSTRAINED-
106:1
CONSTRAINTS-
16:10
CONTEMPLATING-
41:1
CONTEMPT- 47:8,16
CONTEXT- 118:25
119:23
CONTINUANCE-
32:5 33:5,17
102:1 103:21
CONTINUE- 37:18
77:23 120:8
CONTINUED- 78:22
CONTINUES-
112:18,20
CONTRACT- 56:9
CONVERSATION-
95:7
CONVERSATIONS-
95:2,11
CONVEYED- 90:24
COOK- 38:17,24
68:2,14 73:11
91:23,24
COOK'S- 38:4,20
COPARTY- 25:17
COPIES- 5:12
COPY- 5:21 6:4
14:13 16:24
26:15 36:16
42:13 60:21
61:14 63:2,18,20
66:13 67:8 93:14

113:24
CORN- 82:15
CORPORATION-
63:24 73:12
CORRECT- 8:14,15
35:9,10 39:17
54:6 79:7 119:8
120:12 125:8
CORRECTLY- 87:18
CORRUPT- 104:6
CORRUPTED- 111:14
CORRUPTING- 104:6
COULDN'T- 29:25
61:11 75:2 76:19
117:9
COUNSEL- 52:15
84:2
COUNTY- 59:14
63:22,25 65:18,
24 73:11 74:6
96:9 114:20
COUPLE- 9:12
21:17 30:17 46:7,
25 47:3 87:20
88:10 118:13
COURIERS- 77:12
COURSE- 12:5
61:24 66:2 70:6,
12 74:8 86:1
117:7 122:21
COURT'S- 77:23
COURTCALL- 4:19,
20,21
COURTHOUSE-
28:11,14
COURTROOM- 10:9
22:7 106:11
COURTROOMS-
60:25 61:2
COURTS- 32:5
54:18,19,21,23
65:5,16 85:9
111:15
COVER- 63:21
103:1,8
COVERED- 80:18
CRAM- 20:15
CRAZY- 59:1
CREATES- 47:18,22
CREDENTIALS-
118:10
CREDITOR- 13:20
14:2 54:6
CRITICISMS- 109:2
CROSS- 67:10
89:2 108:12

CROSSEXAMINATION-
87:23 89:12
93:20 96:4
107:25 118:19
CULP- 73:14
CURRENTLY- 97:7
CUSIP- 97:13
CUSTOMER- 66:25

D
DAD'S- 17:14,17
DAGGER- 111:11,12
DATE- 27:14
86:14 125:13
DATED- 27:15
DAVIS- 91:16
DAY- 17:10 21:21
22:7 35:16,20
123:6
DAYS- 16:3,8
27:14,16 35:13
46:7 124:19,24
DAYS'- 57:12,13
84:9 90:4
DEADLINE- 122:22
123:25
DEAL- 6:18 9:9,
10 25:25 29:17
41:25 42:1 56:19
DEALING- 7:15
106:20 108:18,19
118:11
DEBATING- 55:8
DEBTOR- 10:19,20,
22 52:10,18,19
60:16 92:19
123:12
DEBTOR'S- 50:25
51:14 52:16,21
DECEMBER- 13:7
67:17 69:4 73:1,
2 76:19
DECEPTIVE- 7:2
DECIDE- 18:1 21:6
DECIDED- 54:11,12
DECISION- 12:5
32:22 47:13 54:1
55:25 92:8
DECISIONS- 87:13
DECLARATIONS-
17:22
DEED- 23:6,14,16,
20 24:6,10 26:13,
15 42:5 58:6
59:9 60:11,15
62:24 63:23

64:23 66:10,14,
16 87:9 88:13
89:8 90:24 91:15,
17 93:5,6,13
94:9 98:8,11,13,
16 102:14 103:9,
10 107:5 109:19
110:5,8 114:8
DEED'S- 98:14
DEEDED- 64:1
DEEDS- 63:23
65:25 67:8,16
DEFECTS- 98:9
DEFENDANT- 38:24
39:22 68:16
72:22,24 91:25
104:21
DEFENDANTS-
39:22 44:5 60:12
DEFENSE- 44:22
DEFICIENCY-
107:16
DEFINITELY- 56:17
DEHART- 6:24
14:12 16:18 17:4
105:6
DELAY- 123:7
DELIVERED- 27:3
50:1
DEMAND- 27:24
40:22 61:21
DEMEANOR- 106:12
DEMONSTRATE-
59:3,4 60:1,21
79:8
DENIED- 19:13
20:8 21:17 27:13
61:23 68:6,7
104:23 123:19
DENOTED- 67:4
DENY- 9:11 23:15
DENYING- 23:13,
19,21 121:23
DEPARTMENT- 65:17
DEPOSITED- 97:6
DESERT- 105:3
DESPITE- 87:12
DETAIL- 15:15
DETAILS- 100:11
DETERMINED- 64:10
DETRIMENT- 29:15
30:4,8,10,13
31:3,7,9,10,20,
21 32:6 33:4,15
34:3 41:2 43:11
46:10,11 47:25

48:20
DEVONSHIRE- 97:9
DICTATED- 16:18
105:6
DIDN'T- 10:1
11:7,21 16:24
17:6,8 18:10
19:12 20:7,21
22:6 26:8 30:1,2
36:4 48:14 51:22
57:11 64:13,16
75:10 80:13
83:25 84:7,8,9,
10 85:23 88:1
90:19 99:11 107:1
DIFFERENT- 22:22
24:20 25:22 26:5
27:4,6 37:13
40:3 101:8 104:8
DIFFERENTLY-
18:11
DIFFICULT- 87:4
106:11
DIFFICULTY- 58:3
DIRECTED- 37:9
DISAFFIRM-
114:22 115:3
DISAGREE- 12:2
108:2 120:25
121:1,2,4,6
DISAPPOINTMENT-
71:4
DISCLOSE- 81:5
DISCLOSED- 40:19
DISCOMFORT-
47:19,22
DISCOVERY- 16:8
42:18 80:11,12,14
DISCRETE- 83:22
DISCUSSED- 12:24
DISCUSSING- 24:8
DISCUSSION-
12:21,22 22:4
56:1 57:10 69:13
71:10,22,23 94:6
DISHONEST- 33:22,
24 70:15
DISMISS- 13:1
14:4 27:24 79:13,
15,24
DISMISSAL- 61:19
79:19
DISMISSED- 13:18
16:15 61:17,22
72:25 75:1
DISMISSIVE- 84:25

DISORDERLY- 74:15
DISORGANIZED-
74:13
DISPOSSESS- 59:24
DISPUTE- 66:16
92:15
DISPUTED- 55:12
DISQUALIFY- 9:16
DISTRICT- 33:7
65:23 109:5 119:1
DOCKET- 37:13
38:20 76:19
DOCKETED- 6:1
DOCUMENT- 63:21
64:4,19,20 68:8,
9 73:22 74:20
79:4 87:22 89:16
90:25 99:17
101:19 103:3
DOCUMENTS- 5:12
6:17 7:19 45:14
46:6 51:23 62:12
65:24 77:10,13
87:20 119:20
DOESN'T- 12:9
27:16 39:16
74:24 92:2,4,7
93:23 102:20,21
110:18 115:4
117:1 124:2
DON- 16:17,21
105:2,5
DOUBT- 106:18
DRAGGED- 51:21
DROPS- 56:21
109:21
DRUG- 57:12
DUCES- 80:17
DUE- 30:14,22
31:1 35:22,25
36:3 45:4 54:22
57:16 72:20 77:9,
13 78:21,22
81:19 84:18
85:10 87:12
93:11 96:1
101:12 105:22,24
112:2 118:20,22
124:6,19
DUTY- 9:15

E
EACH- 25:10,25
EARLIER- 9:23
91:2 94:6
EARLY- 99:13

100:22
**EARN-** 113:14
**ECF-** 5:15,20,23
**EDUCATION-** 85:22
**EFFECTIVE-** 52:12
**EFFORT-** 25:19
**EFFORTS-** 116:12
**EIGHT-** 82:9
109:20
**EIGHTH-** 35:16,20
**EJECT-** 115:4,9
**EJECTING-** 43:5
**EJECTMENT-** 64:10
92:13
**ELECTRONIC-**
28:20 125:9
**ELICIT-** 43:10
**ELLIOTT-** 120:18
**EMC-** 4:12 27:3
29:20 37:19,25
50:1 52:15 55:4,
7 56:15 62:9
63:23 64:23
67:18,21 69:5
73:2,12 75:4
80:6 90:25
102:14 107:5
114:16 115:9,23
121:10
**EMERGENCY-** 15:5
22:17 23:9 33:13
49:24 55:3 62:2
69:5 73:1,3 75:5
**EMOTION-** 12:7
**EMPLOYED-** 12:25
**ENGAGED-** 56:16
68:25 91:16
104:1,6
**ENGAGING-** 90:9
**ENJOINED-** 38:6,
10,11
**ENTER-** 56:21
83:14 86:12
116:25 120:2
**ENTERED-** 7:11
13:14 42:15 46:1
54:14 81:4 98:7
**ENTERING-** 19:16
**ENTERTAIN-** 90:17
**ENTERTAINING-**
90:16,21,22
**ENTIRE-** 67:24
118:7
**ENTIRETY-** 121:17
**ENTITLED-** 33:25
34:15 110:20

116:1
**EPISODE-** 21:19
**EQUALLY-** 31:23
**EQUITABLE-** 42:7
64:23
**EQUITY-** 51:1,14
52:11,16 91:3
**EQUIVALENT-** 46:19
**ESTABLISH-** 20:8
46:3,4 102:20
103:4
**ESTABLISHED-**
73:21 109:19
**ESTATE-** 13:18,19,
23 32:18 109:15,
16,18 118:17
121:12
**ET-** 42:19
**EVERYONE-** 29:16
33:25 50:10
**EVERYTHING-** 9:1
45:7,9 55:1 56:8,
9,10 57:6 58:4
84:13 91:3 105:7
120:13
**EVICTION-** 38:1,3
123:7,8
**EVIDENCE-** 16:4
28:10,12,24 33:1
37:14,18 43:9
49:5,9,11 56:15
57:22 58:8,10,13
60:6 61:4 62:24
64:7 65:5,6,8
68:8,9,11 71:17
75:11 76:5,24
78:18,20 84:10
87:22 88:15
89:10 96:4
104:16 107:23
108:9 123:14
**EVIDENTIARY-**
40:18 48:23
57:19 77:1
**EXACT-** 86:14
92:22
**EXACTED-** 54:22
**EXACTLY-** 31:25
59:6 74:25 92:25
124:22
**EXAMINATION-**
67:11 89:3 108:13
**EXAMPLE-** 66:20
93:19
**EXCEPT-** 91:3
**EXCEPTION-** 58:16

**EXCEPTIONS-** 53:1,
3,6 89:10
**EXCLUSION-** 53:22
**EXCUSE-** 29:19
65:10
**EXECUTED-** 27:3
50:1 55:4 102:5
114:23 115:2
**EXECUTION-** 42:19
**EXHIBIT-** 39:11,
12 45:18,21
68:14,19,21 75:18
**EXHIBITS-** 22:18
38:14 49:19,23
55:6 62:3 102:6
**EXISTS-** 45:17,22
**EXPECTING-** 44:8
**EXPEDITED-** 6:23,
25 29:13,14 57:11
**EXPERT-** 55:2
104:20
**EXPRESS-** 48:25
**EXPRESSIONS-** 12:7
**EXTENDED-** 20:13
**EXTENDING-** 74:9
**EXTENDS-** 28:17,19
**EXTENSION-** 122:21
**EXTENSIVE-** 12:22
123:14
**EXTENT-** 90:23

**F**

**FACE-** 104:10
**FACSIMILE-** 88:17
**FACTUAL-** 71:9,15
108:5,6 111:10
**FAIR-** 30:23
53:13,14,16
54:24,25 97:18
106:20
**FAIRLY-** 79:11
91:18
**FAIRNESS-** 29:22
36:9 83:19 96:16
**FAITH-** 12:12,18
61:20 90:9
**FALL-** 92:17
**FALLING-** 48:1
**FALSE-** 117:12
**FAMILY-** 113:23
**FAR-** 8:8
**FARM-** 82:25
**FATHER-** 21:20
83:22
**FAULT-** 10:24
**FAX-** 16:19 59:8

60:18 63:17,20,
21 65:5 66:23
75:22 76:2 89:14
93:14 96:7,24
**FAXED-** 75:24
77:10 89:13 98:13
**FAXING-** 119:20
**FEBRUARY-** 63:25
71:25 125:13
**FEDERAL-** 28:11,
14 31:5 38:24
53:25 54:19,21,
22 55:14 56:20
65:7,25 68:17
91:25 109:4
**FEE-** 4:21 28:4
29:11,24
**FEEDING-** 7:4
**FEEL-** 18:7,8
20:20,21 34:1
50:3 62:17 70:16
106:19 110:21
**FEELS-** 18:7
**FEES-** 63:23
**FIDELITY-** 97:7,8
**FIGURE-** 122:11
**FILE-** 29:11 35:3,
11 39:2 57:2
78:19 93:24 97:5
102:22 104:22
105:11 122:9
123:25 124:24
**FILED-** 5:13,17,
18,24 6:4,20,25
9:9 19:15,17
25:22,24 34:16,
17 35:8,12,14,24,
25 37:11,25 38:3
43:20 46:7 60:12
61:20 66:10 68:5,
11 69:5 73:2
75:4,7 76:7,10,
11,12,14,18
78:24 95:8,12
109:23,24 116:5
123:6 124:3
**FILING-** 5:15
12:12 28:4 29:11,
24 35:13,21
37:21,24 38:6,10,
11 39:5 41:20
78:12 107:11
116:12 124:20
**FILINGS-** 123:7
**FINAL-** 54:2,4,14
92:5 94:5

**FINALITY-** 92:4,7
**FINANCIAL-** 35:4
**FIND-** 40:12 41:5
50:12 91:1
**FINDING-** 108:15
109:17
**FINE-** 4:4 7:12
20:11 24:3 30:12
34:1 88:21 92:12,
14 96:21 99:6
103:25 104:3
114:20
**FIRE-** 84:2
**FIRM-** 25:4
**FIRST-** 8:6 10:20
19:7,12 21:16
32:14,16 34:8
37:11 46:7 51:15
52:1 69:8 93:24
124:5
**FISH-** 82:24
**FIVE-** 7:17 13:9
19:13 20:8,9
21:17
**FLOOR-** 97:15
**FOCUS-** 21:9
39:10 78:10,14
**FOCUSED-** 21:6
37:6 39:5
**FOLKS-** 97:6
**FOLLOW-** 7:7 70:6
121:6
**FOLLOWING-** 71:16
**FORCE-** 119:2
**FORECLOSING-**
112:16
**FORECLOSURE-**
10:22 13:25 98:4,
7 109:23 112:15
114:4
**FOREGOING-** 125:8
**FORGOTTEN-** 9:24
**FORMALLY-** 7:5
**FORMER-** 15:6
**FORMS-** 35:9,11
**FORTH-** 15:9
**FORUM-** 109:8
**FORWARD-** 9:11
11:3,7,8,11,12
16:2 29:17 30:4,
7,10 31:5,6,21,
24 32:5 33:4,14
34:2 41:2 43:1
46:10 47:24
48:20 59:25
60:13 77:15 86:17

**FOUND-** 18:22
55:22 68:19 71:12
**FOUNDATION-** 65:4
73:21 108:13
**FOUNDATIONAL-**
75:11
**FOUNDATIONS-**
75:21,22 89:7,9,
11
**FOUR-** 53:8,12
57:12 90:4
**FOURTH-** 123:9
**FRANKLY-** 90:12
**FRAUD-** 54:15
55:2 56:8,16
104:19 120:13
**FRAUDULENT-** 7:2
68:2 69:6 71:13
73:3 74:21,24
75:5
**FREE-** 119:12
**FREEDOM-** 97:8
**FREQUENTLY-** 5:7
60:10 120:1
**FRESH-** 37:22
**FRIDAY-** 30:3
**FRIEND-** 16:16
105:2,3
**FRONT-** 4:4 14:3
17:22 21:10
54:24 60:6 63:22
75:15 87:9 111:16
**FULL-** 30:23
53:14,16 54:24
67:17,25
**FUND-** 12:25
41:24 97:8,10
118:12
**FUNDAMENTAL-**
16:20 105:25
**FUNDS-** 41:24 97:6
**FURTHER-** 27:22
28:7 66:18 119:21
**FURTHERMORE-** 8:12
**FUTURE-** 111:15

---
G
---

**G1-** 52:14
**GAME-** 57:5
**GARAGE-** 86:4
**GAVE-** 21:17
23:20 27:14 29:23
**GENERALLY-** 14:2
**GENTLEMAN-** 21:22
**GENTLEMEN-** 70:2,5
**GERMANE-** 40:4

**GERMANTOWN-** 56:7
**GESTICULATION-**
84:23
**GESTURING-** 84:24
**GET-** 5:10,21
6:16 7:18 14:9,
20 15:4 16:3,8,
22 18:16,17,25
21:7 22:9 24:25
27:12,15,16 28:4
32:15 34:15 37:5
39:3 46:5 51:22
54:6,23,24 59:15
62:21,23 67:7
75:2 77:12 82:5
83:16 88:3,8
89:25 97:18,25
98:2 100:4
104:13,15,20,24
105:1,10 111:4
112:5 116:12
117:19 118:4
122:5,18,19,21
124:6,14,16
**GETS-** 111:16
**GIVE-** 6:16 7:18,
19 21:1 28:4
29:10 34:8 35:1
63:9 84:9 105:6
110:18 120:20
121:23 122:3
124:23
**GIVEN-** 57:17
72:24 123:9
**GO-** 6:16 7:18
11:3,8,11,12
13:19 14:22
15:15 16:18
17:12 21:15 22:6,
15,21 29:17 30:4,
7,10 31:4,6
33:14 34:14 37:4
41:2 43:8,9,25
47:24 49:24 52:3
55:24 59:15 60:9,
13 66:18 67:13
77:14 78:1 81:14
82:5 94:1 104:13
105:11 106:17,25
110:14,19 111:7
114:14
**GOING-** 6:15 9:8,
11 11:11,12,14
14:11,17 15:3
16:2,21 19:2,9,
18 24:11 25:25

29:14,15 30:4
31:4,6,21 32:5,
18 33:4,14 34:2,
8 38:24 40:11,21,
22 41:2 42:25
43:1 44:10,12
45:11 46:9,10
47:3,9,14,15,24
48:7,12,19,20,21
57:2,14,15 58:4
60:20 63:3 67:13
70:11,13 81:5
86:14,17 87:11,
13 93:5,7,9,13
94:3,25 96:23
99:24 100:3
103:20,25 104:13
105:7,12 106:7,
10,14 107:2,5,6
110:5,8,13 111:4
112:24 113:12
114:8 115:3,20
117:7 118:2
121:10 122:3
123:22
**GONE-** 11:7 57:3
**GOOD-** 4:5,11
26:1 79:25 86:20
115:6,15,18
**GOODLING-** 4:17
**GOT-** 15:17 30:3
38:25 44:9,11
46:6,7 49:5
51:21,22 53:19
58:8,10 70:18
97:23 104:15,19,
21 118:10 124:9
**GRAIN-** 86:6
**GRANT-** 12:8
16:12 29:14
33:16 50:18
51:19 52:6 77:16
80:3 88:6,12
94:25 101:25
103:12,14 107:2,
3 115:3,20 120:1
**GRANTED-** 22:20
69:6 71:10 73:4
75:6 110:25
**GRANTEE-** 66:25
**GRANTING-** 96:12
98:7 101:4
110:15,18 112:13
**GRANTOR-** 66:25
**GRASP-** 19:25
55:14,21

GRENEN- 6:13,14
7:9 24:15 63:17
72:6 73:12
GRIEVANCES- 98:1
GROW- 82:15
GUESS- 12:1
28:23 31:9 34:4
40:24 42:16
46:18 86:15
113:16 114:7
118:22 121:2

--- H ---

HADN'T- 8:8
HALF- 17:16 82:9
84:12 87:19
HAMMER- 56:21
92:17 109:21
110:1
HAND- 45:12
78:10 87:20 99:23
HANDLED- 18:10
HANDLING- 8:6
HANG- 19:5,6
42:20,22 46:24
49:7 50:6 76:6
84:20
HAPPEN- 13:13
31:22 85:16 92:22
HAPPENED- 15:20
16:16 23:21
91:19 98:4 105:4,
8 109:3
HAPPENING- 77:7
HAPPENS- 18:14
98:6 107:4
HAPPY- 28:3 29:2,
10 60:18 63:1
71:3 78:23
HARD- 42:13 49:13
HARM- 37:18
HARRISBURG- 27:17
HASN'T- 19:21
34:9,16 43:22,23
108:12,13
HAVEN'T- 17:6,8
19:21 23:7 35:8
43:2 46:16 65:2,
3,4 68:18 85:20
91:7 95:10
101:14 113:1
122:18 123:14
HE'S- 34:16
37:19,21 79:2,9,
23 105:4
HEAD- 43:15

67:13 93:21
HEAR- 10:2 50:14
104:20 105:1
107:1
HEARD- 14:24
19:8 53:15 60:14
97:17
HEARING- 6:23,25
9:22 10:1,21
11:2,5,6,11,12,
13 12:24 15:5
16:3 17:14 27:9
29:13,15 30:25
31:6 33:13 40:18,
20 41:15 50:18,
22 53:13,19
54:24 57:11,19
59:4 72:4,20
75:15 77:11 84:8
87:18 88:1 97:18,
23 104:14 105:17,
20 106:20 125:4
HEARINGS- 9:23
87:25
HEARSAY- 58:15,
16 59:12 64:6
HEART- 13:20
22:14,23 50:8
HECK- 87:17
HEFLIN- 66:1
HELD- 47:8 91:10,
13
HELP- 43:10
HERRING- 62:14
HEY- 113:15
HISTORY- 71:9,15
HIT- 93:16
HOLD- 47:15
93:10,12,24
HOMEOWNERS- 56:17
HONESTLY- 74:11
76:24 94:15
113:3 122:17
124:9
HOPE- 9:3 12:23
18:17
HORSES- 79:21
HOST- 67:10
HOUR- 84:12 87:19
HOURS- 38:3
72:19 77:10 83:17
HOUSE- 86:5
HOVEY- 120:18
HUMILIATED- 75:15
HUNT- 82:24

--- I ---

IDEA- 38:20 75:8
86:20
IDENTIFIED- 6:10
ILLEGALITY- 56:9
IMAGINE- 18:21
IMMEDIATELY-
124:11
IMPACT- 42:4,6
IMPARTIAL- 30:25
53:13,19 54:24,25
IMPARTIALITY-
9:16,19
IMPLIED- 10:2
IMPORTANT- 39:7
72:15
IMPORTANTLY-
51:25
IMPRESS- 21:22
IMPRESSION- 22:1
IMPROPER- 70:15
INAPPROPRIATE-
21:21 22:7 25:16
41:3 110:12
INC- 116:14
125:14
INCIDENTALLY-
98:22
INCLINED- 29:13
79:23 88:12
89:13 90:17
INCOME- 97:8
INCORPORATE-
58:24
INCORRECT- 12:5
55:25
INDEMNITY- 65:21
INDEX- 63:21
INDICATED- 13:15
62:25 79:9 80:19,
25 81:6 100:5,9
INDICATES- 56:15
74:21
INDICATING- 26:4
65:19 78:19 91:22
INDISCERNIBLE-
96:14
INDISPENSABLE-
25:9,13
INDIVIDUAL- 85:21
INFORMATION-
65:12 67:4,9
79:10 89:17
INITIAL- 124:19
INS- 83:24

INSOLVENT- 80:2
84:15,25 85:7
INSTALLMENT-
27:13
INSTEAD- 105:11
INSTRUMENT- 66:25
INTEND- 41:11
89:3
INTENDING- 41:17
INTENT- 7:3
INTENTION- 5:20
INTEREST- 18:21
24:19,21 25:8
34:18,20,25
36:19 37:15
39:16 40:8 48:13
50:17,20 52:8,19,
21,23 54:13,14
78:15 79:3,8
94:23 103:15,17
113:16 114:15
123:13
INTERESTED-
119:7,15
INTERJECT- 69:9
INTERJECTION-
119:6
INTERPOSE- 25:19
INTERPRET- 121:7
INTERPRETATION-
122:6
INTERRUPT- 19:15
39:4 116:24
INTERRUPTED- 78:3
INTERRUPTING-
21:2 78:6 80:23
INVALIDATE-
109:12
IRREGULAR- 40:23
44:19 106:4
IRRELEVANT-
119:18
ISN'T- 56:12,18
61:8 62:8 108:4
ISSUE- 9:9 14:6
18:24 19:1,7,9,
13 20:7,10 22:3,
22 23:24 40:4
50:25 52:16,24
57:9,10 64:5,6,
25 67:13 80:12
83:7,11,22 94:10,
15 98:8 99:21
101:13,15 106:16
108:14 111:2
118:5

ISSUED- 63:25
ISSUES- 14:7
21:7,9 40:21
43:11 51:2,13
57:18 76:25 77:1
IT'D- 109:9
IT'S- 5:18 7:17
8:20 11:17,20
12:16,18,19
17:16 23:20 24:4,
10 26:7,20 27:23
28:15 31:9 33:24
34:24 36:3,21
37:24 38:4 41:21,
22 42:13,14 43:2
44:19 47:9 54:4,
19 56:24 58:8,10,
15,16,22,24
59:14 60:21
61:14,20 62:14
64:6 65:13 67:23
71:3,4,14,15,24
73:23 74:5 77:2,
13 79:16 81:2,3,
12,16,19 82:2,9,
12,16,19 85:11
87:25 88:7 89:2,
3,6,8 90:15,18
92:5 93:21 97:12,
24 98:17 100:10
105:14 107:20
108:4 109:18,19
110:6,12 111:16,
17 112:16 113:21
118:7,17 120:7
ITEMS- 81:5

**J**

JACKSON- 116:14,
21 117:8 119:20
JANUARY- 27:15
38:2
JASELLON- 97:9
JOB- 70:22 85:22,
23
JOHN- 97:8
JOIN- 14:23,25
JOINED- 19:17,18
JOINT- 24:21 25:8
JONES- 95:8
JUDGE- 9:4,15
18:18 21:21 31:5
33:7,11,15 35:7
38:4,16,19,23
47:24 48:4 56:23
63:6 68:2,13

73:10 76:17,25
84:12 89:7 90:4
91:22,24 92:22
95:3,8 100:18
101:10,12,25
103:23 104:2
105:25 108:14
109:11 111:6
113:3,25 114:2
123:20
JUDGE'S- 72:17
JUDGES- 55:14
104:21
JUDGMENT- 52:21,
24 53:3 54:2,4,
20 56:9 64:10
71:13 94:5,23
120:15
JUDGMENTS- 94:7
JUDICIAL- 37:24
58:7 64:3,5,22,
25 65:11,14,16,
20,24 67:14,22
73:8,19 89:15,19
90:25 93:23
94:21 97:1,4,5
101:20 102:19
105:12
JUMPING- 13:4
JURISDICTION-
94:8 115:8
JUSTICE- 106:20
JUSTIFICATION-
31:7
JUSTIFIED- 20:21,
22,23,25
JUSTIFY- 33:15,16

**K**

KINDS- 80:18
KISS- 97:15
KNEES- 88:9
KNOWING- 15:7
KNOWINGLY- 30:4
31:6 32:5 46:10
KNOWLEDGE- 9:19
KRISTINE- 72:6
73:13

**L**

LACK- 50:20 52:7
LAID- 65:3 75:21
108:13
LAND- 118:6
LATER- 6:2 45:2
LAUGHING- 78:9

LAWFUL- 23:15,17,
20 24:4 57:7
LAWLESSNESS-
120:19
LEADING- 86:4,5
LEANING- 25:16
LEARNED- 23:2
LEASE- 32:17,19,
20,22 36:17,24
42:3,4,10 43:2,
14,15,17 44:23
45:2,14,15,17,19
46:13,18,20
47:20 49:20
51:23 80:9,11
81:2,3,4,23 82:2,
3,4,8,12,14,16,
17,19,20,25 83:5,
14 85:24,25 86:8,
12,19 98:25 99:4,
8 100:7,9 111:2
112:10,12,17,24
114:4,22 115:1,
10 116:3
LEASED- 86:7
LEASEHOLD- 34:18,
20,25 36:19
37:14 40:8 78:15
79:2 113:16
LEASING- 86:4,6
LEAVE- 86:5
LEAVES- 56:20
LEGAL- 22:4
37:23 38:6,7,8,
10,12,13 39:2
41:20,22 42:7
57:10 59:5 64:11,
23 85:22 103:18
108:4,5 109:17
122:3,7
LEGALLY- 120:12
LEGITIMATE- 57:7,
8 98:10 106:8
LENDERS- 11:24
LENGTHY- 90:7
LET'S- 20:22,24
21:6,9 30:6 32:4
34:7 41:25 42:1
44:2 46:24 62:21,
23 100:2,3 112:6,
9,10 117:19
123:22
LETTER- 16:18,25
17:9 105:5
LETTING- 96:23
LIAR- 45:16

117:18
LICENSE- 75:14
LICENSED- 25:5
LIED- 72:10
LIENS- 52:20
LIFT- 13:2 120:7
LIFTED- 15:6
120:9 121:13
122:1
LIMITED- 115:8
LINE- 8:3 16:9
LINK- 76:9
LISTS- 37:13
LITIGANT- 25:5
38:19
LITIGANTS- 12:8
LITIGATE- 112:23
114:6,19
LITIGATED- 62:16
64:9
LIVES- 43:22,23
LLC- 4:12
LOCAL- 4:19
LOCATED- 37:16
LOGICAL- 20:6
LONG- 34:3 85:25
99:12 113:15
LONGER- 88:13
LOOK- 6:17 23:8
55:24 108:14
111:15 124:22
LOOKED- 9:20
18:9 76:19
LOOKING- 36:8,9
68:23 71:7,8
LOST- 38:9 108:23
LOT- 21:7 31:1
75:13,22 77:22
87:17 88:2 105:1
LOTS- 118:14

**M**

MACHINE- 88:18
MAIL- 5:21 27:18
28:11 91:11,13
122:24
MAILED- 28:21,23
MAILING- 124:3,16
MAIN- 88:11
MAKING- 4:17 7:4
45:5 69:2 106:8
111:13
MANAGER- 97:8
MANDAMUS- 104:23
MANY- 9:24 56:1
98:16 109:20

119:25
**MARCH-** 17:15
69:7 73:4
**MARIA-** 38:4 68:2,
14 73:10 91:24
**MARK-** 68:10
**MARKED-** 5:18
**MARY-** 6:13 7:9
**MASSACHUSETTS-**
97:10
**MATRIX-** 124:3,16
**MATTEO-** 65:18
**MATTER-** 5:10 9:8
13:25 20:8 26:21
27:6 34:8 71:3,
11 78:10 81:12,
16,19 85:22
108:4,5 109:18
121:11 125:10
**MATTERS-** 4:1,2
6:19 14:5 16:17
65:20 122:19
**MEANS-** 48:24
51:6 57:5 91:7
**MEDIATE-** 119:3
**MEDIATING-** 119:7
**MEDIATION-** 116:6
118:4,25 119:1,3
**MEET-** 89:10
108:16
**MEMORANDA-** 57:20
**MERE-** 38:3
**MERITS-** 24:8
**MESS-** 57:15
**MET-** 98:24 101:6
108:15
**MGIC-** 65:21
**MICHAEL-** 67:24
73:14
**MINE-** 68:23
**MINGLE-** 42:1
**MISCONCEPTION-**
32:10,13
**MISSING-** 89:24,25
**MISTAKE-** 16:15
18:10
**MISTAKEN-** 122:25
**MISTAKES-** 42:21
**MISUNDERSTOOD-**
85:6
**MODIFICATION-**
120:3,7
**MOMENTARILY-**
63:19
**MONDAY-** 35:14
**MONEY-** 118:7,8

**MONTH-** 104:14
**MONTHS-** 86:2
**MORNING-** 4:5,11
5:24 17:9
**MORTGAGE-** 4:12
55:5,7 56:17
63:24 64:11
67:15,23,24
68:23 69:6 72:21
73:3,12 75:5
76:12 90:25 97:5
98:7 106:21
109:12 112:14
114:4,5,9,14,21,
23,24 115:1
120:2,3,6,8
**MORTGAGED-** 38:1
**MOTION-** 5:10
6:22,23,24,25
7:1,4 8:5,6,7,10,
20 9:2,7,11,14,
21,23 13:1,2
14:4,24,25 15:1
17:12 18:16
19:15 22:17,18
23:9 26:7,11,12
29:12,13 34:24
36:16,21 37:4
38:15 39:13 49:4,
6,25 50:8 51:9
55:3 60:4,5
61:20,23 62:2,5,
8 68:14,20 69:5,
7 72:18 73:1,3,4
75:5,6,18 79:24
80:4 95:1 96:20
99:12 101:23
102:4 110:25
121:23
**MOTION'S-** 7:13,14
**MOTIONS-** 6:21
25:24 61:21
**MOUTH-** 33:5
**MOVANT-** 4:22,24
5:19 34:13 51:16
52:15
**MOVE-** 9:11 16:2
59:25 104:15
**MOVED-** 34:13
87:22
**MOVEMENT'S-** 52:1
**MOVING-** 31:23
61:19
**MUCH-** 11:25
15:15 19:24
20:14 32:8 34:4,

9 46:10 53:11
85:14 118:23
**MULTIPLE-** 26:14
39:22
**MUSTI-** 38:4,17,
20,23 68:2,14
73:10 91:24
**MUSTI'S-** 38:16

---

**N**

**NAMED-** 39:22
**NECESSARILY-**
14:16,17 24:7
76:9 123:23
**NECESSARY-** 52:12
65:12 84:24
**NEGOTIATE-** 26:10
120:8 121:10
**NEGOTIATIONS-**
116:15,25
**NEVER-** 12:15
16:14 26:14 35:6,
8 36:18 38:19
42:12,13,18
45:19 53:19
54:25 66:15
72:24 78:18
101:6 102:9,12
119:14
**NEW-** 16:7 70:18
**NICE-** 30:23 90:18
**NIGHT-** 17:10
27:13,15
**NINTH-** 65:19
**NONETHELESS-**
11:2 62:4
**NORLEY-** 67:24
72:22,24 73:14
**NORMAL-** 5:21
**NORTHERN-** 65:23
**NOTABLY-** 10:23
**NOTE-** 13:12 50:1
55:4,5
**NOTED-** 7:8 38:23
**NOTES-** 22:6
**NOTICE-** 5:15
30:2,3 46:7
50:17 51:22
57:12,13 58:7
64:4,5,22,25
65:11,14,16,20,
24 67:1,14,22
68:5 73:8,18
79:24 84:9 88:22
89:15,20 90:4,25
93:23 97:1,4,6

101:6,20 102:19
105:12 122:16,23
124:4,20
**NOTICING-** 28:15
**NOVEMBER-** 16:13
17:11 105:5
**NUMBERED-** 69:11
**NUMEROUS-** 123:15
**NUNC-** 104:24

---

**O**

**OATHS-** 93:23
**OBJECT-** 19:16
48:24 83:15
**OBJECTION-** 73:15,
16,17 74:7
**OBJECTIONS-** 87:23
**OBTAIN-** 121:9
**OBTAINED-** 23:5,7,
14,15 42:5,12
**OBVIOUS-** 111:13
**OBVIOUSLY-** 27:16
66:6 83:17 96:18
**OCCUR-** 37:18
109:3
**OCTOBER-** 10:21
11:13 14:22 15:3,
4 17:11 93:1
105:4
**OFFENDED-** 22:2
**OFFER-** 29:3
81:22,23 100:19
119:10,13
**OFFERED-** 48:23
**OFFICE-** 63:19
65:18 93:24
102:22,25
**OFFICIALLY-** 30:3
**OFTEN-** 120:5
**ONE-** 7:3 10:6
11:19 14:6,7,14
17:11,23 22:21
28:9 30:22 31:18
32:7,9,21 38:14
41:1 43:11 49:7
53:13,20 59:17
66:18 67:12
72:10 76:11,15,
16,18,20 80:11
83:23,24 93:22
97:18 100:14
108:16 112:2
115:17,19 116:4,
13 118:5 121:14
122:15,19 124:6
**OPERATING-** 34:3

OPINION- 34:1
38:5 68:13 69:1,
3 71:8,12,20
72:17 73:10 74:2,
5,8 75:19,20 76:6
OPPORTUNITIES-
116:14
OPPORTUNITY-
6:16 7:18 34:9
53:14,16 80:10
OPPOSED- 51:12
OPPOSING- 51:1,12
OPTION- 119:11
OPTIONS- 110:4
ORAL- 7:1 47:20
ORDER- 4:14
13:14 27:14
39:11,19 46:6
54:14 81:1 89:9
91:22 94:9 98:6
113:23 121:17
123:10
ORDER'S- 27:15
ORDERED- 40:24
ORDERING- 47:6
ORDERLY- 70:7
OSTROWSKI- 4:2,8,
9,13,16,22,25
5:3,6,8,20 6:9,
21 7:1,7,13 8:6,
10,12,14,15,18,
20,23,25 9:3,6
10:6,8,10 14:23
15:1 17:14,23
18:7 19:8,12,16,
22 20:3,6,12,17,
23,25 21:3,11,12,
14,16,23 24:11,
13,15,19,21,23,
25 25:3,8,12,15,
19 26:1,7,10
27:20 28:7,9,17,
19,22,24 29:2,5,
7,9,21,22 30:7,
10,13,17 31:3,10,
16,18,20,25 32:2,
4,8,12,15,19,24
33:1,4,9,11,19,
22,24 34:2,7,16,
20,24 35:6,10,14,
16,18,20,24 36:3,
8,11,21 37:2,11
38:19 39:10,16,
20,21 40:7,13,15,
17 41:7,9 42:1,3,
7,18,20,21,23

43:6,8,17,24,25
44:4,7,9,15,18,
22,24 45:3,7,9,
11,23,25 46:2,14,
16,20,23,25 47:2,
5,8,11,13,17,22
48:3,6,10,14,19
49:5,13,16,20
51:3,4,6,9,11,15,
20 52:2,14 53:6,
10,14 55:11,14,
17,19,21 56:25
57:20,24 58:8,10,
12,15,20,23 59:1,
6,11,15,18 60:9,
24 61:2,4,10,12,
15,17,19,24 62:8,
12,22 63:6,9
64:5,13,16,25
65:9,13 67:10
68:8,12,25 69:19,
21,24 70:1,7,10,
12,14,18,21,24
71:3,17,19 72:4,
10,18 73:15,17,
20,24 74:3,7,13,
15,17,23 75:8,10,
19,25 76:2,5,21,
23 77:3,5,25
78:4,9,25 79:6,
11,16,21 80:2,7,
13,17,25 81:7,9,
12,16,19,23 82:2,
6,9,12,16,19,22,
24 83:13,15 84:7,
18,23 85:3,5,7,
12,20 86:1,3,7,
11,13,17,20,22,
24 87:5,7,11,16
88:8,15,17,20,22
89:2,7,9,21,24
90:3,6,12,15,18
91:4,6,10,13
92:21,25 93:3,7,
9,11,20 94:1,10,
14,17,22 95:2,5,
7,12,14,16,17,21,
23 96:1,4,7,9,11,
14,16 97:11,14
98:19,22,24 99:5,
7,11,16,22,24
100:2,13,16,18,
20,22,24 101:3,
10,12,16,25
102:3,8,20 103:3,
6,11,16,20,23

104:1,4,9 105:14,
17,20,23 107:22,
25 108:3,6,9,12,
21,24 111:2,3,6,
10,19,22,24
112:5,7,11,18,20,
25 113:3,6,8,10,
15,19,22 114:6,
15,19,22 115:6,9,
13,15,18
118:19,22 122:13,
15,24 123:14,20,
25 124:5,9,12,14,
17,21,25 125:2
OSTROWSKI'S-
39:5 68:23 76:8
78:11 121:13
OTHERWISE- 115:16
OUNCE- 48:22
OUTS- 83:24
OVERTURN- 56:5
OWN- 10:24 19:18
22:17,18 33:5
42:6 49:19,23
92:23 94:23
103:19 106:4,6
107:5,7,15,17
116:24 117:1,6
OWNED- 109:17
OWNER- 112:16

——————————
P
——————————
PAID- 4:17 13:10,
12 107:20 118:13
PARK- 86:5
PARTICIPATE- 21:9
PARTICIPATING-
7:10 48:8
PARTICIPATION-
40:17
PARTICULAR-
71:11 74:19 76:9
119:2
PARTICULARLY-
91:20
PARTIES- 21:8
25:9 29:16 30:5
119:3 124:3
PARTY- 50:17,21,
24 51:1,10 52:8,
15 60:11 65:11
67:19 120:8
PASSED- 101:7
PAST- 57:3,4
106:7
PAUL- 73:14

PAUSE- 10:18
50:13,15
124:1
PAY- 29:11,24
107:24
PAYING- 4:23
67:16,24
PAYMENTS- 27:13
PAYS- 4:16,21,24
PENNSYLVANIA-
24:9 25:6 54:19
56:5,7 92:16
PEOPLE- 6:10 7:3
20:14 35:3 40:19
57:1 73:21
PERCENT- 57:7
PERCEPTION- 16:21
PERFECTLY- 20:21
28:3
PERHAPS- 18:20
PERIOD- 30:1
92:20
PERJURY'S- 72:14
PERMITS- 89:19
PERMITTED- 8:11
11:8 110:19
PERSON- 7:3 9:18
18:8,12
PERSONALLY- 41:5
90:8 117:6
PERVERSION- 77:13
PETITION- 34:16
35:13,21 37:12
79:14,15 90:7
104:24 124:19
PHILLIP- 22:1
PHONE- 4:10 7:10
16:17 24:17
PICKING- 36:12
44:4 83:15
PIECE- 67:15,23
69:6 72:21 73:4
74:20 75:6,7,12
76:9 97:5
PLACE- 27:17
93:24 98:10
PLAINTIFF- 69:5
72:5,23,24 73:2
75:4
PLAN- 13:1 41:24
PLAY- 105:4
PLAYED- 29:9
PLAYING- 57:5
PLAYS- 28:11
PLEADING- 11:5,6

22:17 27:2 49:12
55:3 62:2,25
73:8 83:19 102:2,
4,9
**PLEADINGS-** 43:20
45:20 46:18
65:21 91:21
**PLEAS-** 38:5
73:11 96:1
**PLED-** 45:19 60:3,
5
**PM-** 38:2 125:4
**POINTED-** 123:14
**POINTING-** 71:11
**POINTS-** 22:9
106:9
**POOR-** 111:14
**POSITION-** 22:10
34:14 42:4 48:11
80:8 117:2
120:17 123:11
**POSSESSION-**
92:19 112:20
**POSSESSORY-**
112:18
**POWER-** 23:23
75:2 115:8 116:6
118:15
**PRACTICE-** 8:12,
16 25:6 111:16
**PRECIPITATED-**
116:5
**PRECIPITOUSLY-**
22:20
**PRECLUSION-**
52:24,25 53:11
**PREDESTINE-** 118:3
**PREDICATE-** 73:25
**PREJUDICE-** 9:14
12:10 19:22 20:1
89:22 112:14
**PREJUDICED-** 79:11
**PREJUDICIAL-**
41:5 66:6
**PRELIMINARY-** 5:9
6:19
**PREMISES-** 37:16
38:1
**PREPARE-** 66:7
90:6 108:16
**PREPARED-** 16:2,3
28:12 29:17
60:13 75:14
**PREPARING-** 72:19
74:23
**PRESENT-** 8:4

**PRESENTED-** 40:21,
23
**PRESENTING-** 45:13
**PRESUMING-** 87:8
**PRESUMPTION-**
34:4 57:1,4 87:5
**PREVARICATE-**
119:24
**PREVARICATING-**
117:17
**PREVENT-** 37:25
**PREVENTING-** 43:5
**PREVIOUS-** 10:22
**PREVIOUSLY-** 11:3
64:1 109:17
**PRIMARILY-** 14:1,
5 88:7
**PRINCIPLE-** 83:24
**PRINT-** 6:17 7:22
**PRIOR-** 92:8
114:5,9
**PRO-** 8:11 25:5
104:24
**PROBABLY-** 14:14
16:20 17:5 65:2
82:11 121:5,6
**PROBLEM-** 56:13
58:3 74:1,3
102:13 106:22
107:1 110:21
124:2
**PROCEDURAL-**
30:14 71:9,15
**PROCEDURE-** 83:25
106:4 122:17
**PROCEED-** 42:25
61:21 122:4
**PROCEEDED-** 55:23
**PROCEEDINGS-**
57:7 125:10
**PROCESS-** 30:14,
22 31:2 37:24
45:4 54:23 57:16
67:5 72:20 77:9,
13 81:19 84:18
85:10 87:12
93:11 96:1
101:13 104:6
105:24 111:14
112:2 118:20,22
119:15,21
**PRODUCE-** 46:6
51:22 82:5
**PROMISE-** 78:5
**PROOF-** 29:3
36:18,22 50:25

51:2,3,13 52:16
54:6 79:2 80:20
81:18,22,23 91:2
98:24 107:8,11
111:20,25
**PROPER-** 100:3
108:13
**PROPERLY-** 76:24
93:15 101:19
108:9 114:11
**PROPERTY-** 23:6,
14 24:6,10 26:5,
6 39:17 42:4,7,8,
12 43:3,7 47:21
50:20 51:1,14
52:8,10,11,17,19,
22,23 56:24 59:5
63:24 64:1,24
78:16 79:3,8
81:2,24 82:3,20,
25 86:7 87:3
88:13 90:23 91:3
92:17 98:25 99:4,
8 102:14 103:10
106:6 107:6,7,15
109:16 110:17
112:15 113:14,16
114:1,3,15,21
115:4 116:24
117:1 118:7,17
119:10,13 121:9,
12 123:13
**PROPRIETY-** 94:8
**PROSTRATE-** 97:14
**PROTECT-** 79:12
94:23
**PROTECTED-** 81:20
112:8
**PROTECTION-**
50:20 52:7 84:15,
19 85:8
**PROVED-** 45:19
**PROVIDE-** 12:8
31:7 49:3,5
59:25 79:9 84:4
**PROVIDED-** 10:25
49:11 50:18
**PROVIDER-** 4:20
**PROVIDES-** 110:4
**PROVING-** 105:25
**PROVISION-** 51:25
**PROVISIONS-** 53:8,
12
**PUBLIC-** 26:21
65:20,24 118:6
**PULL-** 15:14

**PURCHASE-** 119:10,
13
**PURCHASER-** 114:3,
21
**PURPOSE-** 7:15
64:19 95:10
**PURPOSES-** 12:21
57:8
**PURSUANT-** 94:9
**PURSUE-** 37:19
110:22 121:8
**PUTTING-** 102:5
104:21

---
Q
---
**QUARTER-** 100:24
**QUESTIONED-** 9:16,
20
**QUESTIONS-** 41:3
42:25 47:1,4,6
85:15,16,19
100:14 106:8
**QUICK-** 8:5 105:11
**QUICKLY-** 104:15

---
R
---
**RADAR-** 95:19
**RAINING-** 65:13
**RAISE-** 13:25
45:12 99:23
**RAISED-** 57:9
**RAISING-** 14:1,3
118:12
**RAMBO-** 95:3,8
**RATHER-** 12:22
18:16
**RAWLINSON-** 56:7
**REACHED-** 38:25
**READING-** 11:8
72:16
**READY-** 61:21
78:1 122:18
**REAFFIRM-** 32:19,
20
**REASON-** 5:4 6:18
29:23 32:17 43:3
57:17 87:25
88:12 89:16 90:2
91:1 116:8
**REASONABLE-** 9:18
18:8,12 102:1
106:13
**REASONABLY-** 9:16,
20
**REASONS-** 32:9
79:25

**REBECCA-** 116:14, 21 117:8 119:19
**RECEIVE-** 122:16
**RECEIVED-** 5:12, 15 24:5 26:14 27:12 63:17,20 66:13,15 88:17 89:14 101:6
**RECENT-** 91:18
**RECOGNIZE-** 36:6
**RECOGNIZED-** 11:14 104:12,13
**RECOGNIZING-** 10:21
**RECORDED-** 26:20 58:6 59:8,14 62:24 64:22 67:14,15,24 86:19,21 88:13 91:15,17 102:14 107:5
**RECORDER-** 63:22 67:8,16 98:14
**RECORDER'S-** 65:18 66:19
**RECORDING-** 67:22 125:9
**RECORDINGS-** 65:17
**RECORDS-** 65:17, 20 76:23,24
**RECUSAL-** 9:9,12, 14 18:17 19:9,15 22:13,14
**RECUSE-** 6:23 14:12,17 15:1 96:20
**RECUSED-** 14:15
**RECUSING-** 19:6
**RED-** 62:14
**REFERENCED-** 75:20
**REFERRED-** 9:23
**REFERRING-** 10:3, 4,15 13:3 71:12
**REFERS-** 74:20
**REFLECTED-** 67:5
**REFRAIN-** 10:11
**REFUSAL-** 79:16
**REFUSED-** 13:12
**REFUSES-** 102:24, 25
**REIN-** 110:3
**REINSTATE-** 56:22, 23 110:4
**REITERATE-** 62:1
**RELIED-** 5:20
**RELIEF-** 10:24

12:9 24:9 33:6 34:13,15 36:14 39:13 49:4 50:18, 23,25 51:1,12,13 52:6,15 54:7 68:21 79:17 80:5 88:12 95:1 96:12 101:4 107:2,3 110:16,17,18,25 112:13,21 115:3, 20 120:1 121:18
**RELYING-** 108:7
**REM-** 121:18
**REMAIN-** 113:25
**REMEDIATE-** 118:15
**REMEDIES-** 110:22
**REMEDY-** 54:16,18 110:23,24
**REMOTELY-** 40:18
**RENEW-** 96:20
**REORGANIZATION-** 52:12
**REPOSSESSES-** 112:15
**REPRESENTATION-** 45:6
**REPRESENTATIONS-** 48:16,21 60:10 69:2 89:19 101:23
**REPRESENTATIVE-** 72:23
**REQUEST-** 8:9 50:17 106:13 121:18 122:15
**REQUESTED-** 12:9 26:14 36:14 64:3
**REQUESTING-** 9:14 50:24 52:15 59:10
**REQUESTS-** 65:11
**REQUIRES-** 9:17 120:6
**RESEARCH-** 57:18 94:10,11,15,22 103:18
**RESIDENTIAL-** 81:3
**RESISTENCE-** 88:5
**RESPECT-** 52:9 105:22 106:10 120:20
**RESPECTFULLY-** 106:9
**RESPECTIVE-** 6:21
**RESPECTIVELY-** 23:9 49:25
**RESPOND-** 23:10 29:24 69:23 70:3,

6 93:15,18 123:22
**RESPONSE-** 20:15 66:7 90:6
**RESULT-** 72:25
**RESURRECT-** 109:21
**RETRY-** 14:5
**REVEALED-** 10:20 95:23
**REVIEWED-** 9:21 22:17,24 27:8
**RIGHTS-** 16:17 30:14 32:6 43:3 45:4 46:3,4 48:10 56:22,23 77:6,8 79:12 81:20 85:9 87:12 92:16 96:2 101:18 106:14 112:7
**ROAD-** 37:17
**ROBE-** 97:15
**ROGUE-** 104:1
**ROOKER-FELDMAN-** 52:24 53:12
**ROOM-** 6:7,11 7:3 26:8 40:19
**RULE-** 9:4 65:1,7 121:19 123:4,9,16
**RULED-** 12:3 69:17 76:17
**RULES-** 4:20 40:17 58:15,17 59:12 65:7 84:1, 3,4 89:10
**RULING-** 14:17 18:23 39:1 71:19 92:23 96:11 104:21 109:1 115:12
**RUN-** 106:14
**RUNNING-** 11:2 106:7

---
### S
---

**SALE-** 23:6 24:6 56:22 90:24 114:4,22
**SALT-** 105:11
**SAN-** 65:18
**SANCTIONED-** 61:15 90:20
**SANCTIONS-** 7:2 90:8,16,21 121:24
**SAT-** 83:21 87:19
**SATISFACTION-** 67:15,23 69:6

72:21 73:3 74:10, 20 75:5,6,12 76:9,12 97:5
**SATURDAY-** 122:25
**SAVINGS-** 65:25
**SAW-** 12:15 16:15 94:14 122:25 124:21
**SAXON-** 55:7 102:6
**SCHEDULE-** 84:8 123:8
**SCHEDULED-** 11:3 38:2 72:20 91:10
**SCHEDULES-** 34:17 35:4 78:19,23 81:5 88:3 122:16, 20 123:25 124:18
**SCREW-** 91:11
**SEATED-** 8:2 63:16
**SECOND-** 14:19 19:6 66:21 93:10, 12 119:14
**SEE-** 17:8 31:8 42:12 57:10,14, 17 66:24 69:10 79:3 88:4 94:5 95:21 101:10 107:19 122:23 123:22,24
**SEEK-** 33:6
**SEEKING-** 59:24
**SEEN-** 17:8 42:13 56:16,17 78:18 79:3
**SEGUED-** 29:12
**SELBY-** 116:15
**SELF-** 62:3,8
**SENDING-** 93:14 105:12
**SENT-** 16:19 17:2, 9 63:18 64:19
**SEPARATE-** 25:24 65:1
**SEPARATELY-** 25:25
**SERIOUSNESS-** 59:23
**SERVE-** 5:19 29:25 79:6 80:14
**SERVED-** 14:13
**SERVICE-** 5:21
**SESSION-** 8:1
**SET-** 117:8 118:11
**SETTLED-** 80:8 97:20 104:12
**SETTLES-** 114:1
**SEVEN-** 27:14

97:20 104:11,12,
19
**SEVERAL-** 6:19
116:12 120:9,10
**SHALL-** 50:18
51:19 52:6
**SHAMEFUL-** 111:16,
17
**SHARED-** 17:5
**SHARNESE-** 116:22
**SHARP-** 113:10
**SHE'S-** 24:12
39:1 72:10
118:11 119:14,15
**SHEET-** 63:21
103:2,8
**SHERIFF-** 23:14,
20,23 26:16
63:23 87:10
90:24 93:23 98:8
102:21 113:15,22
114:22
**SHERIFF'S-** 23:6
24:6 42:5 56:22
58:6 60:15 64:22
66:13 90:23
92:17 109:19,21
110:1
**SHIFTED-** 101:6
**SHOPPING-** 88:22
**SHOULDN'T-** 15:18
43:4
**SHOW-** 17:19 55:1,
3 58:23 107:10
113:24
**SHOWING-** 60:24
68:22
**SHOWN-** 70:21
107:5
**SHOWS-** 16:22
103:9,10
**SHUT-** 104:25
**SIDE-** 20:10 21:7
31:16 48:16,22
**SIDES-** 31:14,23
**SIDETRACKED-**
7:16 37:6 50:4,5
124:9
**SIGN-** 121:22
**SIGNED-** 82:6
**SIGNING-** 121:17
**SIMPLE-** 75:13,21
81:21 89:11
106:14
**SIMPLY-** 12:8
43:4 81:20

112:22 115:3
**SIMULTANEOUSLY-**
96:15
**SIT-** 33:11 40:22
77:14 86:14
111:15
**SITTING-** 25:15
45:13 47:22 84:25
**SITUATION-** 120:3
121:11
**SIX-** 27:16 86:2
**SIX-PAGE-** 63:20
**SLABY-** 4:11 5:9,
11,14,23 6:3,7,
11,13 7:9,21,24
8:3,4,9 19:14,19
20:14,18,19
24:12,16 26:17,
20 31:13,15 34:9,
11,13 36:13,18,
25 37:4,5,7,9
38:11,14,17 39:4,
12,18,21,25 40:2,
5,9 41:11,13,16,
19 42:6,11 43:19
45:17,24 46:1,12,
21 49:3,8 50:3
59:8,14,20 60:3,
17,22 61:5,14
62:11,14,19 63:1,
5,18 64:8,18,21
68:1,13,20 69:3,
4,15,17 71:5,6,
14,24 72:2,6
73:9 75:17,24
76:12,16 77:18,
20,22 78:2,8,10,
14,18 79:1,13,19
80:5,20,23,24
84:6,17,20,21
91:24 116:15,17,
18,19,23 117:11,
25 119:6,8,12,17
121:16,19 123:2,
4,23
**SLAMMED-** 15:17
16:23
**SLAMMING-** 17:16
**SLANDER-** 12:19
**SMALL-** 84:14
**SMILE-** 104:9
**SOLD-** 114:3
**SOLELY-** 37:25
**SOMEWHAT-** 29:12
**SON-** 22:2
**SOUND-** 47:25

125:9
**SPANGLER-** 37:17
**SPECIFICALLY-**
10:15 89:4
**SPECIFIED-** 65:3
**SPENT-** 17:16
**SPONTE-** 61:22
**STAGE-** 80:4
**STALL-** 123:5
**STAMP'S-** 103:7,8
**STAMPED-** 67:15
**STAND-** 34:25
40:25 41:8 43:8,
25 44:3 47:2
87:21,24
**STANDARD-** 82:12
**STANDING-** 22:19
23:4
**START-** 37:22
**STARTED-** 51:16,
18 77:11
**STARTING-** 42:1
**STARTS-** 71:9,14
**STATE-** 10:19
13:15 14:1,6
34:14 52:21,24
54:1,12,18,23
55:23 56:2,20
62:16 64:9 98:4,
6 104:20 109:3
110:19,20 112:23
114:6,25
**STATEMENT-** 35:4
63:22
**STATEMENTS-**
34:17 78:23
124:19
**STATUTES-** 112:1
**STATUTORY-** 60:1
**STAY-** 13:2 15:6
21:23 24:9 34:13,
15 36:14 37:6
39:5 41:21 50:18,
23 51:13 52:6,9
79:18 80:6 95:1
96:12 101:4
107:2,4 110:16,
18 112:13,21
115:3,21 120:1,7,
9 121:13
**STAY'S-** 122:1
**STEP-** 6:8 66:18
75:15 81:13
**STEPHEN-** 4:2
64:1 68:21 73:13
86:8

**STEPS-** 120:10
**STEVE-** 19:23
20:2 57:2 75:10
95:5 111:12
**STEVE'S-** 83:22
**STICK-** 111:11,12
**STIPULATE-** 83:9
**STIPULATED-** 99:18
**STOP-** 24:24 25:1
50:10 106:15
**STORE-** 86:6
**STRAIGHT-** 49:21
62:5 92:23 102:5
**STRAIGHTFORWARD-**
20:3 24:3
**STREAM-** 79:22
**STREET-** 97:9
**STRICKEN-** 68:1
75:7
**STRIKE-** 6:25
22:19 29:13 50:9
69:5,7 73:3,4
75:5 76:18
**STUDY-** 51:21
88:3 91:8 113:10
**SUA-** 61:22
**SUBJECTED-** 10:23
97:24 104:18
**SUBMITTED-** 77:9
**SUBMITTING-** 62:3
64:19 70:14
**SUBPOENA-** 29:25
46:5 51:22 79:6
80:15,17
**SUBPOENAS-** 29:25
**SUBSECTION-**
50:19,22,23,24
52:6,10
**SUBSECTIONS-** 65:2
**SUBSEQUENT-**
12:11 114:23
**SUBSTANCE-** 14:11
106:25
**SUBSTANTIAL-**
37:18
**SUBSTITUTE-** 77:12
**SUE-** 114:17
**SUED-** 72:7
**SUFFICIENTLY-**
83:23
**SUGGESTS-** 12:4
101:5
**SUIT-** 38:24
68:17 91:25
**SUPERIOR-** 104:24
**SUPP-** 66:1

**SUPPLIED-** 65:12
**SUPPORT-** 9:7
48:23 49:6 55:6
62:5
**SUPPORTED-** 49:22
55:2
**SUPPOSED-** 16:6
72:20 119:20
120:20 124:23
**SUPREME-** 56:4,8
120:18 121:3,5,6
**SURPRISED-** 18:16
**SURPRISING-** 91:20
**SUSPECTED-** 105:6
**SUSPENDED-** 8:12,
16
**SUSPICIOUS-** 27:21
**SUSTAINING-** 62:9
**SWEAR-** 98:25 99:3
**SWORD-** 48:1
**SWORN-** 17:22
99:10
**SYSTEM-** 56:2,20,
21

**T**
**TABLE-** 25:15
45:13 87:20
**TACTIC-** 123:6
**TAINTS-** 56:8
120:13
**TAKING-** 17:13
47:2 50:11 63:13
73:18,19 74:4
77:22,23 90:25
101:19 108:11
**TECUM-** 80:18
**TELEPHONE-** 40:18
**TELLING-** 23:6
31:4,5 44:25
47:24 89:12
**TELLS-** 93:6
124:22
**TEN-** 7:20 20:9,
13 57:13 59:21
**TEN-DAY-** 30:1
**TENDED-** 122:18
**TEN-MINUTE-** 6:15
60:18
**TERM-** 12:19
**TERMINATE-**
103:15,16
**TERMINATED-**
52:21 54:13
92:17 101:20

**TERMS-** 89:17
**TEST-** 9:18 101:23
**TESTIMONY-** 17:13
32:15 33:2 35:1
40:7
**THANKS-** 5:8
**THEY'LL-** 114:16
**THIRD-** 22:5 33:6
66:23 67:19
**THOUSAND-** 65:9
**THREE-** 57:12
65:2 84:9 90:4
106:23 111:22
**THROW-** 113:16,23
**THROWS-** 57:4
**TIME-** 4:3 11:2
13:5,24 14:3,13
16:1,5,8,9,21
17:16 18:17
20:14 21:24
24:15 26:8 27:23
29:10 30:22 46:4
66:7 75:22 77:23,
24 80:6 83:20,21
84:1,7 88:6
90:17 91:15
92:19 97:18,24
99:12 100:10
103:19 104:14
105:8,10 119:6
121:15,23 122:1,
8,22 123:9
**TIMELY-** 104:22
**TIMES-** 9:24
26:14 56:1,19
88:10 106:23
109:20 119:25
120:10 123:15
**TITLE-** 42:12
59:5 64:11,23
85:9,11,12,13
**TODAY-** 5:13
12:17,18 22:16
26:18 27:23
29:17 40:20
41:12,18 44:10
45:21 46:2,5
55:3 57:6,18
65:13 82:5 98:17
99:13 123:21
124:16
**TOGETHER-** 25:16
**TOOK-** 16:19 20:9
106:3
**TOP-** 43:15 67:13
70:24 71:10

90:15 93:21
**TOTAL-** 104:19
**TOWARDS-** 37:10
**TOWNSHIP-** 63:24
**TRACK-** 21:6
62:17,18,20,21,
22 117:20
**TRADING-** 97:7
**TRAFFIC-** 109:11
**TRAIN-** 108:23
**TRANSACTION-**
106:25
**TRANSCRIPT-** 9:21
93:1 113:24 125:9
**TRANSCRIPTS-**
11:20 15:14,24
17:18 125:14
**TRANSFERRED-**
26:16
**TRANSFERS-** 102:14
**TRANSPORTATION-**
65:17
**TREATING-** 90:12
**TREATMENT-** 97:24
**TRIAL-** 123:17
**TRIBUNAL-** 54:25
120:20
**TRIED-** 14:6 15:4
**TRO-** 15:7
**TROUBLE-** 41:14
**TRUST-** 65:25
118:6
**TRUSTEE-** 14:16
17:4 32:18,21
112:24 113:12
**TUNC-** 104:24
**TURN-** 36:6 66:19
**TURNING-** 36:11
**TURNS-** 25:2
**TWO-** 4:1 7:3
17:12 18:25 22:9
25:4,22,24 43:12
49:16 51:20
57:17,18 59:19
63:9 65:2,9
69:21 70:10 72:4,
19 77:10,16
83:17 89:25
93:22 94:2 118:4
**TYPICALLY-** 35:3

**U**
**ULTIMATELY-** 56:4
**UNACCEPTABLE-**
41:4
**UNDERLYING-** 5:10

**UNDERPINNING-**
60:1
**UNDERSTANDING-**
11:11 22:24 121:4
**UNDERSTANDS-**
46:18
**UNDERSTOOD-**
109:25
**UNDERWAY-** 118:12
**UNFAIR-** 85:24
**UNFAMILIAR-**
95:19,20
**UNFLAGGING-** 54:21
**UNFORTUNATELY-**
6:3
**UNHAPPINESS-** 71:4
**UNHAPPY-** 70:25
**UNITED-** 37:7,12
47:23 85:9
105:23 106:2
**UNJUST-** 110:21
**UNLESS-** 5:4
68:23 80:10 81:1
**UNSUPPORTED-**
49:18
**UNUSUAL-** 15:13
83:2 120:7
**UPHOLD-** 106:3
**USC-** 9:17
**USED-** 77:7
**USING-** 12:20 43:6

**V**
**VALID-** 37:23
38:7 39:2 41:20,
22 64:10,11 78:15
**VALIDITY-** 120:15
**VALUE-** 32:17,22
52:20
**VARIETY-** 11:24
98:9
**VENUE-** 37:21
**VERIFICATION-**
9:6 49:4 67:5
88:25 93:22
98:15 102:15,17
103:13 105:16
110:7
**VERIFIED-** 48:22
67:8,9 98:17
110:6
**VERIFY-** 8:24
**VERSUS-** 65:21,25
73:13
**VIA-** 7:10
**VIEW-** 12:7 33:21

109:3
**VIOLATION-** 38:4
**VIOLATIONS-** 57:16
**VOCIFEROUSLY-**
48:25

---
W
---
**WAIT-** 19:5 28:9
44:9 45:1 46:22,
24 94:4
**WAIVER-** 121:19,22
**WAIVING-** 77:8
122:8
**WALKED-** 21:24
87:21
**WALL-** 83:18
**WANTING-** 40:6
42:24 45:6 81:13
**WANTS-** 45:20
**WARRINGTON-** 63:24
**WASN'T-** 11:21
68:4 78:6 84:24
85:4 86:21 99:17
**WAYS-** 80:18
**WE'RE-** 6:7 8:1,
10 13:4 14:10
16:9 18:24 22:12
24:7 25:25 27:4,
6,25 35:16,20
41:25 42:1 46:9,
22 50:3,5,11
57:4 62:15 63:3,
13 67:13 70:1,11,
13 72:19 74:10
75:20 78:11
86:17 93:9 94:6
101:8,17 103:20
109:14 110:5
123:7,21 125:3
**WEEK-** 28:4 29:24
84:8 97:15
105:10 108:14,16
112:3 122:19
124:6,15
**WEEKS-** 30:17
43:12 49:17
51:20 57:17,18
63:9,10 69:21
70:10 72:4 77:16
89:25 118:4
**WEISMAN-** 65:21
**WEREN'T-** 10:9
61:21
**WEST-** 65:25
**WHATSOEVER-**
41:23 42:8 46:2

48:24
**WHERE'S-** 102:6
**WHEREUPON-** 125:4
**WHISPER-** 50:14
**WHISPERING-** 24:13
**WHISPERS-** 24:16
**WHO'S-** 40:19
70:19 99:24
**WHOLE-** 16:21
66:16 67:10,16
73:24 106:25
111:14 118:12
**WHOLLY-** 65:1
**WILL-** 4:4 17:18
25:2 37:18 47:8
60:11 63:18 68:5
86:22,24 105:3
110:25 114:16
120:1 121:22,23
123:8
**WILLING-** 48:17
59:25
**WILLY-NILLY-**
29:23
**WISH-** 122:14
**WITHDRAW-** 74:7
**WITNESS-** 44:12
45:12 46:16 65:4
87:21,24
**WON'T-** 12:2 81:1
95:24 117:7
**WORD-** 31:11 89:14
**WORDS-** 43:1
92:25 106:4
114:13 122:8
**WORK-** 25:2 29:15
47:9 48:3 88:3
116:25 122:18
**WORKING-** 89:18
101:9,11 118:6
**WORKS-** 25:3
**WORLD-** 21:25
**WORRIED-** 90:19
**WORRY-** 48:16
**WORTH-** 98:20
**WOULDN'T-** 20:21
22:16 27:8 45:15
80:1 85:24 86:1,
3 89:18
**WRIT-** 104:23
**WRITING-** 7:7
42:14 86:9
**WRITTEN-** 36:17,
23 38:5 43:2
47:20 82:2,3,4
99:8,17 100:10

---
Y
---
**YEAR-** 85:25
**YEARS-** 21:18
57:3 91:19 97:21
98:16 101:21
104:11,12,19
109:20
**YESTERDAY-** 29:9
90:19 119:21
122:24 123:1
**YORK-** 59:14
63:22,24 73:11
74:5 94:9 96:9
114:20
**YOU'LL-** 27:24
66:22,24 99:7
104:13
**YOU'RE-** 4:6 8:19
10:4,10,15 11:6,
9 12:22 13:3
14:1 15:9 16:2,
15 18:1 19:23
21:2,3 22:22,25
23:17 25:18,21
26:4 30:3,4 31:4,
5,6 32:16,21
33:4,19,22,25
34:2,15 36:1
37:2 39:11 41:1
44:7,11,25 47:20,
24 48:6,12,17,18,
19 55:8 56:12
58:3,4 59:24
60:20 69:2,14
70:14,25 71:11
73:18 77:6 79:7
80:8,11,23 81:5
84:12 87:11,13
89:12,13 90:9,12
95:20,22 96:5,11,
22,23 98:13
100:12 101:4
103:1 104:1,6,9,
13 105:12,25
106:6,14,17
107:2 108:6,15
109:8 110:13
111:4,13 112:23
113:1,2,5,12,13
116:10 118:2,21
119:7 121:10
122:6 124:23
**YOU'VE-** 9:23
14:3 35:8 38:9
42:5 43:13 60:14

62:24 64:3,19
80:19,25 81:6
92:1 98:9 99:9
100:8 104:15
111:13
**YOUNG-** 104:5